# EXHIBIT A

# 2014

# Apartment Building AGREEMENT

BETWEEN

**REALTY ADVISORY BOARD
ON LABOR RELATIONS
INCORPORATED**

AND

**SERVICE EMPLOYEES
INTERNATIONAL UNION, LOCAL 32BJ**

EFFECTIVE APRIL 21, 2014
TO APRIL 20, 2018

# 2014

# Apartment Building
# AGREEMENT

BETWEEN

**REALTY ADVISORY BOARD
ON LABOR RELATIONS
INCORPORATED**

AND

**SERVICE EMPLOYEES
INTERNATIONAL UNION, LOCAL 32BJ**

EFFECTIVE APRIL 21, 2014
TO APRIL 20, 2018

 36

# TABLE OF CONTENTS

| Subject | Page |
| --- | --- |
| Adoption of Agreement | 28-36 |
| Arbitration | 15-20 |
| Better Conditions | 11, 38, 43 |
| Building Safety | 126 |
| Bulletin Board | 92 |
| Call In Pay | 62 |
| Check-off | 6-8 |
| Classification of Buildings | 55-57, 134 |
| Commercial Occupancy | 57 |
| Common Disaster | 122 |
| Complete Agreement | 123 |
| Condemnation | 55 |
| Contracting of Work | 1, 2, 9-10 |
| Cost of Living | 59-60 |
| Day of Rest | 91 |
| Days Off | 12, 61, 64 |
| Death in Family | 117-118 |
| Death of Employee | 121 |
| Definition, Job | 116 |
| Disability Benefits Law | 50-52 |
| Discharge | 3-4, 12-13, 66-70 |
| Discrimination | 106-115 |
| Discrimination – Protocol | 107-115 |
| Election Day | 81-82 |
| Employees' Rooms | 115-116 |
| Experienced Employee | 97-98 |

*(Continued)*

| Subject | Page |
|---|---|
| Eye Glasses | 92 |
| Family and Medical Leave Act | 86, 107 |
| Fines | 106 |
| Fire and Flood Call | 92 |
| Firemen | 87-88 |
| First Aid Kit | 92 |
| Garnishments | 117 |
| Governmental Decrees | 121 |
| Grievance Procedure | 13-15 |
| Health Fund | 36-42, 48-50 |
| Hiring | 101-102 |
| Holidays | 11, 78-81, 82 |
| Hours | 11, 61-63 |
| Identification | 119 |
| Inspection of Payroll Records | 6 |
| Job Vacancies | 93-95, 101-102 |
| Joint Industry Advancement Project | 73-75, 131 |
| Jury Duty | 11, 118-119 |
| Layoff | 20-25, 94, 99-101, 104 |
| Leave of Absence | 84-86 |
| Legal Services Fund | 46 |
| Licenses | 106 |
| Lie Detector Tests | 122-123 |
| Life Insurance | 11, 38 |
| Locker | 93 |
| Lockout | 25-27 |
| Luncheon Period | 11, 61-62 |

*(Continued)*

| Subject | Page |
|---|---|
| Maintenance of Benefits | 41-42 |
| Management Rights. | 12-13 |
| Meal Money | 62 |
| Method of Service | 124 |
| Military Service | 106, 126-127 |
| Moving Expenses | 66 |
| Multi-Employer Association | 28-36 |
| Newly Constructed Buildings | 31 |
| New Development | 76 |
| New Hire Rate | 95-97 |
| Notices to Union | 125 |
| Overtime | 15, 61-63, 78, 82 |
| Part-time Employee. | 54, 64, 82, 87 |
| Payment of Wages | 82-84 |
| Pension Fund | 42-45, 48-50, 97, 98, 132-133 |
| Permits | 106 |
| Personal Day | 79, 81 |
| Picketing | 25-28 |
| Posting | 93-94 |
| Preamble. | 1 |
| Pregnancy Leave | 85 |
| Premium Pay | 61-62, 78, 80 |
| Professional Occupancy | 57 |
| Promotion | 93-94 |
| Pyramiding | 78 |
| Recall | 99-101 |
| Reducing Force | 20-25, 94 |
| Relief-Employees | 82 |

*(Continued)*

| Subject | Page |
| --- | --- |
| Rent Collection | 122 |
| Replacements | 90-91, 95 |
| Rest Room | 93 |
| Sale of Building | 32-33, 105 |
| Sanitary Arrangements | 93 |
| Saving Clause | 123 |
| Schedules | 12, 82 |
| Security Background Checks | 124-125, 130 |
| Seniority | 93-95 |
| Service Center Visit | 120 |
| Severance Pay | 66-67, 102-105 |
| Sickness Benefits | 11, 52-54, 78 |
| Signatory Building | 1, 28-36 |
| Strikes | 25-28 |
| Sub-Contracting | 9-10 |
| Superintendents | 47, 63-73 |
| Supplemental Retirement and Savings Fund | 46-47, 98 |
| Term of Agreement | 127-128 |
| Termination Pay | 66-67, 102-105 |
| Tools | 105 |
| Training Fund. | 45-46 |
| Training Program | 117 |
| Transportation Costs | 123 |
| Trial Period | 69, 95 |
| Unemployment Insurance Law | 50-52 |
| Uniforms | 91-92 |
| Union Dues | 6-8 |

*(Continued)*

| Subject | Page |
| --- | --- |
| Union Insignia | 92 |
| Union Recognition | 1-3, 8 |
| Union Security | 1-8 |
| Union Visitation | 118 |
| Utilities | 115-116 |
| Vacations | 11, 86-90 |
| Vacation Replacement Rate | 90-91 |
| Veteran Transition Assistance | 126-127 |
| Voting Time | 81-82 |
| Wages | 11, 58-65, 135-138 |
| Wage Differentials | 65, 77 |
| Wage Rates | 135-138 |
| Work Authorization/Status Disputes | 126 |
| Workers' Compensation | 36-37, 42, 51, 52, 84, 86 |
| Working Conditions | 11, 61-63, 64-65 |
| Workweek | 61, 64 |
| Work Clothes | 91-92 |

AGREEMENT made as of the 21st day of April, 2014, by and between the REALTY ADVISORY BOARD ON LABOR RELATIONS, INCORPORATED, herein called the "RAB," acting on behalf of various owners of apartment buildings and other employers who become signatory to this agreement, herein severally referred to as "Employer," and the SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 32BJ, herein referred to as the "Union," acting on behalf of its members and other building service employees to whom this Agreement applies and for whom it is the collective bargaining agency.

# ARTICLE I
## Union Recognition and Union Security

1. The Union is recognized as the exclusive collective bargaining representative of all classifications of service employees at each apartment building in New York City, Nassau, Suffolk, Duchess, Sullivan, Putnam, Rockland and Westchester counties in New York, Connecticut and New Jersey, which is committed to this Agreement.

Work performed pursuant to the terms of this collective bargaining agreement shall not be performed by persons not covered by the bargaining agreement except as provided in Article II.

2. This Agreement shall apply to all classifications of service employees employed by the Employer. Article II of this Agreement shall also apply to employees of cleaning and maintenance contractors who employ employees in any building committed to this Agreement working in any job category covered by this Agreement.

3. There shall be a Union Shop throughout the term of this Agreement in every building where there was a Union Shop under the 2010 Apartment Building Agreement and in other buildings whenever it is agreed or determined that a majority of the employees in such buildings are members of or have applied for membership in the Union.

The "Union Shop" requires membership in the Union by every employee in the building as a condition of employment after the thirtieth day following employment or the execution date of this agreement, whichever is later, or in the case of newly organized buildings, after the thirtieth day following agreement or determination that a majority of the employees in such buildings are members of or have applied for membership in the Union, and requires that the Union shall not ask or require the Employer to discharge or otherwise discriminate against any employee except in compliance with law.

In the event the Union security provision of this Agreement is held to be invalid, unenforceable or of no legal effect generally or with respect to any building because of interpretation or a change of federal or state statute, city ordinance or rule or decision of any government administrative body, agency or subdivision, the permissible Union security clause under such statute, decision or regulation shall be enforceable as a substitute for the Union security clause provided for herein.

4.    Whenever the Union files with the RAB and the Employer a claim that a majority of the employees in a building are members of or have made application for membership in the Union, the Union Shop requirement shall be made effective within fifteen (15) days thereafter, unless the Employer or the RAB within ten (10) days, notifies the Union that it requires a determination of that claim.

5.    Upon receipt by the Employer of a letter from the Union's Secretary-Treasurer requesting any employee's discharge because he/she has not met the requirements of this Article, unless the Employer questions the propriety of so doing, the employee shall be discharged within fifteen (15) days of said notice if prior thereto he/she does not take proper steps to meet said

requirements. If the Employer questions the propriety of the discharge, he shall immediately submit the matter to grievance, and if not thus settled, to the Arbitrator for final determination. If it is finally settled or determined that the employee has not met the said requirements, he shall be discharged within ten (10) days after written notice of the final determination has been given to the RAB and the Employer.

The Employer shall be responsible for unpaid dues after receipt of notice provided for in this section and exhaustion of contractual remedies. The Employer's obligation shall begin fifteen (15) days after such notice or, if the Employer questions the discharge, after the final determination of the arbitrator.

6. The Union will hold the Employer harmless from any liability arising from a discharge asked by the Union pursuant to this Article provided the Employer has done nothing to cause or increase its own liability concerning removal of employees.

7. No building service employee may be employed in any building, except within a tenant's apartment, save by the Employer, without the consent of the Union.

8.  During any period in which it is not established that a majority of the employees in a building are members of, or have made application for membership in the Union, it is agreed that all employees who, upon the date this agreement is signed for their building, are members of the Union in good standing in accordance with the Constitution and By-Laws of the Union, and all employees who thereafter become members shall, as a condition of employment, remain Union members in good standing during the life of the agreement.

9.  Upon execution of this Agreement the Employer shall furnish the Union and the RAB with a complete list of the names, social security numbers and home addresses and job location of all employees covered by this Agreement and shall notify the Union and the RAB of the names and social security numbers and home addresses and job location of each new employee thereafter employed.

The Employer shall notify the Union and the RAB in writing, as soon as a cancellation of an account becomes effective where Union members are employed and the Employer shall notify the Union when he acquires a new building service job.

10. The Union shall have the right to inspect the Employer's Social Security reports and all payroll records (except the salary of the nonunion Supervisors) in order to determine if this agreement is being complied with. The Union shall have the right to expedited arbitration in the event an Employer fails to comply with this right of inspection. Inspections may also be made by the Union or the Arbitrator at the request of the RAB. The RAB may join the Union at all times, when such examination is made. All Benefit Trust Funds established under this agreement shall have the same right to inspect as the Union but shall also have the right to inspect Supervisor's payroll records where Supervisors are covered by such Funds.

11. Each Employer agrees to deduct the Union's monthly dues, initiation fees, and all legal assessments from the pay of each employee from whom it receives written authorization and will continue to make such deductions while the authorization remains in effect.

The Employer hereby agrees to deduct voluntary political contribution deductions based upon authorizations signed by the employees in accordance with applicable law.

Such deductions will be made from the pay for the first full pay period worked by each employee following the receipt of the authorization, and thereafter will be made the first pay day each month, and forwarded to the Union not later than the twentieth day in each and every current month. Such deductions shall constitute trust funds while in the possession of the Employer.

If the Employer fails to remit to the Union the dues or other monies deducted in accordance with this section by the twentieth day, the Employer shall pay interest on such dues at the rate of one percent per month beginning on the twenty-first day, unless the Employer can demonstrate the delay was for good cause due to circumstances beyond its control. The interest shall not be assessed for an Employer's initial failure to deduct voluntary political contributions until thirty (30) days after the Employer has received written notice from the Union of its failure to deduct.

If a signatory does not revoke the authorization at the end of a year following the date of authorization, or at the end of the current contract, whichever is earlier, it shall be deemed a renewal of authorization, irrevocable for another year, or until the expiration of the next succeeding contract, whichever is earlier.

The Union agrees to indemnify and save such Employer and the RAB harmless from any liability incurred by reason of such deductions.

12. Nothing in this Article shall be construed as an admission that the Employer or his employees in any particular building are engaged in interstate commerce, in an activity affecting interstate commerce, in the production of goods for interstate commerce, or that any particular building is covered by the provisions of the Labor-Management Relations Act, as amended.

13. In keeping with the extension of Article 1, Section 1, to include New Jersey, Connecticut, Nassau, Suffolk, Duchess, Sullivan, Putnam, Orange, Rockland and Westchester counties in New York and the geographic jurisdiction of the Union, the RAB and the Union will establish a joint industry committee comprised of at least 6 representatives from all sectors of the commercial and residential industry to meet on an ongoing basis, but not less than quarterly. The committee shall review and analyze prevailing market conditions, including wage and rental rates, and develop procedures for resolving union organizational and representation disputes to minimize disruption and conflict, and to promote stable and efficient labor relations and labor conditions.

# ARTICLE II
## Coverage of Agreement
## Sub-Contracting

1.  The Employer shall not make any agreement or arrangement for the performance of work and/or for the categories of work heretofore performed by employees covered by this agreement except within provisions and limitations set forth below.

2.  The Employer shall give advance written notice to the RAB and the Union at least three (3) weeks prior to the effective date of its contracting for such services, or changing contractors, indicating the name and address of the contractor.

3.  The Employer shall require the contractor to retain all bargaining unit employees working at the location at the time the contract was awarded and to maintain the existing wage and benefit structure.

The Employer agrees that employees then engaged in the work which is contracted out shall become employees of the initial contractor or any successor contractor, and agrees to employ or re-employ the employees working for the contractor when the contract is terminated or cancelled. This provision shall not be construed

to prevent termination of any employee's employment under other provisions of this agreement relating to illness, retirement, resignation, discharge for cause, or layoff by reason of reduction of force; however, a contractor may not reduce force or change the work schedule without first obtaining written consent from the union, which shall not be unreasonably withheld.

If the contractor fails to comply with any agreement with the Union covering the work which was contracted out, the Employer shall be liable severally and jointly with the contractor for any and all damages relating to unpaid Health, Pension, Training, Legal and SRSP contributions. The Employer's liability shall commence the date it receives written notice from the Union or the RAB of the contractor's failure to so comply.

4. This Article is intended to apply to all employees employed in any building committed to this Agreement and to categories of employees to the extent that such categories of employees are "fairly claimable" by the Union, within existing National Labor Relations Board case law. In the event that the application of this Article, or any part thereof, is held to be in violation of law, then this Article, or any part thereof, shall remain applicable to the extent permitted by law.

# ARTICLE III
## Wages, Hours & Working Conditions

1. The wages, hours, terms and conditions of employment set forth in Article XV of this Agreement are hereby made part hereof.

2. Except as otherwise provided herein, the wages set forth in the tables on pages 135-138 shall be effective as of April 21, 2014, and all its other terms and conditions shall become effective on the payroll date nearest to April 21, 2014. As to all buildings later adopting this Agreement, it shall take effect upon acceptance by the Union.

3. No provision of this Agreement shall be construed so as to lower any employee's wage. If employees in any building have in effect a practice of terms or conditions better than those provided for herein, applicable generally to them for wages, hours, sick pay, vacations, holidays, relief periods, jury duty, or group life insurance, such better terms or conditions shall be continued only for employees who have had such conditions. The Arbitrator may relieve the obligations in the preceding sentence if enforcement would work an undue hardship, injustice or inequity upon the Employer.

