# EXHIBIT D

195

GG.

# BY-LAWS

## OF

## 145 EAST 15TH STREET TENANTS CORP.

## ARTICLE I

### Purpose of Business

Section 1.  The primary purpose of the Corporation is to provide residences for shareholders who shall be entitled, solely by reason of their ownership of shares, to proprietary leases for apartments in the Building owned by the Corporation.

## ARTICLE II

### Meeting of Shareholders

Section 1.  __Annual Meeting.__  The first annual meeting of the shareholders of the Corporation, for the election of directors and for such other business as may properly come before said meeting, shall be held within thirty (30) days after the closing under the Cooperative Offering Plan (the "Plan") for 145 East 15th Street, New York, New York (the "Building"), and subsequent annual meetings shall be held before the first day of May, in each year, commencing with the year following the year in which the first annual meeting is held. Such meetings shall be in the Borough of Manhattan, City of New York, State of New York, at such time and place as shall be determined by the Board of Directors.  Written notice of each meeting shall be given to all shareholders entitled to vote thereat at the time said notice is given or on the record date designated by the Board of Directors in accordance with Section 5 of this Article II.  Such notice shall state the time when and the place where it is to be held, and the secretary shall cause a copy thereof to be delivered personally or mailed to each shareholder of record of the Corporation entitled to vote at such meeting not less than ten nor more than forty days before the meeting.  If mailed, it shall be directed to each such shareholder at his or her address as it appears on the share book, unless he or she shall have filed with the secretary of the Corporation a written request that notices intended for him or her be mailed to some other address, in which case it shall be mailed to the address designated in such request.

1

Section 2.  Special Meetings.  Special meetings of shareholders, other than those the calling of which is regulated by statute, may be called at any time by the president or secretary or by a majority of the Board of Directors.  It shall also be the duty of the secretary to call such meetings whenever requested in writing so to do by shareholders owning at least twenty-five (25%) percent of the outstanding shares of the Corporation. The secretary shall cause a notice of such special meeting stating the time, place and object thereof and the officer or other person or persons by whom the meeting is called, to be delivered personally or mailed as provided in Section 1 of this Article II to each shareholder of record of the Corporation entitled to vote at such meeting not less than ten nor more than forty days before such meeting. No business other than that stated in such notice shall be transacted at such special meeting unless the holders of all the outstanding shares of the Corporation be present thereat in person or by proxy.

Section 3.   Waiver of Notice.   The notice provided for in the two foregoing sections is not indispensable but any shareholders' meeting whatever shall be valid for all purposes if all the outstanding shares of the Corporation are represented thereat in person or by proxy, or if a quorum is present, as provided in the next succeeding section, and waiver of notice of the time, place and objects of such meeting shall be duly executed in writing either before or after said meeting by such shareholders as are not so represented and were not given such notice.

Section 4.  Quorum.  At each meeting of shareholders, except where otherwise provided by law, shareholders representing, in person or by proxy, a majority of the shares then issued and outstanding shall constitute a quorum; in case a quorum shall not be present at any meeting, the holders of a majority of the shares represented may adjourn the meeting to some future time and place.  No notice of the time and place of the adjourned meeting need be given other than by announcement of the meeting.  Only those shareholders who, if present at the original meeting, would have been entitled to vote thereat, shall be entitled to vote at any such adjourned meeting.

Section 5.  Voting.  At each meeting of shareholders, each shareholder present in person or by proxy shall be entitled to one vote for each share registered in his name at the time of service of notice of such meeting or at such prior date, not more than forty days before such meeting, as may be prescribed by the Board of Directors for the closing of the corporate share transfer books or fixed by the Board of Directors as the date for determining which shareholders of record are entitled to notice of and to vote at such meeting. The proxies shall be in writing duly signed by the shareholders of the Corporation. Voting by shareholders shall be viva voce unless any shareholder present at the meeting, in person or by proxy, demands a vote by written ballot, in which case the voting shall be by ballot, and each ballot shall state the name of the shareholder voting and the

2

number of shares owned by him, and in addition, the name of the proxy of such ballot if cast by a proxy.

In all elections of directors of the Corporation, each shareholder shall be entitled to as many votes as shall equal the number of votes which (except for these provisions) he would be entitled to cast for the election of directors with respect to his shares, multiplied by the number of directors to be elected, and he may cast all of such votes for a single director or may distribute them among the number to be voted for, or any two or more of them, as he may see fit.

Section 6.  Inspectors of Election.  Inspectors of election shall not be required to be appointed at any meeting of shareholders unless requested by a shareholder present (in person or by proxy) and entitled to vote at such meeting and upon the making of such request inspectors shall be appointed or elected as provided in Section 610 of the Business Corporation Law.

Section 7.  Order of Business.  So far as consistent with the purpose of the meeting, the order of business of each meeting of shareholders shall be as follows:

(1)   Call to order.

(2)   Presentation of proofs of due calling of the meeting.

(3)   Roll call and presentation and examination of proxies.

(4)   Reading of minutes of previous meeting or meetings, unless waived.

(5)   Reports of officers and committees.

(6)   Appointment or election of inspectors of elections, if requested.

(7)   If the annual meeting or a special meeting called for that purpose, the election of directors.

(8)   Unfinished business.

(9)   New Business.

(10)   Adjournment.

## ARTICLE III

### Directors

**Section 1.   Number.**   The number of the Directors of the Corporation shall be not less than three nor more than seven, as may from time to time be herein provided and, in the absence of such provision shall be three (3). Commencing with the first election of Directors by the shareholder-tenants of the Corporation, and until changed by amendment of this By-Law provision, as hereinafter provided, the number of Directors shall be five (5). The number of Directors shall not be decreased to a number less than the number of Directors then in office except at an annual meeting of shareholders.

**Section 2.   Election.**   The Directors shall be elected at the annual meeting of shareholders or at a special meeting called for that purpose as provided by law, by a plurality of votes cast at such meeting. Their term of office shall be until the date herein fixed for the next annual meeting, and thereafter until their respective successors are elected and qualify. It shall not be necessary for a Director of this Corporation to be a shareholder.

**Section 3.   Quorum.**   A majority of the Directors then authorized by these By-Laws shall constitute a quorum.

**Section 4.   Vacancies.**   Vacancies in the Board of Directors resulting from death, resignation or otherwise may be filled without notice to any of the shareholders by a vote of a majority of the remaining Directors present at the meeting at which such election is held even though no quorum is present, which may be at any regular meeting of the Board of Directors or any special meeting thereof called for such purpose. In the event of the failure to hold any election of Directors at the time designated for the annual election of Directors or in the time designated for the annual election of Directors or in the event that the Board of Directors shall not have filled any such vacancy, a special meeting of shareholders to elect a new Board of Directors or to fill such vacancy or vacancies may be called in the manner generally provided for the calling of special meetings of shareholders. Vacancies in the Board of Directors resulting from an increase of the Board of Directors by amendment of these By-Laws shall be filled in the manner provided in the resolution adopting such amendment. In case of a reduction of the authorized number of Directors by amendment of these By-Laws, the Directors, if any, whose term of office shall cease, shall be determined in the manner provided in the resolution adopting such amendment.