A change of schedules or duties, so long as required relief and luncheon periods are reasonably spaced, shall not violate this Section, provided the employee, the Union and the RAB are given at least one (1) week's advance written notice and such change is reasonable. The notice for shift changes i.e., change in work hours or days off, shall be three (3) weeks. However, where as of April 21, 2014, an employee (other than a Working Superintendent) regularly received consecutive days off, the practice shall continue, and if any such employee leaves his position for any reason whatsoever, his replacement shall also receive consecutive days off.

## ARTICLE IV
### Management Rights

1.    The Union recognizes management's rights to direct and control its policies subject to the obligations of this agreement.

2.    Employees will cooperate with management within the obligations of this agreement to facilitate efficient building operation.

3.    Any employee who is discharged shall be furnished a written statement of reason(s) for such discharge no later than five (5) working days after the date of discharge.

If any employee [other than a Working Superintendent covered in Article XVI] is unjustly discharged, the employee shall be reinstated without loss of seniority or rank and without salary reduction. The Joint Industry Grievance Committee or the Arbitrator may determine whether, and to what extent, the employee shall be compensated by the Employer for time lost.

4.   In circumstances where the managing agent demands the removal of an employee from further employment in a building, but where there is not cause to terminate the employee, the Union will continue to work with signatory Employers to reach a mutually satisfactory resolution of the dispute, and to that end, will agree, in appropriate circumstances, to the transfer of the employee in question to another building, within the same county, without loss of pay or benefits.

## ARTICLE V
## Grievance Procedure

There shall be a Joint Industry Grievance Committee and a grievance procedure:

1.   To try to decide all issues not covered by, and not inconsistent with, any provision of this

agreement and which are not required to be arbitrated under its terms.

2.   To try to decide without arbitration, any issue between the parties which, under this agreement, they must submit to the Arbitrator.

3.   The grievance may first be taken up between a representative of management and a representative of the Union. If it is not settled, it may be filed for arbitration.

4.   All Union claims are brought by the Union alone and no individual shall have the right to compromise or settle any claim without the written permission of the Union.

5.   Any matter submitted to arbitration shall be simultaneously submitted to Joint Industry Grievance Committee.

6.   The Committee shall be composed of representatives of the Union and the RAB, who may be present at any meeting. If the Committee meeting is not held before the arbitration date, the meeting will be cancelled.

It shall be the function of the Committee to seek and encourage the settlement of all disputes brought before it.

7. Any grievance, except as otherwise provided herein and except a grievance involving basic wage violations and Pension, Health, Training, Legal and SRSP contributions shall be presented to the RAB in writing within 120 days of its occurrence, except for grievances involving suspension without pay or discharge which shall be presented within 45 days, unless the Employer agrees to an extension. The Arbitrator shall have the authority to extend the above time limitations for good cause shown.

8. Where a failure to compensate overtime work can be unequivocally demonstrated through employer payroll records, the Union may grieve the failure to compensate such overtime work for the three (3) year period prior to the filing of the grievance.

## ARTICLE VI
### Arbitration

1. A Contract Arbitrator shall have the power to decide all differences arising between the parties to this Agreement as to interpretation, application or performance of any part of this Agreement, and such other issues as are expressly required to be arbitrated before the Arbitrator, including such issues as may be

initiated by the Trustees of the Funds. Nothing in this Agreement shall preclude deferral where the National Labor Relations Act ("NLRA") provides for deferral.

2. A hearing shall be initially scheduled within two (2) to fifteen (15) working days after either the Union or the RAB has served written notice upon the Office of the Contract Arbitrator, with copy to the other party, of any issue to be submitted. The Arbitrator's oath-taking, and the period, and the requirements for service of notice in the form prescribed by statute are hereby waived. A written award shall be made by the Arbitrator within thirty (30) days after the hearing closes, except in arbitrations involving a superintendent where the Arbitrator shall have ten (10) days to issue an award. If an award is not timely rendered, either the Union or the RAB may demand in writing of the Arbitrator that the award must be made within ten (10) more days. If no decision is rendered within that time, either the Union or the RAB may notify the Arbitrator of the termination of his/her office as to all issues submitted in that proceeding. By mutual consent of the Union and the RAB the time of both the hearing and decision may be extended in a particular case. If a party, after due written notice, defaults in appearing before the Arbitrator, an award may be rendered upon the testimony of the other party.

Upon the joint request of all parties, the Arbitrator shall issue a "bench decision," with written award to follow within the required time period.

No more than one adjournment per party shall be granted by the Arbitrator without consent of the opposing party.

There shall be an expedited arbitration procedure where the contract so provides which shall require the Arbitrator to hear and determine the matter within four (4) weeks after the demand for arbitration is filed.

Due written notice means mailing, faxing or hand delivery to the address of the Employer furnished to the Union by the RAB.

In the event that the Union appears at an arbitration without the grievant, the Arbitrator shall conduct the hearing, provided it is not adjourned. The Arbitrator shall decide the case based upon the evidence adduced at the hearing.

3. The procedure herein with respect to matters over which a Contract Arbitrator has jurisdiction shall be the sole and exclusive method for the determination of all such issues, and the Arbitrator shall have the power to award appropriate remedies, the award being final and

binding upon the parties and the employee(s) or Employer(s) involved. Nothing herein shall be construed to forbid either party from resorting to court for relief from, or to enforce rights under, any award. In any proceeding to confirm an award of the Arbitrator, service may be made by registered or certified mail, within or without the State of New York, as the case may be.

4. Should either party fail to abide by an arbitration award within two (2) weeks after such award is sent by registered or certified mail to the parties, either party may, in its sole and absolute discretion, take any action necessary to secure such award including but not limited to suits at law. Should either party bring such suit it shall be entitled, if it succeeds, to receive from the other party all expenses for counsel fees and court costs.

5. Grievants attending grievances and arbitrations shall be paid for their regularly scheduled hours during such attendance.

6. If the Union requires an employee of the building to be a witness at the hearing and the Employer adjourns the hearing, the employee witness shall be paid by the Employer for his regularly scheduled hours during attendance at such hearing. This provision shall be limited to one employee witness.

7.   The RAB shall be deemed a party to any proceeding under this article.

8.   The parties have agreed to an Office of the Contract Arbitrator-Building Service Industry. The Union and the RAB have appointed the following Panel of Arbitrators:

| | |
|---|---|
| John Anner | Gary Kendellen |
| Stuart Bauchner | Marilyn M. Levine |
| Noel Berman | Randi Lowitt |
| Melissa Biren | Earl Pfeffer |
| Howard C. Edelman | David Reilly |

Subject to the acceptance by the parties, five (5) arbitrators will be added to the Office of the Contract Arbitrator-Building Service Industry Panel of Arbitrators. All cases involving a Superintendent or Resident Manager shall be assigned to Arbitrators John Anner or David Reilly.

Upon thirty (30) days written notice to each other, either the Union or the RAB may terminate the services of any Arbitrator on the panel. Successor or additional Arbitrators shall be appointed by mutual agreement of the Union and the RAB. In the event of the removal, death or resignation of all of the Arbitrators, the successors or temporary substitute shall be chosen by the Union and the RAB. If the parties

are unable to agree on a successor, then the Chairman of the New York State Employment Relations Board shall appoint a successor after consultation with the parties.

The cost of the Office of the Contract Arbitrator shall be shared in a manner determined by the Union and the RAB.

## ARTICLE VII
## Reduction of Force

1. The Employer shall have the right to reduce its workforce (a) due to economic hardship or (b) in the following circumstances, provided that in the case of either (a) or (b) it can establish that the changes listed below eliminate an amount of work similar to the proposed reduction in worker hours:

- (i) A change in work specifications or work assignment which results in a reduction of work
- (ii) Elimination of all or part of specified work
- (iii) Vacancies in building
- (iv) Reconstruction of all or part of building
- (v) The tenant performing the work himself
- (vi) Introduction of technological advances
- (vii) Change in the nature or type of occupancy.

2.   If the Employer desires to reduce its work force it is required, in addition to their accrued vacation credits and termination pay, if any, to give employees employed for one (1) year or more one (1) week's notice of layoff or discharge, or in lieu thereof, an additional week's pay. The Employer shall give four (4) weeks written notification to the Union and the RAB.

The Employer shall include in such notification the following:

(a)   Reason for reduction, specifying whether the reduction is being made pursuant to one or more of the reasons set forth in Section 1 or Section 5 of this Article.

(b)   Notification should include the precise work to be eliminated, setting forth the work hours spent on each task to be eliminated and the change in schedules and duties of remaining employees resulting from the reduction in force.

(c)   If the reduction is due to technological advances, the notice shall describe the technological advance; how it will reduce the work, the number of work hours or reduced work and the change in schedules and duties of remaining employees resulting from the reduction in force.

(d)   If the reduction in force is proposed to be implemented pursuant to Section 5 of this Article, the notice shall so state. It shall include a detailed description of the work being performed by those allegedly working at an unusually slow pace or having idle time; a description of additional work that such employees should be performing within their normal working hours; the proposed reduction of force in work hours; change in schedules and duties of remaining employees resulting from the reduction in force. The notice shall include both present and proposed work specifications and schedules.

3.   In the event that a reduction in the work force is effected and the reason for the reduction in the work force ceases to exist, then the Employer shall reinstate the work force that existed prior to the reduction in force.

4.   If the Union grieves or arbitrates a dispute pursuant to this provision, the following shall apply:

(a)   The arbitration shall be expedited and in no event shall be scheduled and heard later than seven (7) calendar days after the Union's request for arbitration.

(b)  The Employer shall affirmatively demonstrate that it has eliminated an amount of work similar to the reduction in worker hours.

(c)  The arbitrator shall issue an award within seven (7) calendar days after the close of the hearings.

(d)  There shall be no adjournments granted without mutual consent.

5.    In addition to the reasons provided for in paragraph 1 above, the Employer shall have the right to reduce the work force where in those exceptional cases it can demonstrate to a Special Committee consisting of the President of the Union or his designee and the President of the RAB or his designee, that an employee has idle time or is working at an unusually slow pace. In the event the Employer claims such an exceptional case, it shall give the notice required pursuant to this provision and the date required by paragraph 2 hereof.

At the conclusion of the four (4) week notice period provided for in paragraph 2, the matter shall be referred to the Special Committee. Such Committee shall act within four (4) weeks after the Employer has given notice to the Committee. If the Committee deadlocks or if the Committee fails to act within said four (4) week

period, the Employer may refer the matter to arbitration pursuant to the arbitration provisions of the contract. The matter shall be heard within four (4) weeks after it is submitted, and a decision shall be rendered within four (4) weeks of the close of the hearing. No adjournments shall be granted without mutual consent.

The Employer may not reduce the work force as proposed prior to the arbitrator's award, provided, however, that if the arbitrator fails to issue his award within the prescribed period, the Employer may reduce the work force as proposed, subject, however, to the ultimate determination of the arbitrator.

6. In the event that the four (4) weeks notice provided for herein is not given and the Employer lays off employees pursuant to this provision, the Employer shall pay an amount equal to the laid off employees' wages and fringe benefits (including, but not limited to Pension, Health, Training, Legal and SRSP Fund Contributions, Holidays, Vacation, Sick Pay and Premium Pay) for the period beginning with the layoff until four (4) weeks after the Employer notifies the Union or the issuance of a final arbitration award, whichever is sooner, but in no event less than four (4) weeks even if the layoff is upheld by the arbitrator.

The fact that payment of employees' wages and fringe benefits are provided for herein shall in no way be construed as a limitation of the arbitrator's power and authority under other provisions of this Agreement.

Where an Employer has more than one (1) case under subparagraph 5, in a building, it may consolidate such cases for purposes of proceeding before the Special Committee and/or the Arbitrator.

7.   The parties renew their commitment to expeditious utilization of the Agreement process to address staffing issues and to communicate on a regular basis on this subject.  To that end, the Special Committee shall meet, unless the parties agree otherwise, on a date certain on each month, to be determined by the parties, with respect to issues that arise under Article VII, Sections 1 and/or 5, or such other items as the parties shall determine.

## ARTICLE VIII
## No Strikes or Lockouts

1.   There shall be no work stoppage, strike, lockout or picketing except as provided in Sections 2, 3, and 4 of this Article. If this provision is violated, the matter may be submitted immediately to the Arbitrator.

In the event of an alleged violation of this Article, the RAB or the Union may request an immediate arbitration. The Office of the Contract Arbitrator shall schedule a hearing on the alleged violation within 24 hours. The Arbitrator shall issue an award determining whether or not said alleged strike or lockout is in violation of the collective bargaining agreement and award appropriate remedy. This is a procedural provision intended only to bring the arbitration on more quickly.

2. If a judgment or Arbitrator's award against the Employer for Health, Pension, Training, Legal and SRSP Fund payments or wages or an award or judgment against a contractor for these or other payments is not complied with within three (3) weeks after such award is sent by registered or certified mail to the Employer or contractor at his last known address, the Union may order a stoppage of work, strike or picketing in the building involved to enforce the award or judgment, and it may also thereby compel payment of lost wages to any employee engaged in such activity. Upon compliance with the award and/or judgment and payment of lost wages, such activity shall cease.

3. Except as otherwise provided in this Article, should either party fail to abide by an

arbitration award within three (3) weeks after such award is sent by registered or certified mail to the parties, either party may, in its sole and absolute discretion, bring an action at law to enforce such award. Should either party commence such suit it shall be entitled, if it succeeds, to receive from the other party all reasonable expenses for counsel fees and court costs. Should either party fail to abide by an arbitration award and fail to commence an action in court to vacate such award within three (3) weeks after such award is served as provided above, the aggrieved party shall have the right to strike and compel payment of lost wages to any employee engaged in strike activity or lockout without affecting the other terms and conditions of the Agreement.

4.   The Union may order a work stoppage, strike or picketing in a building where work previously performed by members of the Union or within the Union's jurisdiction is being performed by persons outside of the bargaining unit anywhere in the building, provided that 72 hours written notice is given to the Employer and the RAB of the Union's intention to do so.

5.   The Union shall not be held liable for any violation of this Article where it appears that it has taken all reasonable steps to avoid and end the violation.

6.   Labor Peace Committee – In the interest of labor peace, and in recognition of the relationship between the New York City Real Estate Industry and the Union, the Union President, or his designee, and the RAB President, or his designee, and such other persons as they may mutually designate (including representatives of any interested employers) shall convene on a quarterly basis, or at the request of either President, to discuss any labor disputes, of which they are aware, with Employers.  Both parties shall use their best efforts to notify the other party of such disputes in order to provide an adequate opportunity to seek to resolve such disputes.

## ARTICLE IX
### Signatory Buildings
### Multi Employer Bargaining

This Agreement may be adopted by any apartment building in New York, at any time on or before June 30, 2014, by filing with the Union through the RAB its written assent to this agreement, except that the Union may refuse any assent if the building is already bound by reason of an existing agreement with the Union.

1.   If there is a bona fide sale or other transfer of title of any member building, or a

change of control through a lease, or in the case of a noncorporate ownership, if any person or persons completely divest themselves of ownership or control by any arrangement, the successors in ownership or control may, unless they have otherwise indicated their intention not to be bound by this agreement, join the RAB and adopt the contract within forty-five (45) days after such acquisition, provided:

(a) The building is not already bound by another agreement.