**Section 5.   Meetings.**   The Board of Directors shall meet immediately after the annual meeting of shareholders without notice and also whenever called together by any officer of the Corporation or upon the written request of any two Directors then holding office, upon notice given to each Director, by delivering personally, mailing or telegraphing the same to him

4

at least two days prior to such meeting at the last address furnished by him to the Corporation. Regular meetings may be held without notice at such times and places as the Board of Directors may determine. Any meeting of the Board at which all the members shall be present, or of which notice shall be duly waived by all absentees, either before or after the holding of such meeting, shall be valid for all purposes provided a quorum be present. Meetings of Directors may be held either at the principal office of the Corporation or elsewhere within the State of New York as provided in the notice calling the meeting, unless the Board of Directors by resolution adopt some further limitation in regard thereto. At all meetings of the Board of Directors, each Director shall be entitled to one vote. The vote of a majority of the Board of Directors present at the time of a vote of a duly constituted meeting shall be the act of the Board of Directors.

Section 6. <u>Resignation and Removal</u>. Any director may resign at any time by written notice delivered in person or sent by certified or registered mail to the President or Secretary of the Corporation. Such resignation shall take effect at the time specified therein, and unless specifically requested, acceptance of such resignation shall not be necessary to make it effective.

Any Director may be removed from office without cause by the shareholders of the Corporation at a meeting duly called for that purpose.

Section 7. <u>Annual Cash Requirements</u>. The Board of Directors shall, except as may be otherwise restricted by the proprietary lease of the Corporation, from time to time, determine the cash requirements as defined in the Corporation's proprietary leases, and fix the terms and manner of payment of rent under the Corporation's proprietary leases. The Board of Directors shall have discretionary power to prescribe the manner of maintaining and operating the Building and to determine the cash requirements of the Corporation to be paid as aforesaid by the shareholder-tenants under their respective proprietary leases. The Board of Directors shall establish a reserve fund to provide for making capital repairs, replacements and improvements necessary for the health and safety of the tenants in the Building. The Board of Directors shall have the discretionary power to authorize the expenditure of funds from such reserve fund for such purposes as aforesaid. Every such determination by the Board of Directors shall be final and conclusive as to all shareholder-tenants and any expenditures made by the Corporation's officers or its agent under the direction or with the approval of the Board of Directors of the Corporation shall, as against the shareholder-tenants, be deemed necessary and properly made for such purpose.

Section 8. <u>House Rules</u>. The Board of Directors may from time to time, adopt and amend such house rules as it may deem necessary in respect to the Building for the health, safety and convenience of the shareholder-tenants. Copies thereof and of changes therein shall be furnished to each shareholder-tenant.

Section 9. <u>Executive Committee and Other Committees</u>. The Board of Directors may by resolution appoint an executive committee, and such other committees as it may deem appropriate, each to consist of three or more

Directors of the Corporation. Such committees shall have and may exercise such of the powers of the Board in the managing of the business and affairs of the Corporation during the intervals between the meetings of the Board as may be determined by the authorizing resolution of the Board of Directors and so far as may be permitted by law, except that no committee shall have power to determine the cash requirements defined in the proprietary leases, or to fix the rent to be paid under the proprietary leases, or to vary the terms of payment thereof as fixed by the Board.

Section 10.   Distributions.   The shareholder-tenants shall not be entitled, either conditionally or unconditionally, except upon a complete or partial liquidation of the Corporation, to receive any distribution not out of earnings and profits of the Corporation.

## ARTICLE IV

### Officers

Section 1.   Election and Removal.   The officers of the Corporation shall be a president, one or more vice presidents, a secretary and a treasurer. Such officers shall be elected at the first meeting of the Board of Directors after these By-Laws become effective, and thereafter at the regular meeting in each year following the annual meeting of shareholders, and shall serve until removed or until their successors shall have been elected. The Board of Directors may at any time or from time to time appoint one or more assistant secretaries and one or more assistant treasurers to hold office at the pleasure of the Board and may accord to such officers such power as the Board deems proper. Any officer may be removed at any time, with or without cause, by the affirmative vote of a majority of the then authorized total number of directors. The president shall be a member of the Board of Directors, and shall be a shareholder or the spouse of a shareholder, but none of the other officers need be a member of the Board of Directors or a shareholder or the spouse of a shareholder. One person may hold not more than two offices at the same time, except that the president and the secretary may not be the same person. Vacancies occurring in the office of any officer may be filled by the Board of Directors at any time.

Section 2.   Duties of President and Vice Presidents.   The president shall preside at all meetings of the shareholders and of the Board of Directors. The president or any vice president shall sign in the name of the Corporation all contracts, leases and other instruments which are authorized from time to time by the Board of Directors. The president, subject to the control of the Board of Directors, shall have general management of the affairs of the Corporation and perform all the duties incidental to the office. In the absence from the City of New York or inability of the

6

president to act, any vice president shall have the powers and perform the duties of the president.

Section 3. Duties of Treasurer. The treasurer shall have the care and custody of all funds and securities of the Corporation, and shall deposit such funds in the name of the Corporation in such bank or trust companies as the directors may determine, and he shall perform all other duties incidental to his office. If so required by the Board of Directors, he shall, before receiving any such funds, furnish to the Corporation a bond with a surety company as surety, in such form and amount as said Board from time to time shall determine. The premium upon such bond shall be paid by the Corporation. Within three months after the close of each calendar year, the treasurer shall cause to be furnished to each shareholder-tenant whose proprietary lease is then in effect, a statement of the Certified Public Accountant of the Corporation of any deductions available for income tax purposes on a per share basis and indicating thereon on a per share basis any such other information as may be necessary or useful to permit him to compute his income tax returns in respect thereof.

Within three months after the end of each fiscal year, the treasurer shall cause to be transmitted to each shareholder-tenant whose proprietary lease is then in effect, an annual report of operations and balance sheet of the Corporation which shall be certified by an independent Certified Public Accountant. A copy of said annual report shall be submitted to the Department of Law of the State of New York.

In the absence or inability of the treasurer, the assistant treasurer, if any, shall have all the powers and perform all the duties of the treasurer.

Section 4. Duties of Secretary. The secretary shall keep the minutes of the meetings of the Board of Directors and of the meetings of shareholders; he shall attend to the giving and serving of all notices of the Corporation and shall be empowered to affix the corporate seal to all written instruments authorized by the Board of Directors or these By-Laws. He shall also perform all other duties incidental to his office. He shall cause to be kept a book containing the names, alphabetically arranged, of all persons who are shareholders of the Corporation, showing their places of residences, the number of shares held by them, respectively, the time when they respectively became the owners thereof, and the amount paid thereon, and the denomination and the amount of all share issuance or transfer stamps affixed thereto, and such book shall be open for inspection as provided by law. In the absence or inability of the secretary, the assistant secretary, if any, shall have all the powers and perform all the duties of the secretary.

# ARTICLE V

## Proprietary Leases

**Section 1. Form of Lease.** The Board of Directors shall adopt a form of proprietary lease to be used by the Corporation for the leasing of all apartments and other space in the Building to be leased to shareholder-tenants under proprietary leases. Such proprietary leases shall be for such terms, with or without provisions for renewals, and shall contain such restrictions, limitations and provisions in respect to the assignment thereof, the subletting of the premises demised thereby and the sale and/or transfer of the shares of the Corporation appurtenant thereto, and such other terms, provisions, conditions and covenants as the Board of Directors may determine.