(b) Written notice is given to the Union within five (5) days after joining the RAB. Notice shall be given by hand delivery or postmarked not later than the fifth business day.

(c) If the building was covered by any agreement, (1) during such period there is no layoff or change in wages, hours, terms or conditions of employment therein; (2) the new owner or transferee recognizes employee seniority and vacation status; (3) all obligations to employees, and those pursuant to the Health, Pension, Training, Legal and/or SRSP Funds, are fully paid up to the transfer date; and (4) provision is made to pay retroactively any wage underpayments resulting from the building's improper classification under Article XIV. Any

adoption by the Employer shall be deemed to be effective on the date of sale.

(d) A building being converted to cooperative or condominium ownership shall be treated as a newly acquired building upon the effective date of the declaration of the cooperative or condominium plan or transfer of title, or upon the transfer of shares to the first cooperative owners or the sale of first condominium unit, whichever is later.

(e) Any Employer signatory to an agreement with the Union other than this Agreement shall remain bound to the terms of that agreement until its expiration date. If such Employer joins the RAB it may adopt the RAB contract and be fully covered by the terms of the RAB Agreement after expiration of its other agreement and before execution of a new contract provided:

(1) Notice in writing is given to the Union of such adoption prior to the expiration of the other contract,

(2) Such Employer is not in default under the other contract, and

(3) The RAB approves such membership.

2. With respect to newly organized, newly constructed buildings, or remodeled buildings that are tenant occupied, the Employer shall have forty-five (45) days to file a commitment to this Agreement after the Union serves a representation notice on the Employer with a showing of majority status of the existing employees, with a copy to the RAB.

Where the time limits provided for in this Article are not complied with, this Agreement shall not be applicable to such building unless the Union agrees to same in writing.

3. This Article notwithstanding, the Union may refuse to accept any building: (a) until it represents a majority of the building service employees; (b) where contributions for Pension, Health, Legal, Training and SRSP Funds are in default for three (3) months or more from the date payment was due; (c) where an award of the Arbitrator has not been complied with; or (d) where during the term of this or the preceding Collective Bargaining Agreement, the Employer has taken a building whose employees are represented by the Union and in which building it has not retained the employees and/or existing conditions of employment. The right of refusal shall not be exercised in order to require the building to become a party to any other

agreement. Before so refusing any building or taking any further action, the Union shall notify the RAB in writing.

The Union shall not refuse or reject an assent to this Agreement pursuant to any provisions of this Article unless and until the President of the Union or his designee and the President of the RAB or his designee have conferred in an effort to resolve any concerns with respect to the pending assent.

4. In the event an Employer intends to terminate his employer-employee relationship under this Agreement, then the Employer shall give the Union and the RAB reasonable written notice prior to the effective date thereof and upon the request of the Union, the Employer shall meet with the Union to negotiate the impact of such termination upon the employees involved. The obligation to negotiate shall be subject to arbitration but failure to agree on the impact shall not be subject to arbitration.

In the event of a change of Employer in a building, the RAB shall use its best efforts to have the succeeding Employer join the RAB and become bound by the terms of this Agreement.

The RAB shall also use its best efforts to encourage all its members who are signatory to

this Agreement to adopt this Agreement for each of their buildings located within the City of New York (except for the Bronx).

In the event an Employer terminates an employee or employees because of a change in ownership, operation, or control of a building or buildings, and such employee(s) are not offered employment or are not employed by the succeeding Employer in the building or buildings at the then existing wages, hours and working conditions, the terminated employee(s) shall receive severance pay in the amount of six (6) months' pay, in addition to any other accrued payments due under this Agreement.

Nothing herein contained shall be deemed to limit or diminish in any way the Union's right to enforce this Agreement against any transferee pursuant to applicable law concerning rules of successorship or otherwise; nor limit or diminish in any way the Union's or any employee's right to institute proceedings pursuant to the provisions of State or Federal labor relations laws, or any statutes or rules which may be applicable.

5. In the event that the Union enters into a contract, or contracts, or enters into renewals or modifications of a contract, or contracts with

any Employer(s) covering apartment buildings which contain new or revised economic terms or other conditions which are effective on or after April 21, 2014, which economic terms or conditions are more favorable to such Employer(s) than the terms contained in this Agreement, the RAB and all its member buildings shall be entitled to and may have the full benefit of any and all of such more favorable terms, upon notification to the Union. This provision may be waived in writing for good cause shown by the President of the RAB or his designee and the President of the Union or his designee.

Upon request of the President of the RAB, the Union shall provide copies of any agreements outside of Brooklyn, Manhattan, Staten Island or Queens that are more favorable to the Employer than the terms of this Agreement.

In buildings where wage rates under the category of "others" prior to April 21, 2014, were lower than those provided for in the 2010 Apartment Building Agreement, wage increases agreed to by the Union and the Employers covering said buildings on or after April 21, 2014 shall not be construed as "more favorable" within the meaning of this Article unless the percentage increase in wages of "others"

category is lower than that provided for in this Agreement. This provision shall not apply to:

(a) Newly organized buildings during their first contract period;

(b) Buildings in bankruptcy;

(c) Buildings in receivership;

(d) Employees who are solely and exclusively security guards;

(e) One person buildings;

(f) Hardship buildings granted relief in accordance with the terms of this Agreement; and

(g) Buildings located outside of Brooklyn, Queens, Manhattan and Staten Island.

The Union shall furnish the RAB a list of present agreements which are more favorable to the Employer than this Agreement.

Any Employer claiming financial hardship in operating a building may request a hearing before a Special Committee consisting of the President of the Union or his designee and the

President of the RAB or his designee. At such hearing, the Employer shall present proof of financial hardship, including, without limitation, financial statements. The Committee may grant or deny in whole or in part relief from the provisions of this contract. This provision shall not be subject to grievance and arbitration.

## ARTICLE X
## Health, Pension, Training, Legal and SRSP Funds

A.  HEALTH FUND

1.  The Employer shall make contributions to a health trust fund, known as the "Building Service 32BJ Health Fund," to cover employees covered by this agreement who work more than two (2) days per week, with such health benefits as may be determined by the Trustees of the Fund. The Employer may, unless rejected by the Trustees, upon execution of a participation agreement in the form acceptable to the Trustees, cover such other of his/her employees as he/she may elect, provided such coverage is in compliance with law and the Trust Agreement.

Employees who are on workers' compensation or who are receiving statutory short term disability benefits, Building Service

32BJ long term disability benefits, or a Building Service 32BJ disability pension, shall be covered by the Health Fund without employer contributions until they may be covered by Medicare or thirty (30) months from the date of disability, whichever is earlier.

In no event shall any employee who was previously covered for health benefits lose such coverage as a result of a change or elimination of the Health Fund provision extending coverage for disability. In the event the provision extending coverage for disability is discontinued for any reason, the Employer shall be obligated to make contributions for the duration of the period that would have otherwise been available.

2. The Employer shall continue to contribute to the Fund $14,794.64 per year for each employee, payable when and how the Trustees determine, to cover employees and their dependent families with health benefits as agreed by the collective bargaining parties, and under such provisions, rules and regulations as may be determined by the Trustees.

Effective January 1, 2015 the rate of contribution to the Fund shall be increased to $15,574.64 per employee per year.

3.    Except as qualified by Article III, Section 3 of this Agreement with respect to group life insurance, any Employer who becomes party to this Agreement and who has a plan in effect immediately prior thereto, which provides health benefits, the equivalent or better than the benefits provided for herein, and the cost of which to the Employer is at least as great, may upon agreement of the Union and the RAB, cover its employees under its existing plan in lieu of this Fund.

If any future applicable legislation is enacted there shall be no duplication or cumulation of coverage and the parties will negotiate such changes as may be required by law.

4.    The parties agree that if there is governmental health care reform mandating payment in full or part, by a contributing Employer for some or all of the benefits already provided for in the Health Fund to participants, the parties shall meet to discuss what ameliorative steps, if any, might be appropriate to minimize any adverse impact on the Funds, its participants and Employers.

The parties agree that if the recently passed healthcare reform legislation or any future governmental healthcare reform requires (i) any

payment by contributing Employers for some or all of the benefits already provided for in the Health Fund to participants or (ii) requires any contributing Employers to pay any excise or other tax, penalty (including assessable payments), fee or other amount relating to or resulting from the eligibility requirements of or the level of benefits provided by the Fund, the parties shall recommend that the Trustees revise the plan of benefits under the Fund so that such excise or other tax, penalty (including assessable payments), fee or other amount are not payable. In the event the Trustees do not revise the plan of benefits under the Fund so that such excise or other tax, penalty (including assessable payments), fee or other amount are not payable, the affected Employers' contributions to the Fund, or contributions to the other Benefit Funds shall be reduced by the amount of such excise or other tax, penalty (including assessable payments), fee or other amount.

With respect to any future governmental healthcare reform that requires any payments described in (i) and/or (ii) in this paragraph, the bargaining parties will bargain over what to recommend to the Trustees consistent with the goals of maintaining quality benefits and containing costs.

5. Health Fund Study Committee. The RAB and the Union agree to continue the work of the Health Fund Study Committee, whose members are appointed in even numbers by the President of the Union and the President of the RAB, convened in accordance with the 2010 Apartment Building Agreement to evaluate, on a continuing basis, the Building Service 32BJ Health Fund benefits and operations, with the goal being to recommend to the Trustees ways for the Health Fund to save money on medical, administrative and other costs associated with the Health Fund while maintaining high quality of care for Health Fund participants. The study committee has made recommendations to the Trustees of the Health Fund, including recommendations relating to statutorily mandated benefit or administrative design changes, designed to save the Health Fund at least $70 million per year in costs commencing no later than January 1, 2012. The bargaining parties have already accepted the recommendations of the Health Fund Study Committee and recommended to the Health Fund Trustees, who acted upon the recommendations, to take all legal action necessary so that (i) such recommended savings measures are implemented by the Health Fund; (ii) the Health Fund reserves do not fall below an amount equivalent to no less than six (6) full

months of benefit costs and operating expenses; (iii) such measures shall not thereafter be modified absent unanimous agreement of the trustees; and (iv) such measures are made with the intent of being permanent and within the purposes of the aforementioned cost savings. The Health Fund Study Committee shall meet regularly, and on an ongoing basis, to continue to monitor and review Health Fund expenditures and trends, to evaluate and consider best practices and developments in cost-effective methods of providing quality benefits for the purpose of ensuring savings are being realized and to recommend any and all appropriate measures to modify or modulate cost-trends, and to make recommendations to the collective bargaining parties and/or Fund Trustees regarding potential actions including, without limitation, for further savings.

6. If during the term of this Agreement, the Trustees find the payment provided herein is insufficient to maintain benefits, and adequate reserves for such benefits, they shall require the parties to increase the amounts needed to maintain such benefits and reserves subject to Article X, Section F (4). In the event the Trustees are unable to reach agreement on the amount required to maintain benefits and reserves, the matter shall be referred to

arbitration pursuant to the dead lock provisions of the Fund's Agreement and Declaration of Trust. The preceding maintenance of benefits provision shall be suspended for the life of this Agreement.

B. PENSION FUND

1. The Employer shall make contributions to a pension trust fund known as the "Building Service 32BJ Pension Fund" to cover bargaining unit employees who are regularly employed twenty (20) or more hours per week, including paid time off. The Employer shall also make contributions on behalf of other bargaining unit employees to the extent that such employees work a sufficient number of hours to require benefit accrual pursuant to Section 204 of ERISA.

Employees unable to work and who are on statutory short term disability benefits or workers' compensation shall continue to accrue pension credits without employer contributions during the periods of disability up to six (6) months or the period of disability whichever is earlier.

2. The Employer shall pay into the Fund the sum of $94.75 per week for every regular employee as defined in the Building Service

Pension Plan, as it may be amended, except as provided in Section 4 hereof.

3. Effective January 1, 2015, the Employer shall pay into the Fund the sum of $98.75 per week for every regular employee.

4. If the Employer has in effect a pension and retirement plan which has been determined to provide benefits equivalent or superior to those provided under the Building Service 32BJ Pension Plan, it may continue such plan provided it continues to provide retirement benefits equivalent or superior to the benefits that are provided under the Building Service 32BJ Pension Plan during the term of this agreement, and it shall be relieved of any obligation to make payments into the Fund.

5. Any Employer who becomes party to this Agreement and who immediately prior thereto has a pension plan in effect which provides benefits equivalent to or better than the benefits provided herein, may, upon agreement of the Union and RAB, cover his/her employees under its existing plan in lieu of this Fund and be relieved of the obligation to make contributions to the Fund for the period of such other coverage.

6.     In no event shall the Trustees or any of them, the Union or the RAB, directly or indirectly, by reason of this agreement, be understood to consent to the extinguishment, change or diminution of any legal rights, vested or otherwise, that anyone may have in the continuation in existing form of any such Employer pension plan, and the Trustees or any of them, the Union and the RAB shall be held harmless by an Employer against any action brought by anyone covered under such Employer's plan asserting a claim based upon anything done pursuant to Section 5 of this Article. Notice of the pendency of any such action shall be given the Employer who may defend the action on behalf of the indemnitee.

7.     The parties agree that if there is new governmental regulations issued that implement the excise tax provisions of the Pension Protection Act (PPA), or there is further governmental reform relating to the funding of pension funds, the parties shall meet to discuss what steps, if any, might be appropriate to ameliorate any adverse impact on the Funds, its participants and employers.

To the extent that any employer covered by this Agreement, with respect to employees covered by this Agreement, becomes subject to

the automatic employer surcharge or any excise tax, penalty, fee, increased contribution rate or other amount relating to the funding of the Pension Fund (but not including interest, liquidated damages, or other amounts owed as a consequence of failing to make timely remittance of contributions to the Pension Fund) under Sections 412 or 432 of the Internal Revenue Code, then the parties agree that the required contributions to the Health Fund, Training Fund and/or Legal Services Fund for each employer covered under this Agreement shall be reduced dollar for dollar by the aggregate amount of any additional contribution and/or surcharge amounts, excise taxes, penalties, fees or other amounts that such employer is required to pay, as provided in this subsection. Unless a different allocation among the Funds is agreed upon in advance of any applicable due date for such contributions by the Presidents of the RAB and Local 32BJ, such amount shall be allocated solely from the Health Fund.

## C. TRAINING, SCHOLARSHIP AND SAFETY FUND

The Employer shall make contributions to a training and scholarship trust fund known as the "Thomas Shortman Training, Scholarship and

Safety Fund" to cover employees covered by this Agreement who work more than two (2) days per week, with such benefits as may be determined by the Trustees. Effective April 21, 2014, the rate of contributions to the Thomas Shortman Training, Scholarship and Safety Fund shall be $169.60 per year for each covered employee.

## D. GROUP PREPAID LEGAL FUND

The Employer shall make contributions to a prepaid legal services trust fund known as the "Building Service 32BJ Legal Services Fund" to cover employees covered by this Agreement who work more than two (2) days per week with such benefits as may be determined by the Trustees. Effective January 1, 2014, the rate of contributions to the Legal Fund shall be $43.60 per employee per year. Effective January 1, 2015, the rate of contributions to the Legal Fund shall be $199.60 per employee per year.