After a proprietary lease in the form so adopted by the Board of Directors shall have been executed and delivered by the Corporation, all proprietary leases (as distinct from the house rules) subsequently executed and delivered shall be in the same form, except with respect to the statement as to the number of shares owned by the lessee, the use of the premises and the date of the commencement of the term, unless any change or alteration is approved by lessees owning at least 75% in amount of the shares of the Corporation then issued and outstanding.

**Section 2. Assignment.** Proprietary leases shall be assigned or transferred only in compliance with, and shall never be assigned or transferred in violation of, the terms, conditions or provisions of such proprietary leases. A duplicate original of each proprietary lease shall always be kept on file in the principal office of the Corporation or with the managing agent of the Building.

**Section 3. Allocation of Shares.** The Board of Directors shall allocate to each apartment or other space in the Building to be leased to shareholder-tenants under proprietary leases the number of shares of the Corporation which must be owned by the proprietary lessee of such apartment or other space.

**Section 4. Assignment of Lease and Transfer of Shares.** No assignment of any lease or transfer of the shares of the Corporation shall take effect as against the Corporation for any purpose until a proper assignment has been delivered to the Corporation; the assignee has assumed and agreed to perform and comply with all the covenants and conditions of the assigned lease or has entered into a new lease for the remainder of the Term; all shares of the Corporation appurtenant to the lease have been transferred to the assignee; all sums due have been paid to the Corporation; and all necessary consents have been properly obtained. The action of the Board of Directors with respect to the written application for consent of a

8

proposed assignment or subletting must be made within 45 days after receipt of said written application.

A Holder of Unsold Shares (as defined in the Plan) who is a lessee, may assign or pledge his shares or sublet the apartment covered by his proprietary lease without the consent of the Corporation, the managing agent of the Building, or the Sponsor (as defined in the Plan).

No person to whom the interest of a lessee or shareholder shall pass by law, shall be entitled to assign any lease, transfer any shares, or to sublet or occupy any apartment, except upon compliance with the requirements of the proprietary lease and these By-Laws.

Section 5.   Fees on Assignment.   Except in connection with the transfer, assignment or reallocation of shares or sublet of an apartment by a Holder of Unsold Shares, the Board of Directors shall have authority before such transfer, assignment, reallocation or sublet takes effect as against the Corporation as lessor, to fix a reasonable fee to cover actual expenses and attorneys' fees of the Corporation and/or a service fee in connection with such transfer, assignment, reallocation or sublet. The Corporation may also impose any other conditions as it may determine, in connection with each such transfer, assignment, reallocation or sublet. In addition, the Board of Directors may impose a transfer fee in connection with the transfer or assignment of shares as further described in Article XI hereof.

Section 6.   Lost Proprietary Leases.   In the event that any proprietary lease in full force and effect is lost, stolen, destroyed or mutilated, the Board of Directors may authorize the issuance of a new proprietary lease in lieu thereof, in the same form and with the same terms, provisions, conditions and limitations. The Board may, in its discretion, before the issuance of any such new proprietary lease, require the owner thereof, or the legal representative of the owner, to make an affidavit or affirmation setting forth such facts as to the loss, destruction or mutilation as it deems necessary, and to give the Corporation a bond in such reasonable sum as it directs, to indemnify the Corporation.

Section 7.   Regrouping of Space.   The Board of Directors, upon the written request of the owner or owners of one or more proprietary leases covering one or more apartments in the Building and of the shares issued to accompany the same, may in its discretion, at any time, permit such owner or owners, at his or their own expense:

A.   (1)   to subdivide any apartment into any desired number of apartments;

(2)   to combine all or any portions of any such apartments into one or any desired number of apartments; and

(3)   to reallocate the shares issued to accompany the proprietary lease or leases, but the total number of shares so reallocated shall not be less than the number of shares previously allocated to the apartment or apartments involved, and, in connection with any such regrouping, the Board of Directors may require that the number of shares allocated to the resulting apartment or apartments be greater than the number of shares allocated to the original apartment or apartments, and may authorize the issuance of shares from its treasury for such purpose; or

B.   to incorporate one or more servant's rooms, or other space in the Building not covered by any proprietary lease, into one or more apartments covered by a proprietary lease, whether in connection with any regrouping of space pursuant to subparagraph A of this Section 7 or otherwise, and in allocating shares to any such resulting apartment or apartments, shall determine the number of shares from its treasury to be issued and allocated in connection with the appropriation of such additional space.

The Holders of Unsold Shares may, subject only to the written consent of the managing agent of the Building, change the number of apartments for which they hold proprietary leases and shares by increasing or decreasing the size of such apartments, or change the size, layout or location of any one apartment.  However, the Holders of Unsold Shares shall not have the right to reallot the shares allocated to any of the apartments offered for sale under the Plan unless such reallocation reflects a change in the value of the equity in the land and the Building attributable to the apartment or apartments to which the block of shares is being reallocated. Alterations or additions to any apartment must be made in compliance with building codes and related laws.

Upon any regrouping of space in the Building, the proprietary leases so affected and the accompanying share certificates shall be surrendered, and there shall be executed and delivered in place thereof, respectively, a new proprietary lease for each separate apartment involved, and a new certificate for the number of shares so reallocated to each new proprietary lease.

## ARTICLE VI

### Capital Shares

Section 1.   <u>Shares Issued Only to Proprietary Lessees</u>.   No shares hereafter issued or acquired by the Corporation shall be issued or reissued except in connection with the execution by the purchaser and delivery by the Corporation of a proprietary lease of an apartment in the Building.  The

ownership of shares shall entitle the holder thereof to occupy the apartment for the purposes specified in the proprietary lease to which the shares are appurtenant, subject to the provisions, covenants and agreements contained in such proprietary lease.

Section 2.  Form and Share Register.  Certificates of the shares of the Corporation shall be in the form adopted by the Board of Directors, and shall be signed by the president or a vice president and the secretary or an assistant secretary or the treasurer or an assistant treasurer, and sealed with the seal of the Corporation, and shall be numbered in the order in which issued.  Such signatures and seal may be facsimiles when and to the extent permitted by applicable statutory provisions.  Certificates shall be issued in consecutive order and there shall be recorded the name of the person holding the shares, the number of shares and the date of issue.  Each certificate exchanged or returned to the Corporation shall be cancelled, and the date of cancellation shall be indicated thereon and such certificate shall be retained in the corporate records.

Section 3.  Issuance of Certificates.  Shares appurtenant to each proprietary lease shall be issued in the amount allocated by the Board of Directors to the apartment or other space described in such proprietary lease and shall be represented by a single certificate.

Section 4.  Transfers.  Transfers of shares shall be made upon the books of the Corporation only by the holder in person or by power of attorney, duly executed and filed with the secretary of the Corporation and on the surrender of the Certificate for such shares, except that shares sold by the Corporation to satisfy any lien which it or any secured party holds thereon may be transferred without the surrender of the certificate representing such shares.  Transfers of shares allocated to an apartment occupied by a non-purchasing tenant shall only be made by the secretary of the Corporation after the holder of such shares has presented proof that the occupant of the apartment has been advised of the transfer and the new holder of the shares.  Any such notification shall be made by registered or certified mail, return receipt requested.