## E. SUPPLEMENTAL RETIREMENT AND SAVINGS (SRSP) FUND

The Employer shall make contributions to a trust fund known as the "Building Service 32BJ Supplemental Retirement and Savings Fund" to cover bargaining unit employees who are regularly employed twenty (20) or more hours

per week, including paid time off, with employer contributions as hereinafter provided and tax exempt employee wage deferrals as provided by the Plan and/or Plan rules. Employer contributions for other bargaining unit employees shall also be required for each week in which they work twenty (20) or more hours, including paid time off. Effective April 21, 2014, the rate of contributions to the SRSF shall be $10.00 per week per employee.

For those Resident Managers and full-time Superintendents who have been employed as a Resident Manager or full-time Superintendent for at least two (2) years in that position in the building, the Employer shall contribute an additional $10.00 per week to the SRSF for time worked in that position.

The Employer shall contribute an additional $10.00 per week to the SRSF for each employee upon the employee's completion of 25 years of service, provided, however, that if as a result of the 2016 Commercial Building Agreement such employees receive additional pension benefits for years of service in excess of 25, the obligation under this provision shall cease on the effective date of the commencement of such additional benefits.

## F. PROVISIONS APPLICABLE TO ALL FUNDS

1. If the Employer fails to make required reports or payments to the Funds, the Trustees may in their sole and absolute discretion take any action necessary, including but not limited to immediate arbitration and suits at law, to enforce such reports and payments, together with interest and liquidated damages as provided in the Funds' trust agreements, and any and all expenses of collection, including but not limited to counsel fees, arbitration costs, fees and court costs.

Any Employer regularly or consistently delinquent in Health, Pension, Training, Legal and SRSP Fund payments may be required, at the option of the Trustees of the Funds, to provide the appropriate Trust Fund with a security guaranteeing prompt payment of such payments.

2. The Trustees of the Funds shall make such amendments to the Trust Agreements, and shall adopt such regulations as may be required to conform to applicable law, and which shall in any case provide that employees whose work comes within the jurisdiction of the Union (which shall not be considered to include anyone in an important managerial position)

may only be covered for benefits if the building in which they are employed has a collective bargaining agreement with the Union. Any dispute about the Union's jurisdiction shall be settled by the President of the Union and the RAB's President.

3. Employees shall have a waiting period of ninety (90) days before becoming eligible to be participants in the Funds and no contribution shall be made on behalf of the employees over the 90-day period.

4. Effective as of January 1, 2016, any contributions and benefits required hereunder (except SRSF) shall be increased by any amount and in the same manner as contributions and benefits may be increased in the Commercial Building Agreement to succeed the presently effective 2012 Commercial Building Agreement, and if in said successor agreement service fees are required to be paid, the same fees shall be required to be paid hereunder; provided, however, (i) the aggregate increase in contributions to the Health Fund and Pension Fund (including for this purpose any such contributions that would be payable if not for the reductions thereof by virtue of the application of the provisions of Section A.4 or Section B.7 effective anytime in 2016) shall not

exceed $20.80 per week per employee; and (ii) the aggregate increase in contributions to the Health Fund and Pension Fund (including for this purpose any such contributions that would be payable if not for the reductions thereof by virtue of the application of the provisions of Section A.4 or Section B.7 effective anytime in 2017) shall not otherwise exceed $23.20 per week per employee.

5. The parties agree that the Presidents of the RAB and Local 32BJ may determine, in their discretion and upon mutual consent, prior to the beginning of the calendar years beginning January 1, 2015, January 1, 2016, January 1, 2017 and January 1, 2018, to allocate any portion of the scheduled contributions in any of the Funds to any other Funds.

## ARTICLE XI
### Disability Benefits Law
### Unemployment Insurance Law

1. The Employer shall cover its employees so that they shall receive maximum weekly cash benefits provided under the New York State Disability Benefits Law on a non-contributory basis, and also under the New York State Unemployment Insurance Law, whether or not such coverages are mandatory.

2.   Failure to so cover employees makes the Employer liable to an employee for all loss of benefits and insurance.

3.   The Employer will cooperate with employees in processing their claims and shall supply all necessary forms, properly addressed, and shall post adequate notice of places for filing claims.

4.   If the employee requests workers' compensation benefits from the Employer then no sick leave shall be paid to such employee unless the employee specifically requests in writing payment of such leave. If an employee requests disability benefits from the Employer then only five (5) days sick leave shall be paid to such employee (if the employee has that amount unused) unless the employee specifically requests in writing payment of additional available sick leave.

5.   Any employee required to attend his/her Workers' Compensation hearing shall be paid for his/her regularly scheduled hours during such attendance.

6.   Any cost incurred by the Union to enforce the provisions of this Article shall be borne by the Employer.

7. The Parties agree to establish a committee under the auspices of the Building Service 32BJ Health Fund to investigate and report on the feasibility of self-insuring disability and unemployment benefits.

## ARTICLE XII
## Sickness Benefits

1. Any regular employee with at least one (1) year of service (as defined in Section 4 below) in the building or with the same Employer, shall receive in a calendar year from the Employer ten (10) paid sick days for bonafide illness.

Any employee entitled to sickness benefits shall be allowed five (5) single days of paid sick leave per year taken in single days. The remaining five (5) days of paid sick leave may be paid either for illnesses of more than one (1) day's duration or may be counted as unused sick leave days.

The employee shall receive the above sick pay whether or not such illness is covered by the New York State Disability Benefits Law or the New York State Workers' Compensation Act; however, there shall be no pyramiding or duplication of Disability Benefits and/or Workers' Compensation Benefits with sick pay.

2. An employee absent from duty due to illness only on a scheduled workday immediately before and/or only on the scheduled workday immediately after a holiday shall not be eligible for sick pay for said absent workday or workdays.

3. Employees who have continued employment to the end of the calendar year and have not used all sickness benefits shall be paid in the succeeding January, one full day's pay for each unused sick day.

Any employee who has a perfect attendance record for the calendar year shall receive an attendance bonus of $200.00 in addition to payment of the unused sick days.

For the purpose of this provision, perfect attendance shall mean that the employee has not used any sick days.

If an Employer fails to pay an employee before the end of February, then such Employer shall pay one additional day's pay unless the Employer challenges the entitlement or amount due.

4. For the purpose of this Article, one (1) year's employment shall be reached on the anniversary date of employment.

Employees who complete one (1) year of service after January 1, shall receive a pro rata share of sickness benefits for the balance of the calendar year.

A "regular" employee shall be defined as one who is a full or part time employee employed on a regular schedule. Those employed less than forty (40) hours a week on a regular basis shall receive a pro rata portion of sickness benefits provided herein computed on a forty (40) hour work week.

5.  All payments set forth in this Article are voluntarily assumed by the Employer, in consideration of concessions made by the Union with respect to various other provisions of this agreement, and any such payment shall be deemed to be a voluntary contribution or aid within the meaning of any applicable statutory provisions.

6.  The parties agree that on an annual basis the paid leave benefits provided regular employees under this Agreement are comparable to or better than those provided under the New York City Earned Sick Time Act., N.Y.C. Admin. Code §20-911 et seq. Therefore, the provisions of that Act are hereby waived.

# ARTICLE XIII
## Building Acquisition by Public Authority

Where a building is acquired by a public authority of any nature through condemnation, purchase or otherwise, the last owner shall guarantee the payment of termination pay and of accrued vacations due to the employees up to the date of transfer of title. The Union will, however, seek to have such authority assume the obligations for payments. If unsuccessful and the last owner becomes liable for such payments, the amounts thereof shall be liens upon any condemnation award or on any amount received by such last owner.

# ARTICLE XIV
## Building Classifications

1.   (a) Class A buildings are buildings where the assessed value of the land and building, based upon the 1935 assessment, divided by the number of rooms in the building, gives an assessed value of over $4,000 a room;

(b)  Class B buildings are buildings where the assessed value of the land and building, based upon the 1935 assessment, divided by the number of rooms in the building, gives an assessed value of over $2,000 a room, and not over $4,000 a room;

(c)  Class C buildings are buildings where the assessed value of the land and building, based upon the 1935 assessment, divided by the number of rooms in the building, gives an assessed value of $2,000 or less a room.

(d)  All non-publicly financed buildings now or in the future owned cooperatively or in condominium shall be classified Class A and wages shall be paid accordingly.

2.  In classifying buildings completed and opened for occupancy after the levying of the 1935 assessment, the first year of assessment shall control. Where a building is newly erected or remodeled and opened for occupancy after April 21, 1976, and where its proper classification as finally determined indicated that the employees had been paid wages lower than required under said classification, employees shall be paid retroactively all amounts they would have received under the proper classification.

3.  In calculating the number of rooms, a room shall be considered to be a rentable room enclosed by four (4) walls, with a door and with a window facing a street, court, areaway or airshaft.

4.    Bathrooms shall not be counted as rooms except in apartments of three rooms or less, where bathrooms shall be counted as halfrooms, but this provision shall not cause a revision of existing classifications.

5.    Rooms occupied by the superintendent and servants, if above cellar or basement level, shall be included in the total number of rooms.

6.    Where stores are on the ground floor, the number of rooms on that floor shall be considered to be the same number, less three, as on a typical floor.

7.    When eighty (80) percent of a building's area and total number of units are changed to commercial and/or professional occupancy, it shall be considered a commercial building no longer covered under this agreement but shall be covered under the applicable Commercial Building Agreement.

## ARTICLE XV
## Wages and Hours

A. BUILDING SERVICE EMPLOYEES OTHER THAN WORKING SUPERINTENDENTS

1. (a) Effective April 21, 2014, each employee covered hereunder shall receive a wage increase of sixty-four cents ($0.64) for each regular straight-time hour worked.

(b) Effective April 21, 2015, each employee covered hereunder shall receive a wage increase of fifty-two and one-half cents ($0.525) for each regular straight-time hour worked.

(c) Effective April 21, 2016, each employee covered hereunder shall receive a wage increase of fifty-five cents ($0.55) for each regular straight-time hour worked.

(d) Effective April 21, 2017, each employee covered hereunder shall receive a wage increase of sixty-nine and one-half cents ($0.695) for each regular straight-time hour worked.

(e) Additionally, the minimum hourly rate differentials for handypersons including all employees doing similar or comparable work by whatever title known, shall be increased

by five cents (5¢) effective April 21, 2014, April 21, 2015, April 21, 2016 and April 21, 2017 for each regular straight-time hour worked, and each such employee shall receive a wage increase in an amount necessary to bring them up to the new contract minimum.

(f)   Effective April 21, 2015, in the event that the percentage increase in the cost of living [Consumer Price Index for the City of New York Metropolitan Area (New York-New Jersey) Urban Wage Earners and Clerical Workers] from February 2014 to February 2015, exceeds 6.5% then, in that event, an increase of $.10 per hour for each full 1% increase in the cost of living in excess of 6.5% shall be granted effective for the first full workweek commencing after April 21, 2015. In no event shall said increase pursuant to this provision exceed $.20 per hour. In computing increases in the cost of living above 6.5%, less than .5% shall be ignored and increases of .5% or more shall be considered a full point. Any increases hereunder shall be added to the minimum.

(g)   Effective April 21, 2016, in the event that the percentage increase in the cost of living [Consumer Price Index for the City of New York Metropolitan Area (New York-New Jersey)

Urban Wage Earners and Clerical Workers] from February 2015 to February 2016, exceeds 6% then, in that event, an increase of \$.10 per hour for each full 1% increase in the cost of living in excess of 6% shall be granted effective for the first full workweek commencing after April 21, 2016. In no event shall said increase pursuant to this provision exceed \$.20 per hour. In computing increases in the cost of living above 6%, less than .5% shall be ignored and increases of .5% or more shall be considered a full point. Any increases hereunder shall be added to the minimum.

(h) Effective April 21, 2017, in the event that the percentage increase in the cost of living [Consumer Price Index for the City of New York Metropolitan Area (New York-New Jersey) Urban Wage Earners and Clerical Workers] from February 2016 to February 2017 exceeds 6%, then, in that event, an increase of \$.10 per hour for each full 1% increase in the cost of living in excess of 6% shall be granted effective for the first full work week commencing after April 21, 2017. In no event shall said increase pursuant to this provision exceed \$.20 per hour. In computing increases in the cost of living above 6%, less than 0.5% shall be ignored and increases of .5% or more shall be considered a full point. Any increases hereunder shall be added to the minimum.

(i)   Minimum wage rates shall be those set forth in the tables on pages 135-138 hereof, plus applicable cost of living increases, if any.

2.   (a) The standard workweek shall consist of five (5) days of eight (8) hours each, but the two (2) days off in such standard workweek need not be consecutive, except as provided in Article III, Section 3.

Overtime at the rate of time and one-half the regular straight-time hourly rate shall be paid for all hours worked in excess of eight (8) hours per day or forty (40) hours per week, whichever is greater. A paid holiday shall be considered as a day worked for the purpose of computing overtime pay.

Every employee shall be entitled to two (2) days off in each workweek and any work performed on such days shall be considered overtime and paid for at the rate of time and one-half.

The straight-time hourly rate shall be computed by dividing the weekly wage by the number of hours in the standard workweek.

(b)   Luncheon recess shall not be less than forty-five (45) minutes nor more than one (1) hour, and no employee shall be required to take time off in any workday in excess of one (1) hour

for luncheon recess without having such time charged against the Employer as working time.

(c) No regular full-time employees shall have their regular work hours, as set forth above, reduced below the standard workweek in order to effect a corresponding reduction in pay.

(d) Hours of work for all full-time employees shall be consecutive each day, except for the luncheon period.

(e) Any employee called in to work by the Employer for any time not consecutive with their regular schedule shall be paid for at least four (4) hours of overtime.

(f) Any employee who spends one full week or more performing work in a higher paying category shall receive the higher rate of pay for such service.

(g) Employees required to work overtime shall be paid at least one (1) hour at the overtime rate, except for employees working overtime due to absenteeism or lateness.

(h) Any employee who has worked eight (8) hours in a day and is required to work at least four (4) hours of overtime in that day, shall be given a $15.00 meal allowance.

(i)   No overtime shall be given for disciplinary purposes. An Employer shall not require an employee to work an excessive amount of overtime.

(j)   The Employer agrees to use its best efforts to provide a minimum of sixteen (16) hours off between shifts for its employees.

## B.   WORKING SUPERINTENDENTS

1. (a)   Effective April 21, 2014, Superintendents covered by this agreement shall receive a $28.60 weekly wage increase.

(b)   Effective April 21, 2015, Superintendents covered by this agreement shall receive a $24.00 weekly wage increase.

(c)   Effective April 21, 2016, Superintendents covered by this agreement shall receive a $25.00 weekly wage increase.

(d) Effective April 21, 2017, Superintendents covered by this agreement shall receive a $30.80 weekly wage increase.

(e) Superintendents shall be covered under the same provision regarding cost of living increases set forth in Section A, paragraphs 1 (f), (g) and (h) of this Article applicable to other employees.

(f)   Certain special Superintendents agreements covering unusual cases, including part-time and workout Superintendents, shall be negotiated individually as heretofore.

2.   (a) The standard workweek shall consist of five days (40 hours) but the two (2) days off in such workweek need not be consecutive. The Employer may reschedule the Superintendent's days off, either consecutively or non-consecutively; provided, however, that the Employer must give the Superintendent at least one (1) week's notice of any change in scheduled days off.

(b)   In all other respects the building's present practices as to the Superintendent's duties shall continue and, as heretofore, the Superintendent shall take care of emergencies. If he/she is required by the Employer to perform other than emergency work on his days off, he/she shall receive equivalent time off during the same workweek or a day's pay at the time and one-half rate, as the case may be, by agreement between the Employer and Superintendent. Nothing herein shall be construed to affect any rights a Superintendent may have under the Fair Labor Standards Act.