Section 5.  Units of Issuance.  Except as otherwise provided in Article V, Section 7, unless and until all proprietary leases which shall have been executed by the Corporation, shall have been terminated, the shares appurtenant to each proprietary lease shall not be sold or assigned except as an entirety to the Corporation or an assignee of such proprietary lease, after complying with and satisfying the requirements of such proprietary lease in respect to the assignment or pledge thereof.

Section 6.  Corporation's Lien.  The Corporation shall at all times have a first lien upon the shares owned by each shareholder for all indebtedness and obligations owing and to be owing by such shareholder to the Corporation, arising under the provisions of any proprietary lease issued by the Corporation and at any time held by such shareholders or otherwise arising.  Unless and until such shareholder as lessee shall default in the payment of any of the rental or in the performance of any of the covenants or conditions of such proprietary lease, and/or unless and until such shareholder shall default in the payment of any indebtedness or obligation owing

by such shareholder to the Corporation otherwise arising, such shares shall continue to stand in the name of the shareholder upon the books of the Corporation, and the shareholder shall be entitled to exercise the right to vote thereon as though said lien did not exist. The Corporation shall have the right to issue to any purchaser of such shares upon the enforcement by the Corporation of such lien, or to the nominee of such purchaser, a certificate of the shares so purchased substantially of the tenor of the certificate issued to such defaulting shareholder, and thereupon the certificate for such shares theretofore issued to such defaulting shareholder shall become void and such defaulting shareholder agrees to surrender such last mentioned certificate to the Corporation upon the latter's demand, but the failure of such defaulting shareholder so to surrender such certificate shall not affect the validity of the certificate issued in replacement thereof. The Corporation may refuse to consent to the transfer of shares of any shareholder indebted to the Corporation unless and until such indebtedness is paid.

Section 7. Lost Certificates. In the event that any share certificate is lost, stolen, destroyed or mutilated, the Board of Directors may authorize the issuance of a new certificate of the same tenor and for the same number of shares in lieu thereof. The Board of Directors may, in its discretion, before the issuance of such new certificate, require the owner of the lost, stolen, destroyed or mutilated certificate, or the legal representative of the owner, to make an affidavit or affirmation setting forth such facts as to the loss, destruction or mutilation as it deems necessary, and to give the Corporation a bond in such reasonable sum as it directs, to indemnify the Corporation.

Section 8. Legend on Share Certificates. Certificates representing shares of the Corporation shall bear a legend reading as follows:

"The rights of any holder hereof are subject to the provisions of the By-Laws of 145 East 15th Street Tenants Corp. (the "Corporation") and to all the terms, covenants, conditions and provisions of a certain proprietary lease made between the person in whose name this certificate is issued, as Lessee, and the Corporation as Lessor, for an apartment in the premises known as 145 East 15th Street, New York, New York, which lease limits and restricts the title and rights of any transferee hereof. The shares represented by this certificate are transferable only as an entirety and only to an approved assignee of such proprietary lease. Copies of the proprietary lease and By-Laws are on file and available for inspection at the office of the Corporation.

The directors of the Corporation may refuse to consent to the transfer of the shares represented by this certificate until any indebtedness of the shareholder to the Corporation is paid. The Corporation, by the terms of said By-Laws and proprietary lease, has a

12

first lien on the shares represented by this certificate for all sums due and to beome due under said proprietary lease."

## ARTICLE VII

### Indemnification

**Section 1.** To the extent allowed by law, the Corporation shall indemnify any person made a party to an action by or in the right of the Corporation to procure a judgment in its favor by reason of the fact that he, his testator or intestate is or was a director or officer of the Corporation, against the reasonable expenses, including attorneys' fees, actually and necessarily incurred by him in connection with the defense of such action, or in connection with an appeal therein, except in relation to matters as to which such director or or officers is adjudged to have breached his duty to the Corporation, as such duty is defined in Section 717 of the Business Corporation Law. To the extent allowed by law, the Corporation shall also indemnify any person, made, or threatened to be made, a party to an action or proceeding other than one by or in the right of the Corporation to procure a judgment in its favor, whether civil or criminal, including an action by or in the right of any other corporation, domestic or foreign, which he served in any capacity at the request of the Corporation by reason of the fact, that he, his testator or intestate was a director or officer of the Corporation or served it in any capacity against judgments, fines, amounts paid in settlement, and reasonable expenses, including attorneys' fees actually and necessarily incurred as a result of such action or proceeding, or any appeal therein, if such director or officer acted, in good faith, for a purpose which he reasonably believed to be in the best interests of the Corporation and, in criminal actions or proceedings, in addition, had no reasonable cause to believe that his conduct was unlawful.

**Section 2.** Nothing contained in this provision shall limit any right to indemnification to which any director or any officer may be entitled by contract or under any law now or hereinafter enacted.

## ARTICLE VIII

### Seal

**Section 1.** The seal of the Corporation shall be circular in form and have inscribed thereon the name of the Corporation, the year of its organization and the words "Corporate Seal" and "New York."

13

## ARTICLE IX

### Negotiable Instruments

Section 1.   All checks, drafts, orders for payment of money and negotiable instruments shall be signed by such officers or employee or employees as the Board of Directors may from time to time, by standing resolution or special order, prescribe.

Section 2.   Endorsements or transfers of shares, bonds, or other securities shall be signed by the president or any vice president and by the treasurer or an assistant treasurer or the secretary or an assistant secretary unless the Board of Directors, by special resolution in one or more instances, prescribes otherwise.

Section 3.   Safe Deposit Boxes.   Such officer or officers as from time to time shall be designated by the Board of Directors, shall have access to any safe of the Corporation in the vault of any safe deposit company.

Section 4.   Securities.   Such officer or officers as from time to time shall be designated by the Board of Directors shall have power to control and direct the disposition of any bonds or other securities or property of the Corporation deposited in the custody of any trust company, bank or other custodian.

## ARTICLE X

### Fiscal Year

Section 1.   The fiscal year of the Corporation shall be the calendar year unless otherwise determined by resolution of the Board of Directors.

## ARTICLE XI

### Miscellaneous

Section 1.   Salaries.   No salary or other compensation for services shall be paid to any director or officer of the Corporation for services rendered as such officer unless and until the same shall have been authorized in writing or by affirmative vote, taken at a duly held meeting of shareholders, by shareholders owning at least a majority of the then outstanding shares of the Corporation.