(c)  The Superintendent shall not be required to do work in conflict with law.

(d)  When an obvious inequity exists by reason of a Superintendent's regular application of highly specialized abilities in his/her work, or where this work imposes special or substantial additional responsibilities, the Union may question the amount of the Superintendent's wage once during the term of this Agreement through grievance and arbitration.

## ARTICLE XVI
## Provisions Applicable to
## Superintendents Only

A.  JOB SECURITY AND SEVERANCE PAY FOR WORKING SUPERINTENDENTS

1.  If the building is demolished or there is a bona fide transfer of title or leasehold resulting in a substantial change in the beneficial interest in the building, the Employer will pay the Superintendent on or about the date of demolition or transfer of title the severance pay provided for below, plus accrued vacation credits, unless the Employer offers an equivalent position in the same or in another building without loss of seniority. If the Employer does not offer such an equivalent position and the Superintendent receives severance

pay, and if the new Employer continues the Superintendent on the job and becomes party to this agreement, seniority for severance pay purposes shall be computed from the date of transfer of title or change in beneficial interest.

2. If the Employer discharges the Superintendent for reasons other than those set forth in Section 5 below, it shall give the Superintendent thirty (30) days' written notice by registered mail or personal service to vacate the apartment he/she occupies in the building. If the Superintendent does not contest his/her discharge, he/she shall receive an additional thirty (30) days to vacate the apartment. If the Superintendent is required to do any work during this notice period, he/she shall be paid at his/her regular rate of pay.

A Superintendent who voluntarily vacates said apartment within thirty (30) days after notice  (sixty (60) days if discharge is not contested) shall receive severance pay or moving expenses on the following basis according to length of service:

Less than 6 months .....$1000 moving expenses
6 months but less than 2 years......4 weeks' pay
2 years but less than 3 years .........5 weeks' pay
3 years but less than 4 years .........6 weeks' pay

4 years but less than 5 years .........7 weeks' pay
5 years but less than 6 years .........8 weeks' pay
6 years but less than 7 years .........9 weeks' pay
7 years but less than 8 years .......10 weeks' pay
8 years or more. .........................11 weeks' pay

unless the Superintendent deliberately provoked his/her dismissal, or his/her conduct constituted a willful or substantial violation of the obligations of his employment, but this limitation shall not apply to moving expenses.

3.    The Union may question the propriety of the termination of the Superintendent's services and demand reinstatement, or severance pay, if any, as the case may be, by filing a grievance within fifteen (15) calendar days following receipt by the Superintendent of the notice to vacate, on the charge that the Employer acted arbitrarily; provided, however, that the time to file a claim for severance pay shall not be limited in a case where the Employer fails to honor an agreement with the Superintendent or the Union to pay severance pay. If the matter is not adjusted through the grievance procedure, it shall be submitted for final determination to the Arbitrator who may sustain the termination with such severance pay, if any, as the case may be, or order reinstatement. The Arbitrator shall give due consideration to the Superintendent's

fiduciary and management responsibilities and to the need for cooperation between the Superintendent and the Employer.

4. The Employer's notice to the Superintendent to vacate the apartment shall be considered held in abeyance and the effective date thereof considered postponed, if necessary, until the matter is adjusted or determined through grievance or arbitration; but the Union must exercise its right to question the Employer's action within the prescribed time and the matter must be processed with reasonable promptness.

No employer shall commence an eviction proceeding, or seek to collect use and occupancy prior to an arbitrator's award provided that the superintendent agrees in writing not to contest an eviction proceeding in the event that the arbitrator has upheld the discharge. There shall be no interruption of utilities or other essential services to the superintendent's apartment prior to the date an arbitrator's award ordering such superintendent to vacate his/her apartment.

5. The Employer, by written notice served personally or by registered mail, may require the Superintendent to vacate the living premises immediately in exceptional cases where the

Superintendent's continued presence might jeopardize the tenants, employees, or the building and where the proper operation of the building requires the immediate employment of a replacement. The Union may question the termination of the Superintendent's services by filing a grievance within seven (7) calendar days following the receipt by the Superintendent of the notice to vacate.

6.    The provision for arbitration of discharge shall not apply for the first six (6) months of a Superintendent's employment.  Upon agreement between the Union and the Employer with respect to any individual Superintendent or Resident Manager, the provision for arbitration of discharge shall not apply for an additional six (6) months of a Superintendent's or Resident Manager's employment.  For grievances arising during the first two (2) months of employment, the presentation period referred to in Article V, Section 7 shall be 240 days.

7. Any   Superintendent   resigning   or terminated because of physical or mental inability to perform duties shall receive severance pay in addition to accrued vacation credits based upon the schedule provided in this Article.

Such a Superintendent may resign and receive severance pay if he/she submits satisfactory evidence of such inability at the time of termination, unless, because of circumstances connected with his/her condition, the Superintendent is unable to comply with this requirement.

In the event of a dispute concerning the sufficiency of the evidence, the matter shall be resolved in accordance with Article XIX, paragraph 20.

## B.   COVERAGE OF AGREEMENT

1.   All Superintendents for whom the Union is the collective bargaining agent are covered under this agreement unless they are covered by the Resident Managers Agreement. Effective immediately, the assents for the Apartment Building Agreement and Resident Managers Agreement shall be submitted in one form.

2.   Superintendents employed in buildings with six (6) or more employees shall hereafter be covered by the Resident Managers Agreement except that incumbent Superintendents previously covered by the Apartment Building Agreement shall continue to receive wage increases on dates set forth by

the Apartment Building Agreement. Successor Superintendents shall receive increases set forth by the Resident Managers Agreement.

3.   Buildings included in Section 2 hereof shall cease to be covered by the Resident Managers Agreement and the Superintendents in such buildings shall thereafter be covered by this Agreement if during the life of this agreement the work force in such buildings drops below six (6) including the Superintendent.

4.   The provisions of Section 2 hereof to the contrary notwithstanding, any building with fewer than six (6) building service employees, including the Superintendent, which was covered by the 2010 Resident Managers Agreement shall be covered by the 2014 Resident Managers Agreement for the Superintendent until one of the following occurs:

(a)  Legal title of the building is transferred

(b)  There is a change in Employer

(c)  There is change in Superintendent

(d)  There is a reduction in force

(e)   There is a violation of Article I of this Agreement or Article II of the Resident Managers Agreement (Subcontracting).

Immediately upon the occurrence of any of the above events, the building shall be covered by the Working Superintendents provision of the 2014 Apartment Building Agreement for the Superintendent.

If as a result of one of the above events there is a new Employer, such Employer shall not have access to the 2014 Resident Managers Agreement for the Superintendent.

5.   Buildings which do not fall within any category set forth in Section 2 hereof, will be covered by the 2014 RAB Working Superintendents section of this agreement regardless of the size of the work force.

6.   (a) Resident Managers will not perform the duties of apartment building employees on strike after the expiration of the 2014 Apartment Building Agreement except for:

(1)   Emergencies involving health and safety of the building.

(2) Work which the Resident Manager normally performs during non-strike periods.

(b) Violation of Section 6(a) hereof will cancel the existing Resident Managers Agreement for the building in which the violation occurs and the Resident Manager will be covered by the successor RAB Working Superintendent section of the Apartment Building Agreement for the term of such successor agreement.

7. The Union will not interfere with Resident Managers in the performance of their assigned non-bargaining unit duties. The bargaining unit referred to herein is the unit under the 2014 Apartment Building Agreement.

## ARTICLE XVII
### Joint Industry Advancement Project

The Union and the RAB recognize that they have a common interest in pursuing efforts that will promote development and growth in the real estate industry, as growth and development (1) create a favorable business environment for real estate industry employers and provide enhanced job opportunities; (2) strengthen communities and New York City's economy; and (3) provide a path for a viable future for New York City. The Union

and the RAB agree to establish this Joint Industry Advancement Project to further their common interest, upon the following terms:

1. The Project will be directed by ten (10) directors, five (5) appointed by the Union and five (5) appointed by the RAB. The board of directors shall have two (2) co-chairs, one appointed by the Union and one appointed by the RAB. The Directors may be replaced at will by the respective appointing parties.

2. The Board of Directors of the Project shall meet at least quarterly, or more frequently if the co-chairs so direct. No action may be taken by the Project except upon unanimous consent. Voting shall be by blocks, the five Union-appointed Directors collectively shall cast one vote, and the five (5) RAB-appointed Directors collectively shall cast one vote.

3. The Project may hire employees and contract for services, including accounting and legal services, provided that no financial, contractual or other obligation may be incurred by the Project except upon a vote of the Directors, as provided in paragraph 2.

4. The Union and the RAB may contribute funds and/or provide assistance to the Project

upon such terms as are agreed to jointly by the RAB and the Union.

5. The actions which the Project may undertake shall include, without limitation, education, research, advertising, and/or publicity for the purpose of enhancing development and growth of the real estate industry.

6. Either in discussions among Directors of the Project, or otherwise, the Union and the RAB commit to disclosing in good faith their respective views and positions on issues of importance to the real estate industry or the Union.

7. The Union and the RAB agree that they shall refrain, insofar as practicable and except as warranted by a change of circumstances, from taking positions on issues contrary to the positions taken by the Project.

8. This Project may be terminated by either the RAB or the Union on thirty (30) days' notice to the other party. Any assets or liabilities of the Project at the time of termination shall be allocated equally to the RAB and the Union.

## ARTICLE XVIII
### New Development

The Union and the RAB recognize (1) that real estate development strengthens communities and enhances New York's economy; (2) that the economics of developments are complex and not uniform; and (3) that successful development is important to all stakeholders, and to the people of the City of New York. Therefore, the parties shall establish a sitting New Development Committee whose members shall determine, on a project-by-project basis, wage and benefit standards that accord with the needs of the parties and are consistent with applicable law for employees in newly constructed buildings. Any such standards shall be determined only upon the mutual agreement of the Union and the RAB. Any action or inaction of the committee shall not be reviewable in any forum. The committee shall be comprised of an equal number of persons appointed by the President of the Union and the President of the RAB.

# ARTICLE XIX
## General Clauses

1. *Differentials.*

Existing wage differentials among classes of workers within a building shall be maintained. It is recognized that wage differentials other than those required herein may exist or arise because of wages above the minima required by this agreement. No change in such differentials shall be considered a violation of this agreement unless it appears that it results from an attempt to break down the wage structure for the building.

Where an obvious inequity exists by reason of an employee's regular application of specialized abilities in their work, the amount or correctness of the differential or wage may be determined by grievance and/or arbitration.

Notwithstanding the above, it is understood that licensed engineers covered under this Agreement shall receive the same wages and benefits as paid to engineers under the Realty Advisory Board (RAB) Agreement covering licensed engineers in New York City except that Pension, Health, Legal and Training Fund contributions shall continue to be paid under the terms of this Agreement.

2. *Pyramiding.*

There shall be no pyramiding of overtime pay, sick pay, holiday pay or any other premium pay. If more than one of the aforesaid are applicable, compensation shall be computed on the basis giving the greatest amount.

3. *Holidays* – The following are the recognized contract holidays:

| HOLIDAY | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|
| New Year's Day | | Jan. 1 Thursday | Jan. 1 Friday | Jan. 1 Sunday | Jan. 1 Monday |
| Martin Luther King Day | | Jan. 19 Monday | Jan. 18 Monday | Jan. 16 Monday | Jan. 15 Monday |
| Presidents' Day | | Feb. 16 Monday | Feb. 15 Monday | Feb. 20 Monday | Feb. 19 Monday |
| Memorial Day | May 26 Monday | May 25 Monday | May 30 Monday | May 29 Monday | |
| Independence Day | July 4 Friday | July 4 Saturday | July 4 Monday | July 4 Tuesday | |
| Labor Day | Sept. 1 Monday | Sept. 7 Monday | Sept. 5 Monday | Sept. 4 Monday | |
| Columbus Day | Oct. 13 Monday | Oct. 12 Monday | Oct. 10 Monday | Oct. 9 Monday | |
| Election Day | Nov. 4 Tuesday | Nov. 3 Tuesday | Nov. 8 Tuesday | Nov. 7 Tuesday | |
| Thanksgiving Day | Nov. 27 Thursday | Nov. 26 Thursday | Nov. 24 Thursday | Nov. 23 Thursday | |
| Christmas Day | Dec. 25 Thursday | Dec. 25 Friday | Dec. 25 Sunday | Dec. 25 Monday | |

Elective Holiday: Select one of the following or a personal day at the option of the employee.

| HOLIDAY | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|
| Lincoln's Birthday | | Feb. 12 Thursday | Feb. 12 Friday | Feb. 12 Sunday | Feb. 12 Monday |
| Good Friday | | Apr. 3 Friday | Mar. 25 Friday | Apr. 14 Friday | Mar. 30 Friday |
| Eid al-Fitr | July 29 Tuesday | July 18 Saturday | July 6 Weds. | June 25 Sunday | |
| September 11 | Sept. 11 Thursday | Sept. 11 Friday | Sept. 11 Sunday | Sept. 11 Monday | |
| Yom Kippur | Oct. 4 Saturday | Sept. 23 Wednesday | Oct. 12 Wednesday | Sept. 30 Saturday | |
| Veterans Day | Nov. 11 Tuesday | Nov. 11 Wednesday | Nov. 11 Friday | Nov. 11 Saturday | |

In the event the employee selects a personal day in accordance with the above schedule it shall be granted according to the following provision:

Employees entitled to a personal day may select such day off on five (5) days notice to the Employer provided such selection does not result in a reduction of employees in the building below 75% of the normal work staff. Such selection shall be made in accordance with seniority.

The Employer shall post a holiday schedule on the bulletin board and it shall remain posted throughout the year.

Employees shall receive their regular straight time hourly rates for the normal eight (8) hour working day not worked, and if required to work on a holiday, shall receive in addition to the pay above mentioned, premium pay at the rate of time and one-half their regular straight-time hourly rate of pay for each hour worked with a minimum of four (4) hours premium pay. Any employee who is required to work on a holiday beyond eight (8) hours shall continue to receive the compensation above provided for holiday work, namely pay at regular straight-time rate plus premium pay at time and one-half regular straight-time rate.

Any regular full-time employee ill in any payroll week in which a holiday falls is entitled to holiday pay or corresponding time off (meaning one day) if the employee worked at least one (1) day during the said payroll week.

Any regular full-time employee whose regular day(s) off falls on a holiday, shall receive an additional day's pay therefore or at the option of the Employer, an extra workday off within ten (10) days immediately preceding or succeeding the holiday. If the employee receives the extra day off before the holiday and employment is terminated for any reason whatever, the employee shall not be required to compensate the Employer for that day.

Holiday Substitution Committee. The parties shall form a joint committee to evaluate the potential substitution of personal days for holidays provided under Article XIX, Section 3. The Committee shall be empowered to consider and/or implement a pilot program at selected buildings, select holidays appropriate for substituting, and establish guidelines for the scheduling of personal days.

4. *Personal Day.*

All employees shall receive a personal day in each contract year. This personal day is in addition to the holidays listed in paragraph 3 above. The personal day shall be scheduled in accordance with the following provision:

Employees may select such day off on five (5) days notice to the Employer provided such selection does not result in a reduction of employees in the building below 75% of the normal work staff. Such selection shall be made in accordance with seniority.