Section 2. Consent of Holder of Unsold Shares.   As long as the Holders of Unsold Shares hold at least 25% of the then-outstanding capital

14

stock of the Corporation, and for a period not to exceed three years from the date the Corporation acquired title to the premises, the Corporation, acting by its Board of Directors or otherwise, shall not, without the consent of such Holders of Unsold Shares having first been obtained, do any of the following:

(i)    increase the number of or change the type of employees from that described in the Plan or provide services or equipment with respect to the Building in excess of those set forth in the Plan; except that the Corporation shall provide to rent-stabilized tenants all services required to be provided under the provisions of the New York City Rent Stabilization Law and The Code of the Rent Stabilization Association of New York City, Inc.;

(ii)    increase the amount of the mortgage indebtedness of the Corporation, extend, refinance or in any other way modify the terms of the mortgage on or lease of the Building or enter into any new mortgage or contract of sale or lease of the Building except as may be required by law, and except as set forth in the Plan;

(iii)    make any major capital improvement unless required by law or in an emergency;

(iv)    increase in any year the amount of any reserve for contingencies (or other reserves) over the amount allowed therefor as set forth in the Plan, provided that any increased portion of such reserve for any year may be added to the reserve for the following year;

(v)    levy any assessment for capital improvements and repairs, or otherwise, except as may be required by law.

## ARTICLE XII

### Amendments

Section 1.   These By-Laws may be amended, enlarged or diminished either (a) at any shareholders' meeting by vote of shareholders owning two-thirds of the amount of the outstanding shares, represented in person or by proxy; provided, that the proposed amendment or the substance thereof shall have been inserted in the notice of meeting or that all of the shareholders be present in person or by proxy, or (b) at any meeting of the Board of Directors by a majority vote; provided, that the proposed amendment or the substance thereof shall have been inserted in the notice of meeting or that all of the Directors are present in person, except that the Directors may not repeal a By-Law amendment adopted by the shareholders as provided above.

## HH.  APPLICABLE RENT REGULATIONS AND STATUTES

**Section 1.  Legislative finding.**  The legislature hereby finds and declares that the conversion of residential real estate from rental status to cooperative or condominium ownership is an effective method of preserving, stabilizing and improving neighborhoods and the supply of sound housing accommodations; that it is sound public policy to encourage such conversions while, at the same time, protecting tenants in possession who do not desire or who are unable to purchase the units in which they reside from being coerced into vacating such units by reason of deterioration of services or otherwise or into purchasing such units under the threat of imminent eviction; that in the city of New York the position of non-purchasing tenants is worsened by a serious public emergency characterized by an acute shortage of housing accommodations; that in the city of New York the position of non-purchasing tenants who are sixty-two years of age or older is particularly precarious by reason of the limited financial resources of many such persons and the physical limitations of many such persons; that preventive action by the legislature in restricting rents and evictions during the process of conversion from rental to cooperative or condominium status is imperative to assure that such conversions will not result in unjust, unreasonable and oppressive rents and rental agreements affecting non-purchasing tenants especially those who are sixty-two years of age or older, and other disruptive practices affecting all tenants during the conversion process which threaten the public health, safety and general welfare; and that in order to prevent uncertainty, hardship and dislocation in connection with the conversion process, the provisions of this act are necessary and desirable to protect the public health, safety and general welfare.  The necessity in the public interest for the provisions hereinafter enacted is hereby declared as a matter of legislative determination.

**§2.**  Section three hundred fifty-two-eeee of the general business law is REPEALED and a new section three hundred fifty-two-eeee is added to read as follows:

**Section 352-eeee.**     Conversions to cooperative or condominium ownership in the city of New York.

1.     As used in this section, the following words and terms shall have the following meanings:

(a)   "Plan".  Every offering statement or prospectus submitted to the department of law pursuant to section three hundred fifty-two-e of this article for the conversion of a building or group of buildings or development from residential rental status to cooperative or condominium ownership or other form of cooperative interest in realty, other than an offering statement or prospectus for such conversion pursuant to article two, eight or eleven of the private housing finance law.

(b)   "Non-eviction plan".   A plan which may not be declared effective until written purchase agreements have been executed and delivered for at least fifteen percent of all dwelling units in the building or group of buildings or development by bona fide tenants in occupancy or bona fide purchasers who represent that they intend that they or one or more members of their immediate family intend to occupy the unit when it becomes vacant.  As to tenants who were in occupancy on the date a letter was issued by the attorney general accepting the plan for filing, the purchase agreement shall be executed and delivered pursuant to an offering made in good faith without fraud and discriminatory repurchase agreements or other discriminatory inducements.

(c)   "Eviction plan".   A plan which, pursuant to the provisions of this section, can result in the eviction of a nonpurchasing tenant by reason of the tenant failing to purchase pursuant thereto, and which may not be declared effective until at least fifty-one percent of the bona fide tenants in occupancy of all dwelling units in the building or group of buildings or development on the date the offering statement or prospectus was accepted for filing by the attorney general (excluding, for the purposes of determining the number of bona fide tenants in occupancy on such date, eligible senior citizens and eligible disabled persons) shall have executed and delivered written agreements to purchase under the plan pursuant to an offering made in good faith without fraud and with no discriminatory repurchase agreements or other discriminatory inducements.

(d)   "Purchaser under the plan".   A person who owns the shares allocated to a dwelling unit or who owns such dwelling unit itself.

(e)   "Non-purchasing tenant".   A person who has not purchased under the plan and who is a tenant entitled to possession at the time the plan is declared effective or a person to whom a dwelling unit is rented subsequent to the effective date.   A person who sublets a dwelling unit from a purchaser under the plan shall not be deemed a non-purchasing tenant.

(f)   "Eligible senior citizens".   Non-purchasing tenants who are sixty-two years of age or older on the date the attorney general has accepted the plan for filing, and the spouses of any such tenants on such date, and who have elected, within sixty days of the date the attorney general has accepted the plan for filing, on forms promulgated by the attorney general and presented to such tenants by the offeror, to become nonpurchasing tenants under the provisions of this section; provided that such election shall not preclude any such tenant from subsequently purchasing the dwelling unit on the terms then offered to tenants in occupancy.

(g)   "Eligible disabled persons".   Non-purchasing tenants who have an impairment which results from anatomical, physiological or psychological conditions, other than addiction to alcohol, gambling, or any controlled substance, which are demonstrable by medically acceptable clinical and

laboratory diagnostic techniques, and which are expected to be permanent and which prevent the tenant from engaging in any substantial gainful employment on the date the attorney general has accepted the plan for filing, and the spouses of any such tenants on such date, and who have elected, within sixty days of the date the attorney general has accepted the plan for filing, on forms promulgated by the attorney general and presented to such tenants by the offeror, to become non-purchasing tenants under the provisions of this section; provided, however, that if the disability first occurs after acceptance of the plan for filing, then such election may be made within sixty days following the onset of such disability unless during the period subsequent to sixty days following the acceptance of the plan for filing but prior to such election, the offeror accepts a written agreement to purchase the apartment from a bona fide purchaser; and provided further that such election shall not preclude any such tenant from subsequently purchasing the dwelling unit or the shares allocated thereto on the terms then offered to tenants in occupancy.

2.   The attorney general shall refuse to issue a letter stating that the offering statement or prospectus required in subdivision one of section three hundred fifty-two-e of this chapter has been filed whenever it appears that the offering statement or prospectus offers for sale residential cooperative apartments or condominium units pursuant to a plan unless:

(a)   The plan provides that it will be deemed abandoned, void and of no effect if it does not become effective within fifteen months from the date of issue of the letter of the attorney general stating the the offering statement or prospectus has been accepted for filing and, in the event of such abandonment, no new plan for the conversion of such building or group of buildings or development shall be submitted to the attorney general for at least twelve months after such abandonment.