5. *Voting Time.*

Election Day is a recognized holiday and any employee who is required to work and who gives legal notice shall be allowed two (2) hours

off, such hours to be designated by the Employer, while the polls are open. Said two (2) hours shall be included in the eight (8) hour day for which such employee receives his regular straight-time idle pay, but shall not be considered as hours actually worked for the purpose of premium pay.

6. *Schedules.*

Overtime, Sunday and holiday work shall be evenly distributed so far as is compatible with the efficient operation of the building, except where Sunday is a regular part of the workweek.

7. *Relief Employees.*

Relief or part-time employees shall be paid the same hourly rate as full-time employees in the same occupational classification.

8. *Method of Payment of Wages.*

All wages, including overtime, shall be paid weekly in cash or by check, with an itemized statement of payroll deductions.

If a regular pay day falls on a holiday, employees shall be paid on the day before.

Employees paid by check who work during regular banking hours shall be given reasonable time to cash their checks exclusive of their break and lunch period. The Employer shall make suitable arrangements at a convenient bank for such check cashing.

In the event an Employer's check to an employee for wages is returned due to insufficient funds on a bona fide basis twice within a year's period, the Employer shall be required to pay all employees by cash or certified check.

The Employer may require, at no cost to the employee, that an employee's check be electronically deposited at the employee's designated bank or a paycheck card may be utilized. The Union shall be notified by the Employer of this arrangement.

The Union recognizes that certain employees and Employers desire to utilize a bi-weekly payroll schedule. Employers recognize that bi-weekly pay may create hardships for certain employees. The parties have previously agreed to create an industry-wide committee to study the bi-weekly pay issue. The industry-wide committee is now authorized to conduct pilot programs instituting bi-weekly pay at any selected residential building(s) where the Union

and the Employer agree to institute bi-weekly pay. If bi-weekly pay is permitted under the Commercial Building Agreement, then it should be permitted under this Agreement.

9. *Leave of Absence and Pregnancy Leave.*

(a)  Once during the term of this Agreement, upon written application to the Employer and the Union, a regular full-time employee (excluding a working Superintendent) employed in the building for five (5) years or more shall be granted a leave of absence for illness or injury not to exceed six (6) months.

The leaves of absence outlined above are subject to an extension not exceeding six (6) months in the case of bona fide inability to work whether or not covered by the New York State Workers' Compensation Law or New York State Disability Benefits Law. When such employee is physically and mentally able to resume work, that employee shall on one (1) week's prior written notice to the Employer be then reemployed with no seniority loss.

In cases involving on-the-job injuries, employees who are on medical leave for more than one (1) year may be entitled to return to their jobs if there is good cause shown.

(b) Regular full-time employees (excluding a working Superintendent) employed for two (2) years but less than five (5) years shall be granted a leave of absence for illness or injury not to exceed one hundred twenty (120) days.

(c) In buildings where there are more than four (4) employees, an employee shall be entitled to a four (4) week leave of absence without pay for paternity/maternity leave. The leave must be taken immediately following the birth or adoption of the child.

Pregnancy shall be treated as any other disability suffered by an employee in accordance with applicable law.

(d) Once every five (5) years, upon six (6) weeks' written application to the Employer, a regular full-time employee (excluding a working Superintendent) employed in the building for five (5) years or more shall be granted a leave of absence for personal reasons not to exceed four (4) months. Upon returning to work, the employee shall be reemployed with no loss of seniority. Any time limitation with regard to the six (6) weeks written application shall be waived in cases where an emergency leave of absence is required.

(e) Any employee requesting a personal leave of absence shall be covered for health benefits during the period of the leave provided the employee requests welfare coverage while on leave of absence and pays the Employer in advance for the cost of same.

(f) Any employee on leave due to workers' compensation or disability shall continue to be covered for health benefits without the necessity of payment by the Employer in accordance with Article X, Paragraph A, Sub-paragraph 1.

(g) Any Employer who is required by law to comply with the provisions of the Family and Medical Leave Act (FMLA) shall comply with the requirements of said Act. All leaves under paragraphs (a), (b) and (c) of this Section will run concurrently with applicable FMLA leave and/or applicable State or City law leave requirements.

(h) The RAB will encourage Employers to cooperate in granting leaves of absence for Union business.

10. *Vacations and Vacation Replacements.*

a. Every employee employed with substantial continuity in any building or by the same Employer shall receive each year a vacation with pay, as follows:

Employees who have worked:

| | |
|---|---|
| 6 Months | 3 working days |
| 1 Year | 2 weeks |
| 5 Years | 3 weeks |
| 15 Years | 4 weeks |
| 21 Years | 21 working days |
| 22 Years | 22 working days |
| 23 Years | 23 working days |
| 24 Years | 24 working days |
| 25 Years | 5 weeks |

Length of employment for vacation shall be based upon the amount of vacation an employee would be entitled to on September 15th of the year in which the vacation is given, subject to grievance and arbitration where the result is unreasonable.

Part-time employees regularly employed shall receive proportionate vacation allowance based on the average number of hours per week they are employed.

Firemen who have worked substantially one (1) firing season in the same building or for the same Employer, when laid off, shall be paid at least three (3) days' wages in lieu of vacation.

Firemen who have been employed more than one (1) full firing season in the same building or

by the same Employer shall be considered full-time employees in computing vacations.

Regular days off and contract holidays falling during the vacation period shall not be counted. If a contract holiday falls during the employee's vacation period, the employee shall receive an additional day's pay therefore, or, at the Employer's option, an extra day off within ten (10) days immediately preceding or succeeding a vacation.

Vacation wages shall be paid prior to the vacation period unless otherwise requested by the employee, who is entitled to actual vacation and who cannot instead be required to accept money.

Any Employer who fails to pay vacation pay in accordance with this provision where the vacation has been regularly scheduled shall pay an additional two (2) days pay for each vacation week due at that time.

When compatible with the proper operation of the building, choice of vacation periods shall be according to building seniority and confined to the period beginning May 1st and ending September 15th of each year. These dates may be changed and the third vacation week may be

taken at a separate time by mutual agreement of the Employer and the employee.

The fourth and fifth week of vacation may, at the Employer's option, be scheduled, upon two (2) weeks' notice to the employee, for a week or two weeks other than the period when the employee takes the rest of his/her vacation.

Any employee leaving their job for any reason, shall be entitled to a vacation accrual allowance computed on the employee's length of service as provided in the vacation schedule based on the elapsed period from the previous September 16th (or from the date of the employee's employment if later employed) to the date of their leaving. Any employee who has received a vacation during the previous vacation period (May 1st through September 15th) and who leaves their job during the next vacation period under circumstances which entitled the employee to vacation accrual rights, shall be entitled to full vacation accrual allowances instead of on the basis of the elapsed period from the previous September 16th. Any employee who has received no vacation and has worked at least six (6) months before leaving their job shall be entitled to vacation allowance equal to the vacation allowance provided above.

No employees leaving their positions of their own accord shall be entitled to accrued vacation unless the employee gives five (5) working days' termination notice.

Any Employer assuming this Agreement shall be responsible for payment of vacation pay and granting of vacations required under this Agreement which may have accrued prior to the Employer taking over the building less any amounts paid or given for that vacation year. In the event that the Employer terminates its Employer-employee relationship under this agreement and the successor Employer does not have an agreement with the Union providing for at least the same vacation benefits, the Employer shall be responsible for all accrued vacation benefits.

b. A person hired solely for the purpose of relieving employees for vacation shall be paid 60% of the minimum applicable regular hourly wage rate. Should a vacation relief employee continue to be employed beyond five months, such employee shall be paid the wage rate of a new hire or experienced person as the case may be. If a vacation replacement is hired for a permanent position immediately after working as a vacation replacement, such employee shall be credited with time worked as a vacation replacement toward completion of the 30-month

or 42-month period required to achieve the full rate of pay under the "New Hires" provision.

In the event that the arbitrator finds that an Employer is using this rate as a subterfuge, such arbitrator may, among other remedies, award full pay from the date of employment at the applicable hiring rate.

No contribution to any Benefit Funds shall be made for a vacation relief person. Vacation relief persons are not eligible for 32BJ Benefit Fund coverage.

11. *Day of Rest.*

Each employee shall receive at least one (1) full day of rest in every seven (7) days.

12. *Uniforms and Other Apparel.*

Uniforms and work clothes where they have been required by the Employer or where necessary for the job shall be supplied and maintained by the Employer. All uniforms shall be appropriate for the season.

It is understood that where the Employer does not require uniforms, the employees shall be free to wear suitable clothing of their choice.

Employees doing outside work shall be furnished adequate wearing apparel for the purpose.

In buildings of 500,000 square feet or more, the Employer shall be required to furnish uniforms and work clothes.

13. *First Aid Kit.*

An adequate and complete first aid kit shall be supplied and maintained by the Employer in a place readily available to all employees.

14. *Fire and Flood Call.*

Employees on fire and/or flood call shall be reimbursed for all loss of personal effects incurred in the line of duty.

15. *Eye Glasses and Union Insignia.*

Employees may wear eye glasses and the Union insignia while on duty.

16. *Bulletin Board.*

A bulletin board shall be furnished by the Employer exclusively for Union announcements and notices of meetings.

17. *Sanitary Arrangements.*

Adequate sanitary arrangements shall be maintained in every building, and individual locker and key thereto and rest room key, where rest room is provided, and soap, towels and washing facilities, shall be furnished by the Employer for all employees. The rest room and locker room shall be for the sole use of employees servicing and maintaining the building.

18. *Replacements, Promotions, Vacancies, Trial Period, Seniority and Newly Hired Employees.*

a. In filling vacancies or newly created positions in the bargaining unit, preference shall be given to those employees already employed in the building, based upon the employee's seniority, but training, ability, efficiency, appearance and personality for a particular job, shall also be considered.

All vacancies and newly created positions shall be subject to a posting in the respective building for a period of seven (7) calendar days so that bargaining unit employees can express an interest in filling the position. In buildings where the Employer employs fifteen (15) or

more employees, if the filling of the initially posted vacancy or newly created position causes another vacancy, that vacancy shall be subject to a posting in the building. Any subsequent vacancy caused by the filling of a posted position shall not be required to be posted before being filled.

If a present employee cannot fill the job vacancy, the Employer must fill the vacancy in accordance with the other terms of this collective bargaining agreement.

In the event that a new classification is created in a building, the Employer shall negotiate with the Union a wage rate for that classification.

In case of layoffs due to reduction of force, departmental seniority shall be followed, except as provided in Article XIX, Section 20(c) below, with due consideration for the efficiency and special needs of the department.

In filling vacancies or newly created positions the wages shall be those prevailing and in force in the building for similar work, excluding extra pay attributable to years of service or special considerations beyond the requirements of the job which the replacement is not qualified to meet.

In applying the foregoing paragraphs, the judgment of the Employer shall control, subject to grievance and arbitration.

b. There shall be a trial period for all newly hired employees for sixty (60) calendar days except as provided for Superintendents in Article XVI, Section A, paragraph 6.

c. Anyone employed as a vacation replacement, extra or contingent with substantial regularity for a period of four (4) months or more shall receive preference in steady employment, other considerations being equal.

d. The seniority date for all positions under the agreement shall be the date the employee commenced working in the building for the agent and/or owner regardless of whether there is a collective bargaining agreement and regardless of the type of work performed by the employee.

e. A New Hire employed in the "other" category shall be paid a starting rate of eighty percent (80%) of the minimum wage rate. A New Hire employed as a "superintendent" in a building with five (5) or fewer employees may be paid a starting rate of eighty percent (80%) of the applicable contract rate.

Upon completion of thirty (30) months of employment, the New Hire shall be paid the full minimum wage rate. For purposes of this provision, thirty (30) months of employment shall include each month (counting portions of a month in excess of fifteen (15) days as a full month but excluding employment as a vacation relief unless such vacation relief work immediately precedes permanent hire as noted in Section 10(b) above) that a New Hire worked in the New York City Building Industry ("Industry") during the twenty-four (24) months immediately preceding the date of hire by the current employer.

A New Hire hired on or after April 21, 2014 shall be paid seventy-five percent (75%) of the applicable minimum regular hourly wage rate for the first twenty-one (21) months of employment. Such employees shall be paid eighty-five percent (85%) of the applicable minimum regular hourly wage rate for the twenty-second (22nd) through forty-second (42nd) month of employment. Upon completion of forty-two (42) months of employment, such employees shall be paid the full minimum wage rate. For purposes of this provision, twenty-one (21) months of employment and forty-two (42) months of employment shall include each month (counting portions of a month in excess of fifteen (15)

days as a full month but excluding employment as a vacation relief unless such vacation relief work immediately precedes permanent hire as noted in Section 10(b) above) that a New Hire worked in the Industry during the twenty-four (24) months immediately preceding the date of hire by the current employer.

Any employee who was employed in the industry as of April 20, 1997 shall be considered an "Experienced Employee." An Experienced Employee shall receive the full minimum rate of pay from the date of hire.

There shall be no Employer contributions to the Building Service Pension Fund on behalf of any New Hire employed in the category of "Other" during the first year of employment. Employer contributions for employees described above shall be required commencing on the first day of the month following the employee's completion of twelve (12) calendar months of employment with the Employer, less the number of calendar months (counting portions of a month in excess of fifteen (15) days as a full month) worked in the Industry during the preceding two (2) years (excluding employment as a vacation relief unless such vacation relief work immediately precedes permanent hire as noted in Section 10(b) above).

There shall be no Employer contributions to the Supplemental Retirement and Savings Fund on behalf of any New Hire employed in the category of "Other" during the first two (2) years of employment. Employer contributions for employees described above shall be required commencing on the first day of the month following the employee's completion of twenty-four (24) calendar months of employment with the Employer, less the number of calendar months (counting portions of a month in excess of fifteen (15) days as a full month) worked in the Industry during the preceding two (2) years (excluding employment as a vacation relief unless such vacation relief work immediately precedes permanent hire as noted in Section 10(b) above).

Contributions to the Building Service Pension Fund and Supplemental Retirement and Savings Fund shall commence after three (3) months of employment for employees hired in job categories other than "Other" and Experienced Employees (those employed in the Industry as of April 20, 1997).

No experienced employee may be terminated or denied employment for the purpose of discrimination on the basis of his/her compensation and/or benefits.

The Union may grieve such discrimination in accordance with the grievance and arbitration provisions of the Agreement (Article V and Article VI).

If the arbitrator determines an experienced employee has been terminated or denied employment because of such discrimination, the arbitrator shall:

(1) In case of termination—reinstate the experienced employee with full back pay and all benefits retroactive to date of experienced employee's discharge.

(2) In case of failure to hire—If the arbitrator determines that an experienced employee was not given preference for employment absent good cause, he or she shall direct the Employer to hire the experienced employee with full back pay and benefits retroactive to date of denial of hire.

19. *Recall, Job Vacancies and Agency Fee.*

(a) Any employee who has been employed for one (1) year or more in the same building, and who is laid off, shall have the right of recall, provided that the period of the layoff of such employee does not exceed six (6) months.

Recall shall be in the reverse order of laid off employee's departmental seniority. The Employer shall notify by certified mail, return receipt requested, the last qualified laid off employee at their last known address, of any job vacancy and a copy of this notice shall be sent to the Union. The employee shall then be given seven (7) days from the date of mailing of the letter in which to express in person or by registered or certified mail a desire to accept the available job. In the event any employee does not accept recall, successive notice shall be sent to qualified employees until the list of qualified employees is exhausted.