(b)   The plan provides either that it is an eviction plan or that it is a non-eviction plan.

(c)   The plan provides, if it is a non-eviction plan, as follows:

(i)   The plan may not be declared effective until written purchase agreements have been executed and delivered for at least fifteen percent of all dwelling units in the building or group of buildings or development subscribed for by bona fide tenants in occupancy or bona fide purchasers who represent that they intend that they or one or more members of their immediate family occupy the dwelling unit when it becomes vacant. As to tenants who were in occupancy on the date a letter was issued by the attorney general accepting the plan for filing, the purchase agreement shall be executed and delivered pursuant to an offering made without discriminatory repurchase agreements or other discriminatory inducements.

(ii)     No eviction proceedings will be commenced at any time against non-purchasing tenants for failure to purchase or any other reason applicable to expiration of tenancy; provided that such proceedings may be commenced for non-payment of rent, illegal use or occupancy of the premises, refusal of reasonable access to the owner or a similar breach by the non-purchasing tenant of his obligations to the owner of the dwelling unit or the shares allocated thereto; and provided further than an owner of a unit or of the shares allocated thereto may not commence an action to recover possession of a dwelling unit from a non-purchasing tenant on the grounds that he seeks the dwelling unit for the use and occupancy of himself or his family.

(iii)     Non-purchasing tenants who reside in dwelling units subject to government regulation as to rentals and continued occupancy prior to the conversion of the building or group of buildings or development to cooperative or condomimium ownership shall continue to be subject thereto.

(iv)     The rentals of non-purchasing tenants who reside in dwelling units not subject to government regulation as to rentals and continued occupancy and non-purchasing tenants who reside in dwelling units with respect to which government regulation as to rentals and continued occupancy is eliminated or becomes inapplicable after the plan has been accepted for filing by the attorney general shall not be subject to unconscionable increases beyond ordinary rentals for comparable apartments during the period of their occupancy.   In determining comparability, consideration shall be given to such factors as building services, level of maintenance and operating expenses.

(v)     The plan may not be amended at any time to provide that it shall be an eviction plan.

(vi)     The rights granted under the plan to purchasers under the plan and to non-purchasing tenants may not be abrogated or reduced notwithstanding any expiration of, or amendment to, this section.

(vii)     After the issuance of the letter from the attorney general stating that the offering statement or prospectus required in subdivision one of section three hundred fifty-two-e of this article has been filed, the offeror shall, on the thirtieth, sixtieth, eighty-eighth and ninetieth day after such date and at least once every thirty days until the plan is declared effective or is abandoned, as the case may be, and on the second day before the expiration of any exclusive purchase period provided in a substantial amendment to the plan, (1) file with the attorney general a written statement, under oath, setting forth the percentage of the dwelling units in the building or group of buildings or development subscribed for by bona fide tenants in occupancy or bona fide purchasers who represent that they intend that they or one or more members of their immediate family

occupy the dwelling unit when it becomes vacant as of the date of such statement and, (2) before noon on the day such statement is filed post a copy of such statement in a prominent place accessible to all tenants in each building covered by the plan.

    (d)    The plan provides, if it is an eviction plan, as follows:

        (i)    The plan may not be declared effective unless at least fifty-one percent of the bona fide tenants in occupancy of all dwelling units in the building or group of buildings or development on the date the offering statement or prospectus was accepted for filing by the attorney general (excluding, for the purposes of determining the number of bona fide tenants in occupancy on such date, eligible senior citizens and eligible disabled persons) shall have executed and delivered written agreements to purchase under the plan pursuant to an offering made in good faith without fraud and with no discriminatory repurchase agreements or other discriminatory inducements.

        (ii)    No eviction proceedings will be commenced against a non-purchasing tenant for failure to purchase or any other reason applicable to expiration of tenancy until the later to occur of (1) the date which is the expiration date provided in such non-purchasing tenant's lease or rental agreement, and (2) the date which is three years after the date on which the plan is declared effective. Non-purchasing tenants who reside in dwelling units subject to government regulation as to rentals and continued occupancy prior to conversion shall continue to be subject thereto during the period of occupancy provided in this paragraph. Thereafter, if a tenant has not purchased, he may be removed by the owner of the dwelling unit or the shares allocated to such dwelling unit.

        (iii)    No eviction proceedings will be commenced, except as hereinafter provided, at any time against either eligible senior citizens or eligible disabled persons. The rentals of eligible senior citizens and eligible disabled persons who reside in dwelling units not subject to government regulation as to rentals and continued occupancy and eligible senior citizens and eligible disabled persons who reside in dwelling units with respect to which government regulation as to rentals and continued occupancy is eliminated or becomes inapplicable after the plan has been accepted for filing shall not be subject to unconscionable increases beyond ordinary rentals for comparable apartments during the period of their occupancy considering, in determing comparability, such factors as building services, level of maintenance and operating expenses; provided that such proceedings may be commenced against such tenants for non-payment of rent, illegal use or occupancy of the premises, refusal of reasonable access to the owner or a similar breach by the tenant of his obligations to the owner of the dwelling unit or the shares allocated thereto.

(iv)    Eligible senior citizens and eligible disabled persons who reside in dwelling units subject to government regulation as to rentals and continued occupancy shall continue to be subject thereto.

(v)    The rights granted under the plan to eligible senior citizens and eligible disabled persons may not be abrogated or reduced notwithstanding any expiration of, or amendment to, this section.

(vi)    Any offeror who disputes the election by a person to be an eligible senior citizen or an eligible disabled person must apply to the attorney general within thirty days of the receipt of the election forms for a determination by the attorney general of such person's eligibility.    The attorney general shall, within thirty days thereafter, issue his determination of eligibility.    The foregoing shall, in the absence of fraud, be the sole method for determining a dispute as to whether a person is an eligible senior citizen or an eligible disabled person.    The determination of the attorney general shall be reviewable only through a proceeding under article seventy-eight of the civil practice law and rules, which proceeding must be commenced within thirty days after such determination by the attorney general becomes final.

(vii)    After the issuance of the letter from the attorney general stating that the offering statement or prospectus required in subdivision one of section three hundred fifty-two-e of this article has been accepted for filing, the offeror shall, on the thirtieth, sixtieth, eighty-eighth and ninetieth days after such date and at least once every thirty days until the the plan is declared effective or abandoned, as the case may be, and on the second day before the expiration of any exclusive purchase period provided in a substantial amendment to the plan, (1) file with the attorney general a written statement, under oath, setting forth the percentage of bona fide tenants in occupancy of all dwelling units in the building or group of buildings or development on the date the offering statement or prospectus was accepted for filing by the attorney general who have executed and delivered written agreements to purchase under the plan as of the date of such statement, and (2) before noon on the day such statement is filed, post a copy of such statement in a prominent place accessible to all tenants in each building covered by the Plan.

(viii)    If the Plan is amended before it is declared effective to provide that it shall be a non-eviction Plan, any person who has agreed to purchase under the Plan prior to such amendment shall have a period of thirty days after receiving written notice of such amendment to revoke his agreement to purchase under the Plan.