Upon reemployment, full seniority status, less period of layoff, shall be credited to the employee. Any employee who received termination pay and is subsequently rehired shall retain said termination pay and for purpose of future termination pay shall receive the difference between what the employee has received and what the employee is entitled to if subsequently terminated at a future date. Any vacation monies paid shall be credited to the Employer against the current vacation entitlement. Further, in the event an Employer or agent has a job vacancy in a building where there are no qualified employees on layoff status, the Employer or agent shall use its best

efforts to fill the job vacancy from qualified employees of the Employer or agent who are on layoff status from other buildings.

(b) Upon the occurrence of any job vacancy not filled by current employees of the Employer, or employees recalled pursuant to other provisions of this Agreement, the Employer shall notify the Union and the New York State Employment Bureau (NYSEB) two (2) weeks prior to the existence of a vacancy. Such notice shall be confirmed in writing. In the event the Employer does not have two (2) weeks notice, it shall notify the Union and the NYSEB upon notice of the vacancy. The NYSEB or the Union shall refer qualified applicants to such a vacancy within three (3) working days of the request, or shorter periods in the case of emergencies. If the NYSEB or the Union is unable to refer qualified applicants satisfactory to the Employer within three (3) working days, or such shorter period required by an emergency, the Employer shall be free to hire in the open market.

This procedure shall not be applicable if the Employer hires directly an employee experienced in the building service industry.

When the Employer has hiring procedures which substantially make available work to

experienced employees in the building service industry, the parties shall waive this provision by mutual agreement. If the parties cannot agree, the matter shall be submitted to arbitration.

In the event the Union establishes a hiring hall during the life of this Agreement, appropriate substitute language shall be agreed upon.

No employee shall be employed through a fee charging agency unless the Employer pays the full fee.

20. *Termination Pay.*

(a) In case of termination of employment because of the employee's (excluding a working Superintendent) physical or mental inability to perform their duties, the employee shall receive, in addition to accrued vacation, termination pay according to service in the building or with the same owner, whichever is greater, as follows:

| Employees with: | Pay: |
|---|---|
| 5 but less than 10 years | 1 week's wages |
| 10 but less than 12 years | 2 weeks' wages |
| 12 but less than 15 years | 3 weeks' wages |
| 15 but less than 17 years | 6 weeks' wages |

| | |
|---|---|
| 17 but less than 20 years. | ..........7 weeks' wages |
| 20 but less than 25 years | ...........8 weeks' wages |
| 25 or more | ...............................10 weeks' wages |

An employee physically or mentally unable to perform their duties may resign and receive the above termination pay if the employee submits written certification from a physician of such inability at the time of termination. In such event, the Employer may require the employee to submit, at the Employer's expense, to a medical examination by a physician designated by the Employer to determine if in fact the employee is physically or mentally unable to perform their duties. If the Employer's designated physician disagrees with the physician's certification submitted by the employee, the employee shall be examined by a physician designated by the Medical Director of the Building Service Health Fund to make a final and binding determination whether the employee is physically or mentally unable to perform their duties.

(b) In case of termination of employment for any reason other than just cause or in accordance with paragraph (a) above, the employee shall receive, in addition to accrued vacation, termination pay according to years of service in the building or with the same owner, whichever is greater, as follows:

| Employees with: | Pay: |
|---|---|
| 0-5 years | 1 week's wages |
| 5 but less than 10 years. | 2 weeks' wages |
| 10 but less than 12 years | 4 weeks' wages |
| 12 but less than 15 years | 5 weeks' wages |
| 15 but less than 17 years | 7 weeks' wages |
| 17 but less than 20 years | 8 weeks' wages |
| 20 but less than 22 years. | 9 weeks' wages |
| 22 but less than 25 years | 10 weeks' wages |
| 25 or more | 11 weeks' wages |

(c)  The right to accept termination pay and resign where there has been a reduction in force shall be determined by seniority, and notice of such an intended layoff shall be posted in the building. If no senior employee wishes to exercise their rights under this provision, the least senior employees shall be terminated and shall receive applicable termination pay.

(d)  "Week's pay" in the above paragraphs means the regular straight-time weekly pay at the time of termination. If the Employer offers part-time employment to the employee entitled to termination pay, the employee shall be entitled to termination pay for the period of their full-time employment, and if the employee accepts such part-time employment, the employee shall be considered a new employee for all purposes. Where an employee was placed

on a part-time basis or suffered a pay reduction because of a change in work category prior to May 21, 1967, and did not receive termination pay based upon their former pay, "week's pay" shall be determined by agreement, or through grievance and arbitration.

(e)  Any employee accepting termination pay who is re-hired in the same building or with the same Employer shall be considered a new employee for all purposes except as provided in paragraph 19 of this Article (Recall).

For the purposes of this section, sale or transfer of a building shall not be considered a termination of employment so long as the employee or employees are hired by the purchaser or transferee, in which case they shall retain their building seniority for all purposes.

21.  *Tools, Permits, Fines and Legal Assistance.*

All tools, of which the Superintendent shall keep an accurate inventory, shall be supplied by the Employer. The Employer shall continue to maintain and replace any special tools or tools damaged during ordinary performance of work but shall not be obligated to replace "regular" tools if lost or stolen.

The Employer shall bear the expense of securing or renewing permits, licenses or certificates for specific equipment located on the Employer's premises and will pay fines and employees' applicable wages for required time spent for the violation of any codes, ordinances, administrative regulations or statutes, except any resulting from the employees' gross negligence or willful disobedience.

The Employer shall supply legal assistance where required to employees who are served with summons regarding building violations.

22. *Military Service.*

All statutes and valid regulations about reinstatement and employment of veterans shall be observed.

The Employers and the Union will cooperate in effort to achieve the objectives of this provision. They shall also consider the institution of plans to provide training of employees to improve their skills and to enter into employment in the industry.

23. *No Discrimination.*

(A) There shall be no discrimination against

any present or future employee by reason of race, creed, color, age, disability, national origin, sex, sexual orientation, union membership, or any characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, 42 U.S.C. Section 1981, Family and Medical Leave Act, the New York State Human Rights Law, the New York City Human Rights Code, or any other similar laws, rules or regulations. All such claims shall be subject to the grievance and arbitration procedure (Articles V and VI) as sole and exclusive remedy for violations. Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

(B) No-Discrimination Protocol

(1) Protocol

The parties to this Agreement, the Union and RAB, believe that it is in the best interests of all involved -- employees/members, employers, the Union, the RAB and the public interest -- to promptly, fairly and efficiently resolve claims of workplace discrimination, as covered above (collectively "claims"). Such claims are very often intertwined with contractual disputes

under this Agreement. The RAB, on behalf of its members, maintains that it is committed to refrain from unlawful discrimination. The Union maintains it will pursue its policy of evaluating such claims and bringing those claims to arbitration where appropriate. To this end, the parties, notwithstanding the continuing disagreement between them described below, establish the following system of mediation and arbitration applicable to all such claims, whenever they arise. The Union and RAB want those covered by this Agreement and any individual attorneys representing them to be aware of this protocol.

As background, following the decision of the Supreme Court in 14 Penn Plaza, 556 U.S. 247 (2009), the RAB and the Union have had a dispute about the meaning of the "no discrimination clause" and the grievance and arbitration clauses in the collective bargaining agreements ("CBAs") entered into between these parties. The Union contends that the CBAs do not make provision for arbitration of any claims that the Union does not choose to take to arbitration, including statutory discrimination claims, and therefore, individual employees are not barred from pursuing their discrimination claims in court where the Union has declined to pursue them in arbitration. The

RAB contends that the CBAs provide for arbitration of all individual claims, even where the Union has declined to bring such claims to arbitration.

The parties agree that, should either the Union or the RAB deem it appropriate or necessary to do so, that party may bring to arbitration the question so reserved. The parties intend that the reserved question may only be resolved in an arbitration between them and not in any form of judicial proceeding. The outcome of the reserved question hinges on collective bargaining language and bargaining history, which are subjects properly suited for arbitration. Such arbitration may be commenced on 30 days' written notice to the other party. The arbitrator for such arbitration shall be Roberta Golick, unless she is unable to serve, in which case the parties shall agree upon an arbitrator, and failing agreement shall submit the case to arbitration before the American Arbitration Association, in New York City.

Notwithstanding the above disagreement, in 2010, the parties initiated the pilot program provided for in this section (Agreement and Protocol, February 17, 2010, the "No-Discrimination Protocol") as an alternative to arbitrating their disagreement. The parties have

now agreed to include the No-Discrimination Protocol as part of this Agreement, as set forth below. The Union and the RAB agree that the provisions of this Protocol do not resolve the reserved question. Neither the inclusion of this Protocol in the CBAs nor the terms of the Protocol shall be understood to advance either party's contention as to the meaning of the CBAs with regard to the reserved question, and neither party will make any representation to the contrary.

(2) Mediation

(a) Whenever it is claimed that an employer has violated the no discrimination clause (including claims based in statute), whether such claim is made by the Union or by an individual employee, notice shall be provided of such claim to the Union, the RAB and the affected employee(s), and the matter shall be submitted to mediation, absent prior resolution through informal means. A notice of claim shall be filed within the applicable statutory statute of limitations, provided that if an employee has timely filed such claim in a forum provided for by statute, the claim will not be considered time-barred.

(b) Promptly following receipt of the notice, the administrator of the Office of Contract Arbitrator

(OCA), 370 Seventh Avenue, New York, NY, shall appoint a Mediator from the Mediation Panel described below. All mediators on the panel shall be attorneys with appropriate training and experience in the conduct of mediations and significant knowledge of employment discrimination statutes. The Mediation Panel shall be a distinct panel from the Contract Arbitrator Panel. A person listed on the Mediation Panel will be removed when either the Union or the RAB gives notice to the other party that such person's name shall be removed. A person may be added to the Mediation Panel list upon mutual agreement of the Union and the RAB. The Union and RAB mutually commit to appointing mediators with appropriate skill and experience, as they view mediation as the important step in which many claims will be resolved.

(c) OCA shall appoint a Mediator from the Mediation Panel. Such appointments shall be made by a random selection (e.g. "spinning the wheel") of available panel members.

(d) Within 30 days of being appointed, the Mediator shall notify the parties of his/her appointment and schedule a pre-mediation conference. (For this purpose, "Parties" refers to the person or entity asserting the claim and the respondent/defendant.) At the conference,

the Parties shall discuss such matters as they deem relevant to the mediation process, including discovery. The Mediator shall have the authority, after consulting with the Parties, to (1) schedule dates for the exchange of information and position statements, and (2) schedule a date for mediation. Any disputes shall be decided by the Mediator. In the event the Mediator concludes that there has not been good faith compliance with his/her directive, including directives as to the holding of conferences and the conduct of discovery, the Mediator may, after notice and an opportunity to be heard, order appropriate sanctions.

(e) The entire mediation process is a compromise negotiation for the purposes of the Federal Rules of Evidence and the New York rules of evidence.

(f) At the mediation, each party shall be entitled to present witnesses and/or documentary evidence. The Mediator shall be entitled to meet separately with each Party for the purpose of exploring settlement.

(g) At the conclusion of the mediation, the Mediator shall be entitled to make a proposal to the Parties of a settlement agreement. Neither Party shall be required to adopt the proposal.

(h) Mediation shall be completed before the claim is litigated on the merits. However, if the Union alleges the claim of a violation of the no discrimination clause, the Union may proceed directly to arbitration and bypass this Mediation procedure if it so chooses.

(i) The fees of the Mediator shall be split equally between the Union and the RAB. The Union and RAB shall provide language interpreters at their jointly shared costs.

(3) Arbitration

(a) The undertakings described here with respect to arbitration apply to those circumstances in which the Union has declined to take an individual employee's employment discrimination claim under the no discrimination clause of the CBA (including statutory claims) to arbitration and the employee is desirous of litigating the claim. The forum described here will be available to employers and employees who are represented by counsel and to those who are unrepresented by counsel.

(b) The Union and the RAB have elicited from the American Arbitration Association ("AAA") a list of arbitrators who (1) are attorneys, and (2) are qualified to decide

employment discrimination cases. In the event that an employee and RAB member employer seek arbitration of a discrimination claim in the circumstances described in paragraph A, the list of arbitrators provided by the AAA shall be made available to the individual employee and the RAB member employer by the administrator of OCA. The manner by which selection is made by the RAB member employer and the individual employee and the extent to which each shall bear responsibility for the costs of the arbitrator shall be decided between them. A person may be added to or removed from the Statutory Arbitration Panel list upon mutual agreement of the Union and the RAB. Any such arbitrations shall be conducted pursuant to the AAA National Rules for Employment Disputes, except those rules pertaining to administration by the AAA and the payment of fees, and any disputes about the manner of proceeding shall be decided by the arbitrator selected.

(c) The hearings in any arbitration provided for in the preceding paragraph may be held at the OCA, however, it is understood that this forum is not a forum provided for in the collective bargaining agreement.

(d) The Union will not be a party to the arbitration described above and the arbitrator shall

not have authority to award relief that would require amendment of the CBA or other agreement(s) between the Union and the RAB or conflict with any provision of any CBAs or such other agreement(s). Any mediation and/or arbitration outcome shall have no precedential value with respect to the interpretation of the CBAs or other agreement(s) between the Union and the RAB.

(C) The parties will continue the Committee (i) to study recruitment and retention issues for all under-represented groups, and (ii) to seek the continued prevention of sexual harassment in the residential industry.

24. *Employees' Rooms and Utilities.*

Any employee occupying a room or apartment on the Employer's property may be charged a reasonable rental therefore. If such occupancy is a condition of his employment, the premises shall be adequate and properly maintained by the Employer in conformity with applicable law, no rent shall be charged and the Employer shall provide normal gas and electric service and pay business telephone bills.

The value of the apartment and services provided therewith such as gas, electric and business phone, shall not be treated as or

included for any purpose in the wage, remuneration or other income of such employee to the extent permitted by law.

If the Employer terminates the services of an employee occupying a living space in the building the Employer shall give the employee thirty (30) days' written notice to vacate, except where there is a discharge for a serious breach of the employment contract.

25. *Definitions.*

A handyperson differs from an elevator operator, porter, hall person, etc., because by training and experience he possesses a certain amount of mechanical or technical skill and devotes more than fifty (50) percent of his working time in a building to work involving such skills.

Others include elevator operators, guards, doorpersons, porters, porter/watchpersons, watchpersons, security porters, security employees, fire safety directors, exterminators and all other service employees employed in the building under the jurisdiction of the Union except Superintendents and handypersons.

All reference to the male gender shall be deemed to include the female gender.

26. *Required Training Programs.*

The Employer shall compensate, at straight-time pay, any employee now employed in a building for any time required for the employee to attend any instruction or training program in connection with the securing of any license, permit or certificate required by the Employer for the performance of duties in the building. Time spent shall be considered as time worked for the purpose of computing overtime pay.

The Thomas Shortman School shall establish, for new and existing employees, a "Quality of Life" training program which shall include, but not be limited to, tenant relations and appropriate conduct by residential employees.

27. *Garnishments.*

No employee shall be discharged or laid off because of the service of an income execution, unless in accordance with applicable law.