(ix)    The tenants in occupancy on the date the attorney general accepts the Plan for filing shall have the exclusive right to purchase their dwelling units or the shares allocated thereto for ninety days after the Plan is accepted for filing by the attorney general, during which time a

216

tenant's dwelling unit shall not be shown to a third party unless he has, in writing, waived his right to purchase; subsequent to the expiration of such ninety day period, a tenant in occupancy of a dwelling unit who has not purchased shall be given the exclusive right for an additional period of six months from said expiration date to purchase said dwelling unit or the shares allocated thereto on the same terms and conditions as are contained in an executed contract to purchase said dwelling unit or shares entered into by a bona fide purchaser, such exclusive right to be exercisable within fifteen days from the date of mailing by registered mail of notice of the execution of a contract of sale together with a copy of said executed contract to said tenant.

(e)   The attorney general finds that an excessive number of long-term vacancies did not exist on the date that the offering statement or prospectus was first submitted to the department of law.   "Long-term vacancies" shall mean dwelling units not leased or occupied by bona fide tenants for more than five months prior to the date of such submission to the department of law.   "Excessive" shall mean a vacancy rate in excess of the greater of (i) ten percent and (ii) a percentage that is double the normal average vacancy rate for the building or group of buildings or development for two years prior to the January preceding the date the offering statement or prospectus was first submitted to the department of law.

(f)   The attorney general finds that, following the submission of the offering statement or prospectus to the department of law, each tenant in the building or group of buildings or development was provided with a written notice stating that such offering statement or prospectus has been submitted to the department of law for filing.   Such notice shall be accompanied by a copy of the offering statement or prospectus and a statement that the statements submitted pursuant to subparagraph (vii) of paragraph (c) or subparagraph (vii) of paragraph (d) of this subdivision, whichever is applicable, will be available for inspection and copying at the office of the department of law where the submission was made and at the office of the offeror or a selling agent of the offeror.   Such notice shall also be accompanied by a statement that tenants or their representatives may physically inspect the premises at any time subsequent to the submission of the plan to the department of law, during normal business hours, upon written request made by them to the offeror, provided such representatives are registered architects or professional engineers licensed to practice in the state of New York.   Such notice shall be sent to each tenant in occupancy on the date the Plan is first submitted to the department of law.

3.   All dwelling units occupied by non-purchasing tenants shall be managed by the same managing agent who manages all other dwelling units in the building or group of buildings or development.   Such managing agent shall provide to non-purchasing tenants all services and facilities required by law on a non-discriminatory basis.   The offeror shall guarantee the obligation of the managing agent to provide all such services and facilities

until such time as the offeror surrenders control to the board of directors or board of managers.

4.   It shall be unlawful for any person to engage in any course of conduct, including, but not limited to, interruption or discontinuance of essential services, which substantially interferes with or disturbs the comfort, repose, peace or quiet of any tenant in his use or occupancy of his dwelling unit or the facilities related thereto.  The attorney general may apply to a court of competent jurisdiction for an order restraining such conduct and, if he deems it appropriate, an order restraining the owner from selling the shares allocated to the dwelling unit or the dwelling units itself or from proceeding with the Plan of conversion; provided that nothing contained herein shall be deemed to preclude the tenant from applying on his own behalf for similar relief.

5.   Any local legislative body may adopt local laws and any agency, officer or public body may prescribe rules and regulations with respect to the continued occupancy by tenants of dwelling units which are subject to regulation as to rentals and continued occupancy pursuant to law, provided that in the event that any such local law, rule or regulation shall be inconsistent with the provisions of this section, the provisions of this section shall control.

6.   Any provision of a lease or other rental agreement which purports to waive a tenant's rights under this section or rules and regulations promulgated pursuant hereto shall be void as contrary to public policy.

7.   The provisions of this section shall only be applicable in the city of New York.

S3.   Subdivision a of section §51-6.0 of the administrative code of the city of New York is amended by adding a new paragraph seven to read as follows:

(7)   The eviction is sought by the owner of a dwelling unit or the shares allocated thereto where such dwelling unit is located in a structure owned as a cooperative or as a condominium and an offering prospectus for the conversion of such structure pursuant to an eviction plan shall have been submitted to the attorney general pursuant to section three hundred fifty-two-eeee of the general business law and accepted for filing by the attorney general, and been declared effective in accordance with such law, and any right of continued occupancy granted by such law to a non-purchasing tenant in occupancy of such dwelling unit shall have expired; provided that the owner of the dwelling unit or the shares allocated thereto seeks in good faith to recover possession of a dwelling unit for his own personal use and occupancy or for the use and occupancy of his immediate family.

§4.   The opening paragraph of subdivision a of section YY51-3.0 of such code, as amended by chapter five hundred seventy-six of the laws of nineteen hundred seventy-four, is amended to read as follows:

Class A multiple dwellings not owned as a cooperative or as a condominium, except as provided in section three hundred fifty-two-eeee of the general business law, containing six or more dwelling units which:

§5.   Subdivision c of section YY51-3.0 of such code, as amended by local law number thirty-nine of the city of New York for the year nineteen hundred eighty-one, is amended to read as follows:

c.   Buildings or structures, not owned as a cooperative or as a condominium, except as provided in section three hundred fifty-two-eeee of the general business law, or housing accommodation in such buildings or [structure] structures eligible to receive the benefits of section J51-2.5 or section J51-5.0 of the administrative code of the City of New York and not subject to the provisions of title Y of this code where the owner thereof subjects such buildings and structures to regulation under this title YY.

§6.   Paragraph nine of subdivision c of section YY51-8.0 of such code is REPEALED and two new paragraphs nine and nine-a are added to read as follows:

(9) ·  provides that an owner shall not refuse to renew a lease except where he intends in good faith to demolish the building and has obtained a permit therefor from the department of buildings.

(9-a)   provides that where an owner has submitted to and the attorney general has accepted for filing an offering plan to convert the building to cooperative or condominium ownership and the owner has presented the offering plan to the tenants in occupancy, any renewal or vacancy lease may contain a provision that if a building is converted to cooperative or condominium ownership pursuant to an eviction plan, as provided in section three hundred fifty-two-eeee of the general business law, the lease may only be cancelled upon the expiration of three years after the plan has been declared effective and upon ninety days notice to the tenant that such period has expired or will be expiring.

§7.   The real estate industry stabilization association shall submit amendments to the code of the real estate industry stabilization association to implement the provisions of sections two, three, four, five and six of this act to the New York city department of housing preservation and development within sixty days of the effective date of this act, and such department shall amend or promulgate regulations regarding the status of apartments subject to the New York City Rent and Rehabilitation Law consistent with the provisions of this act within sixty days of the effective date of this act.

§8. Severability. If any clause, sentence, paragraph, section or part of this act shall be adjudged by any court of competent jurisdiction to be invalid such judgment shall not affect, impair or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, section, or part thereof directly involved in the controversy in which such judgment shall have been rendered.

§9. Section three hundred fifty-two-eeee of the general business law as added by this act shall be applicable to every offering statement or prospectus submitted to the attorney general after the effective date of this act and to every offering statement or prospectus submitted to the attorney general but for which a letter of acceptance for filing has not been issued as of such date.