28. *Death in Family.*

A regular, full or part-time employee with at least one (1) year of employment in the building shall not be required to work for a maximum of three (3) days immediately following the death

of their parent, brother, sister, spouse or child, and shall be paid regular, straight-time wages for any of such three days on which the employee was regularly scheduled to work, or entitled to holiday pay.

With respect to grandparents, the Employer shall grant a paid day off on the day of the funeral if such day is a regularly scheduled workday.

29. *Union Visitation.*

Any business agent or other duly authorized representative of the Union shall have access to the buildings or sites where union members are employed to determine whether the terms of this agreement are being complied with. Access shall be granted only if there is prior notice to the Employer and such access does not interfere with the work being performed at the building.

30. *Jury Duty.*

Employees who are required to qualify or serve on juries shall receive the difference between their regular rate of pay and the amount they receive for qualifying or serving on said jury with a maximum of two (2) weeks in each calendar year.

Pending receipt of the jury duty pay, the Employer shall pay the employee his regular pay on his scheduled pay day. As soon as the employee receives jury duty pay, he shall reimburse his Employer by signing the jury duty pay check over to the Employer.

Employees who serve on a jury shall not be required to work any shift during such day. If an employee is a weekend employee and assigned to jury duty, he shall not be required to work the weekend.

In order to receive jury duty pay, the employee must notify the Employer at least two (2) weeks before he is scheduled to serve.

If less notice is given by the employee, the notice provision regarding change in shift shall not apply.

31. *Identification.*

Employees may be required to carry with them and exhibit proof of employment on the premises. The RAB and the Union may appoint a committee within thirty (30) days of the signing of this Agreement to establish a system for this purpose. If such system is not timely established, either party may submit the matter to arbitration.

32. *Service Center Visit.*

Every regular full-time employee who has been employed in the building for one (1) year or more shall be entitled, upon one (1) week's notice to his Employer, to take one (1) day off in each calendar year at straight time pay to visit the office of any one of the benefit funds, for the purpose of conducting business at the benefit office, or to visit an employee's personal physician, upon a showing of proof.

Such employee shall receive an additional one (1) day off with pay to visit the Benefit Funds office or to visit the employee's personal physician's office if such office requires such a visit. If the additional day is to visit a personal physician, the Employer can request, and the employee must provide, a HIPAA compliant release (to be developed by the Health Fund) sufficient to provide proof that the employee visited the personal physician at the physician's request for this additional one (1) day.

In the event that an employee chooses to visit any one of the benefit fund offices after having used up their entitlement pursuant to the above two (2) paragraphs, they may use any remaining sick days for that purpose.

33. *Death of Employee.*

If any employee dies after becoming entitled to but before receiving any wage or pay hereunder, it shall be paid to his estate, or pursuant to Section 1310 of the New York Surrogate's Court Procedure Act, unless otherwise provided herein. This shall not apply to benefits under Article X, where the rules and regulations of the Health and Pension Funds shall govern.

34. *Government Decrees.*

If because of legislation, governmental decree or order, any increase or benefit herein provided is in any way blocked, frustrated, impeded or diminished, the Union may upon ten (10) days' notice require negotiation between the parties to take such measures and make such revisions in the contract as may legally provide substitute benefits and improvements for the employees at no greater cost to the Employer. If they cannot agree, the dispute shall be submitted to the Arbitrator.

In the event that any provision of this contract requires approval of any government agency, the RAB shall cooperate with the Union with respect thereto.

35. *Common Disaster.*

There shall be no loss of pay as a result of any Act of God or common disaster causing the shut down of all or virtually all public transportation in the City of New York, making it impossible for employees to report for work, or where the Mayor of the City of New York or the Governor of the State of New York directs the citizens of the City not to report for work. The Employer shall not be liable for loss of pay of more than the first full day affected by such Act of God or common disaster. Employees necessary to maintain the safety or security of the building shall be paid only if they have no reasonable way to report to work and employees refusing the Employer's offer of alternate transportation shall not qualify for such pay. The term "public transportation" as used herein shall include subways and buses.

36. *Rent Collection.*

No employees as part of their usual and regular duties shall be required to retain cash rent for more than twenty-four (24) hours.

37. *Lie Detector.*

The Employer shall not require, request or suggest that an employee or applicant for

employment take a polygraph or any other form of lie detector test.

38. *Saving Clause.*

If any provision of this agreement shall be held illegal or of no legal effect, it shall be deemed null and void without affecting the obligations of the balance of this agreement.

39. *Complete Agreement.*

This agreement constitutes the full understanding between the parties and, except as they may otherwise agree, there shall be no demand by either party for the negotiation or renegotiation of any matter covered or not covered by the provisions hereof.

40. *Transportation Costs.*

The RAB will encourage its members to adopt a qualified transportation fringe benefit program pursuant to which employees may pay for certain qualified transportation costs (e.g. transit passes, qualified parking) on a pre-tax basis, to the extent permitted by law. The RAB will make information available to its members that is necessary to assist them in the adoption and implementation of the program.

41. *Method of Service.*

The parties agree that all references in the Agreement to "telegram" shall be deleted and replaced with "facsimile and also by hand."

42. *Security Background Checks.*

On change of ownership or conversion of the status of a building or employee, employees may be subject to security background checks.

Additionally, upon seven days' prior written notice to the employee and the Union, which notice shall include a specific statement of the cause, the Employer may perform a security background check on a current employee where there is reasonable cause to perform that check. "Reasonable cause" shall be objective evidence – e.g., access to the location of the incident at the time an incident occurred – indicating that the particular employee may have committed an offense in connection with his or her employment and the information sought in the background check may be relevant to determining whether the employee committed such offense. Where, within five days of receipt of such notice, the Union disputes that reasonable cause is present, there shall be an expedited arbitration of the dispute and the security background check shall

not be performed until an arbitrator has ruled that it is permissible. Any information obtained in the security background check not directly related to the incident which gave rise to the check shall not be used for any disciplinary action against the employee.

An employee shall cooperate with an Employer as necessary for obtaining security background checks. Any employee who refuses to cooperate shall be subject to termination. Notwithstanding the above, Employers shall not subject employees to security background checks on a disciplinary or retaliatory basis. Any disciplinary action imposed arising from security background check results shall only be for just cause.

All security background checks shall be confidential and may be disclosed only to the RAB and the Union, as necessary for the administering of this Agreement and/or as required by law. The Employer shall pay all costs of any security background checks.

43. *Notices.*

All notices required to be sent to the Union shall be addressed to the Union's Director of Contracts and Grievances.

44. *Building Safety.*

The Employer shall continue to provide safe and healthy working conditions. The RAB and the Union will create a Committee to study environmentally conscious best work practices.

45. *Work Authorization and Status Disputes.*

The parties recognize that questions involving an employee's work status or personal information may arise during the course of his/her employment, and that errors in an employee's documentation may be due to mistake or circumstances beyond an employee's control. The parties agree to attempt to minimize the impact of such issues on both the affected employees and employers by working together to fairly resolve such issues while complying with all applicable laws.

46. *Veteran Transition Assistance.*

The parties recognize that making a successful transition from the military into the civilian workforce can be challenging. Out of respect for those serving in the military and in acknowledgment of the tremendous skills they can bring to the workforce, the parties shall create a committee tasked with assisting veterans in this transition. These efforts shall

include, but not be limited to: (i) increasing the industry's advertising/recruitment efforts to encourage veterans to apply for jobs within the industry; (ii) communicating with the industry about the numerous benefits associated with hiring veterans; and (iii) providing newly hired veterans with access to training through classes to be created by the Thomas Shortman School aimed at easing the transition to the civilian workforce and teaching the requisite skills.

## ARTICLE XX
## Term of Agreement and Renewals

If legislation is enacted which eliminates or reduces present state law regarding Labor Pass Along, the RAB may, upon 90 days notice to the Union, cancel this Agreement.

This Agreement shall continue in full force and effect up to and including April 20, 2018.

Upon the expiration date of this Agreement, the same shall continue in full force and effect for an extended period until a successor agreement has been executed. During the extended period, all terms and conditions shall be in effect and the parties shall negotiate for a successor agreement retroactive to the expiration date. All provisions and

improvements in such successor agreement shall be retroactive unless such agreement shall otherwise provide.

In the event the parties are unable to agree upon the terms of a successor agreement, either party upon ten (10) days' written notice to the other party may cancel this agreement. Such cancellation shall not apply to Article IX, Section 4 for a period of six (6) months after the expiration date of the Agreement.

Sixty (60) days before said expiration date, the parties shall enter into direct negotiations looking towards a renewal Agreement.

If fifteen (15) days before this Agreement expires, the parties shall not have been able to agree upon the terms of a new agreement, both parties will thereupon confer with the New York State Employment Relations Board for the purpose of conciliating their differences.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year first above written.

REALTY ADVISORY BOARD ON LABOR
RELATIONS, INCORPORATED
Howard Rothschild
President

SERVICE EMPLOYEES
INTERNATIONAL UNION, LOCAL 32BJ
Hector Figueroa
President

April 11, 2014

Hector Figueroa, President
Local 32BJ, SEIU
25 West 18th Street
New York, New York 10011

**Re: Security Background Checks**

Dear Hector:

This will confirm our understanding during our recent negotiations that an Employer may not invoke Article XIX, Section 42 (Security background checks) in connection with a Social Security "no match" letter.

Sincerely,

Howard Rothschild
President, RAB


AGREED:

Hector Figueroa
President, Local 32BJ, SEIU

April 11, 2014

Hector Figueroa, President
Local 32BJ, SEIU
25 West 18th Street
New York, New York 10011

**Re: Discussion of Affordable Housing in Joint Industry Advancement Project**

Dear Hector:

This letter will confirm our understanding the Joint Industry Advancement Project, established pursuant to Article XVII of the Agreement, shall also discuss how the New York City area Real Estate Industry and the Union can accelerate development of affordable housing units in New York City.

Sincerely,

Howard Rothschild
President, RAB


AGREED:

Hector Figueroa
President, Local 32BJ, SEIU

April 11, 2014

Howard Rothschild, President
Realty Advisory Board on Labor Relations
292 Madison Avenue, 16th Floor
New York, New York 10017

**Re: Pension Protection Act**

Dear Howard:

The parties recognize that, as certain provisions enacted by the Pension Protection Act of 2006 ("PPA") by their terms are about to expire, there is some uncertainty as to what the regulations regarding the structure of multi-employer pension funds will be in the immediate future. The parties commit to meet and confer regularly in order to identify and resolve issues related to changes in such regulation that have or may have an impact on participants' benefits and/or contributing employers' financial obligations relating to the Pension Fund.

In particular, in the event that the provision of the PPA which allows a plan to "continue to operate" under a rehabilitation plan or funding improvement plan established before the expiration of such PPA provisions is determined

not to apply to the Pension Fund and there is a risk that the funding deficiencies may arise during the term of this Agreement and the Pension Fund-related financial obligations of contributing employers may be affected, the parties shall meet to negotiate amendments to the contract or other measures which will mitigate such impact.

Sincerely,

Hector Figueroa
President, SEIU, Local 32BJ


AGREED:

Howard Rothschild
President, Local 32BJ, SEIU

April 11, 2014

Hector Figueroa, President
Local 32BJ, SEIU
25 West 18th Street
New York, New York 10011

**Re: Committee to Review Current Building
Classifications**

Dear Hector:

   This will confirm the creation of a Committee
to Review Current Building Classifications.

Sincerely,

Howard Rothschild
President, RAB


AGREED:

Hector Figueroa
President, Local 32BJ, SEIU

# MINIMUM WAGE RATES FOR
# APARTMENT BUILDING STAFF
(Excluding Superintendents)

## Effective

## APRIL 21, 2014 to APRIL 20, 2015
**(40-Hour Standard Work Week of Five 8-Hour Days)**

|  | Regular Hourly Rate | Overtime Hourly Rate | Weekly Wage |
|---|---|---|---|
| **Class A** | | | |
| Handyperson | $24.2558 | $36.3837 | $970.23 |
| Others | $21.9808 | $32.9712 | $879.23 |
| **Class B** | | | |
| Handyperson | $24.1980 | $36.2970 | $967.92 |
| Others | $21.9230 | $32.8845 | $876.92 |
| **Class C** | | | |
| Handyperson | $24.1403 | $36.2104 | $965.61 |
| Others | $21.8653 | $32.7979 | $874.61 |

# MINIMUM WAGE RATES FOR APARTMENT BUILDING STAFF
(Excluding Superintendents)

Effective

## APRIL 21, 2015 to APRIL 20, 2016
**(40-Hour Standard Work Week of Five 8-Hour Days)**

|  | Regular Hourly Rate | Overtime Hourly Rate | Weekly Wage |
|---|---|---|---|
| **Class A** | | | |
| Handyperson | $24.8308 | $37.2462 | $993.23 |
| Others | $22.5058 | $33.7587 | $900.23 |
| **Class B** | | | |
| Handyperson | $24.7730 | $37.1595 | $990.92 |
| Others | $22.4480 | $33.6720 | $897.92 |
| **Class C** | | | |
| Handyperson | $24.7153 | $37.0729 | $988.61 |
| Others | $22.3903 | $33.5854 | $895.61 |

# MINIMUM WAGE RATES FOR
# APARTMENT BUILDING STAFF
(Excluding Superintendents)

Effective

## APRIL 21, 2016 to APRIL 20, 2017
**(40-Hour Standard Work Week of Five 8-Hour Days)**

|  | Regular Hourly Rate | Overtime Hourly Rate | Weekly Wage |
|---|---|---|---|
| **Class A** | | | |
| Handyperson | $25.4308 | $38.1462 | $1,017.23 |
| Others | $23.0558 | $34.5837 | $ 922.23 |
| **Class B** | | | |
| Handyperson | $25.3730 | $38.0595 | $1,014.92 |
| Others | $22.9980 | $34.4970 | $ 919.92 |
| **Class B** | | | |
| Handyperson | $25.3153 | $37.9729 | $1,012.61 |
| Others | $22.9403 | $34.4104 | $ 917.61 |

## MINIMUM WAGE RATES FOR APARTMENT BUILDING STAFF
(Excluding Superintendents)

### Effective

## APRIL 21, 2017 to APRIL 20, 2018
**(40-Hour Standard Work Week of Five 8-Hour Days)**

|  | Regular Hourly Rate | Overtime Hourly Rate | Weekly Wage |
|---|---|---|---|
| **Class A** | | | |
| Handyperson | $26.1758 | $39.2637 | $1,047.03 |
| Others | $23.7508 | $35.6262 | $ 950.03 |
| **Class B** | | | |
| Handyperson | $26.1180 | $39.1770 | $1,044.72 |
| Others | $23.6930 | $35.5395 | $ 947.72 |
| **Class C** | | | |
| Handyperson | $26.0603 | $39.0904 | $1,042.41 |
| Others | $23.6353 | $35.4529 | $ 945.41 |

# 2014
# APARTMENT BUILDING AGREEMENT

MINIMUM WAGE RATES
2014 - 2018 (See pages 135-138)

**REALTY ADVISORY BOARD
ON LABOR RELATIONS,
INCORPORATED**

292 Madison Avenue
New York, N.Y. 10017
(212) 889-4100

───────────

**SERVICE EMPLOYEES
INTERNATIONAL UNION, LOCAL 32BJ**
25 West 18th Street
New York, NY 10011-1991
(212) 388-3800