§10. This act shall take effect immediately; provided, that the provisions of sections one, two and nine of this act shall remain in full force and effect only until July first, nineteen hundred eighty-five; provided further that the provisions of section three of this act shall remain in full force and effect only so long as the public emergency requiring the regulation and control of residential rents and evictions continues as provided in subdivision three of section one of the local emergency housing rent control act; provided further that the provisions of sections four, five, six and seven of this act shall expire in accordance with the provisions of section YY51-8.0 of the administrative code of the city of New York as such section of the administrative code is, from time to time, amended; provided further that the provisions of section YY51-6.0 of the administrative code of the city of New York, as amended by this act, which the New York City Department of Housing Preservation and Development must find are contained in the code of the real estate industry stabilization association of such city in order to approve it, shall be deemed contained therein as of the effective date of this act; and provided further that any plan accepted for filing by the department of law on or before the effective date of this act shall continue to be governed by the provisions of section three hundred fifty-two-eeee of the general business law as they had existed immediately prior to the effective date of this act.

II.

## PART 18.8.  ELIGIBLE SENIOR CITIZENS AND ELIGIBLE HANDICAPPED PERSONS

(a)  **Election.**  A non-purchasing tenant may elect not to purchase as an eligible senior citizen as defined in GBL Section 352-eeee or as an eligible handicapped person as defined in GBL Section 352-eee or Section 352-eeee within sixty (60) days from the presentation date by completing the applicable form, SH-1, SH-2 or SH-3 prescribed by the Department of Law and included in the offering plan immediately preceding the Introduction page, signing the election form before a notary public and personally delivering it to the named sponsor or agent at a location specified by the sponsor in the Plan or by mailing it by certified or registered mail, return receipt requested to the named sponsor or agent at an address specified by the sponsor in the plan.

(1)  An election form is timely if it is personally delivered or postmarked before midnight of the sixtieth (60th) day after the presentation date subject to statutory rules of construction.

(2)  The sponsor or agent shall acknowledge receipt of the election form and promptly return an acknowledged copy to the non-purchasing tenant.

(b)  **Determination of disputed elections.**  A sponsor who disputes the election by a non-purchasing tenant to be an eligible senior citizen or an eligible handicapped person must apply to the Department of Law, for a determination of the person's eligibility within thirty (30) days following receipt of the election form.

(1)  The application is timely if it is personally delivered to the Department of Law, Real Estate Financing Bureau, 2 World Trade Center, Room 48-61, New York, New York 10047, during business hours or postmarked before midnight of the thirtieth (30th) day following receipt by the sponsor or agent of the election form.

(2)  An untimely application will not be entertained, in which case the tenant whose eligibility is challenged will be deemed eligible under the statute.

(3)  The application shall include the following:

(i)  One (1) copy of the election form;

221

    (ii)    One (1) original and one (1) copy of an affidavit, sworn to by a person having knowledge of the facts, setting forth the following:

        (a)    That the application is timely in accordance with these regulations;

        (b)    the specific ground(s) for disputing the election;

        (c)    The basis for the affiant's statement that the tenant is not an eligible senior citizen or eligible handicapped person;

    (iii)    Two (2) copies of all supporting information or documentation in the possession of the sponsor or the affiant bearing on eligibility.

(4)    The application must be complete at submission. The Department of Law need not consider any additional or supplemental information subsequently submitted by sponsor.

(5)    The Department of Law shall notify the person that the sponsor disputes the person's election to be an eligible senior citizen or handicapped person and shall request the person to submit an answer to the application on a form prescribed by the Department of Law and support the answer with information or documentation bearing on the specific grounds raised by sponsor to dispute the election.

    (i)    The answer and supporting documentation must be submitted to the Department of Law within ten (10) days of the date of the notice from the Department of Law. Failure to submit an answer shall not preclude the Department of Law from issuing a determination.

(6)    The Department of Law may, in its discretion, require the appearance of any witness for the purpose of obtaining oral testimony on the specific grounds for disputing the election. A witness shall be notified that he may be represented by counsel.

(7)    On the basis of the information contained in the election form, the sponsor's application, the answer, if any, and oral testimony, if any, the Department of Law shall issue a determination of eligibility. The determination shall become final three (3) days after the Department of Law mails notice of the determination to the parties.

(c)   Sale of units or shares allocated to units occupied by eligible senior citizens and eligible handicapped persons.

    (1)   A unit or shares allocated to a unit occupied by an eligible senior citizen or eligible handicapped person or a person seeking exemption as an eligible senior citizen or a person seeking person may not be offered to a third party during the exclusive purchase period granted to tenants in occupancy in the offering plan and any amendments thereto unless the sponsor, in writing, waives any right to challenge the eligibility of the occupant of the unit.

    (2)   Where the sponsor has disputed the eligibility of a person seeking an exemption, the unit or shares allocated thereto may not be offered to a third party for thirty (30) days after the Department of Law has made its determination of eligibility. If a proceeding to review such determination is commenced under article seventy-eight of the civil practice law and rules in a court of competent jurisdiction, the unit or shares allocated thereto may not be offered to a third party for thirty (30) days after notice of entry of the final order in such proceeding.   If such final determination or order finds that the person seeking the exemption is not an eligible senior citizen or eligible handicapped person, such person may purchase the unit or shares allocated thereto for a period not to exceed thirty (30) days following such final determination or order on the most favorable terms offered to tenants in occupancy at any time prior to such final determination or order; provided, however, that if such final determination or order includes a finding that the exemption was sought fraudulently or made in bad faith, such person may purchase the unit or shares allocated thereto as provided in paragraph (3).

    (3)   An eligible senior citizen or eligible handicapped person who rescinds the election may purchase the unit or shares allocated thereto on the then prevailing terms and conditions granted to tenants in occupancy by the offering plan or amendments thereto, or by local law, rule or regulation, notwithstanding an earlier election not to purchase.

JJ(i)       CERTIFICATION OF SPONSOR AND SPONSOR'S PRINCIPALS

New York State Department of Law
Two World Trade Center
New York, New York 10047
<u>Attention</u>:  Real Estate Financing Bureau

Re:   145 East 15th Street
<u>New York, New York</u>

The undersigned, certify as follows:

We are the sponsor and the principals of the sponsor of the offering to convert the captioned premises to cooperative ownership.

We understand that we have primary responsibility for compliance with the provisions of Article 23-A of the General Business Law, the regulations promulgated by the Department of Law in Part 18 and such other laws and regulations as may be applicable.

We have read the entire offering plan. We have investigated the facts set forth in the offering plan and the underlying facts. We have exercised due diligence to form a basis for this certification. We jointly and severally certify that the offering plan does, and that documents submitted hereafter by us which amend or supplement the offering plan, will:

(i)     set forth the detailed terms of the transaction and be complete, current and accurate;

(ii)    afford potential investors, purchasers and participants an adequate basis upon which to found their judgment;

(iii)   not omit any material fact;

(iv)    not contain any untrue statement of a material fact;

(v)     not contain any fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale;

(vi)    not contain any promise or representation as to the future which is beyond reasonable expectation or unwarranted by existing circumstances;