UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

PJETER GJONI, on behalf of himself and all others :       Case No: 14-cv-8982
similarly situated,                                        :            (GBD)

                                           :

                                   Plaintiff, :

                                           :

                     -against-                 :

                                           :

ORSID REALTY CORP., and 145 EAST 15TH STREET :
TENANTS CORP., and GERARD MOUNIC, in his :
individual and professional capacities,               :

                                           :

                                  Defendants. :

------------------------------------------------------------------------X

 

**MEMORANDUM OF LAW OF DEFENDANTS IN SUPPORT
OF THEIR TO MOTION TO DISMISS**

 

**CANTOR, EPSTEIN & MAZZOLA, LLP**
*Attorneys for Defendants*
49 West 37th Street
New York, New York 10018
(212) 768-4343

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT**……………………………………………………..…..……1

**STATEMENT OF RELEVANT FACTS**………………………...……………...…..….……3

**ARGUMENT**………………………………………………………………………..……….10

      **THE APPLICABLE MOTION TO DISMISS STANDARD**...…………....…………..10

**POINT I**

      **GJONI IS BOUND TO THE TERMS OF THE
CBA WHICH CLEARLY AND UNMISTAKABLY
REQUIRES HIS CLAIMS TO BE
ARBITRATED**……………………………………………………………….......11

**POINT II**

      **GJONI'S CLAIMS ARE PRE-EMPTED UNDER THE LMRA**………….……......14

**POINT III**

      **GJONI IS A JANITOR UNDER NEW YORK LAW
AND IS THEREFORE NOT ENTITLED TO OVERTIME** ………...………..…......18

**POINT IV**

      **THE ACTION MUST BE DISMISSED AS TO MOUNIC
BECAUSE THE COMPLAINT FAILS TO PLAUSIBLY
ALLEGE THAT MOUNIC IS AN EMPLOYER UNDER
THE FLSA OR THE LABOR LAW**……………..………………………………20

**CONCLUSION**………………………………………………………………...…..24

## PRELIMINARY STATEMENT

This memorandum is submitted in support of Defendants' motion, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss the complaint in its entirety for lack of subject matter jurisdiction and to compel arbitration, on the basis that: (a) plaintiff Pjeter Gjoni was a member of Local Union 32BJ of the Service Employees' International Union and pursuant to a collective bargaining agreement, his sole and exclusive remedy for the claims alleged is for the Union to grieve and if necessary, arbitrate them; and (b) his claims are also pre-empted by section 301 of the Labor Management Relations Act ("LMRA").

Alternatively, should the Court decline to dismiss the entire Complaint and compel arbitration, partial dismissal is appropriate pursuant to FRCP 12(b)(6).  In particular, Gjoni's third cause of action for overtime under the New York Labor Law fails as a matter of law given that Gjoni, as a janitor, is exempt from its provisions.  Next, individual defendant Gerard Mounic was improperly named herein and none of the claims can survive as against him

Gjoni was employed by defendant 145 East 15th Street Tenants Corp (the "Coop") as its resident superintendent to supervise and manage a staff of employees, respond to shareholder issues and generally help run the day-to-day affairs of the Coop's residential apartment building. He has sued the Coop, its managing agent (Orsid Realty Corp, "Orsid"), and the Coop board president (Mounic), claiming, *inter alia*, that he was not paid certain overtime to which he was entitled.  Specifically, he asserts seven causes of action: (1) for unpaid overtime pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; (2) for unpaid minimum wages pursuant to the FLSA; (3) for unpaid overtime under the New York Labor Law and regulations promulgated thereunder (the "Labor Law"); (4) for unpaid minimum wages under the Labor Law; (5) for failure to pay wages in violation of the Labor Law; (6) for failure to furnish proper

wage statements in violation of the N Labor Law; and (7) for failure to furnish proper wage notices in violation of the Labor Law.

Because Gjoni is a member of SEIU Local 32BJ (the "Union"), his wages, hours and other material terms of his employment are governed by a collective bargaining agreement ("CBA") and Protocol that mandates that claims, such as those alleged in the complaint, be first grieved by the Union and, if unresolved, arbitrated as the sole and exclusive remedy.  By filing the instant complaint, Gjoni attempts to circumvent the CBA's terms, but the CBA's binding arbitration provision divests this Court of jurisdiction to hear his case.  Even the question of whether the claims are required to be arbitrated is to be decided by the arbitrator.

Similarly, Gjoni's claims are pre-empted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, because they require substantial interpretation of the CBA.  As stated above, the CBA governs the terms and conditions of Gjoni's employment, including his wages, hours, time off, and overtime.  The Complaint therefore strikes at the very heart of the CBA.  As an example, while Gjoni alleges that he worked overtime on weekends but was not paid for it, a particular provision within the CBA dictates that superintendents are required to attend to building emergencies as part of their regular duties and that they are not entitled to overtime pay for same.  The interpretation of what events constitute "emergencies" as contemplated by the CBA is not for this Court to decide, but rather an arbitrator.

Even if the Complaint is not dismissed in its entirety, Gjoni's overtime claims pursuant to the Labor Law fail to state a cause of action because resident building superintendents, such as Gjoni, are exempt and have no right to collect overtime under the Labor Law.

Next, individual defendant Gerard Mounic must be dismissed from this action entirely.

Although it is alleged through generic, *pro forma* allegations that Mounic personally managed Gjoni, had the power to hire and fire him, and was responsible for determining all matters regarding Gjoni's employment, the actual facts reveal a much different picture.  Mounic is one of seven volunteer members of the Coop's board of directors (the "Board") and his position as president does not confer any special rights on him.  Stated otherwise, he has no independent authority outside of the Board to make any employment-related decisions with respect to Gjoni (or any other staff members).   Moreover, the terms and conditions of Gjoni's employment were not set by Gjoni or any other Board member.  Rather, as described above, Gjoni is a Union member and subject to a CBA, which clearly governs each and every issue about which Gjoni now complains.  Accordingly, Mounic is not an employer for purposes of liability under either the FLSA or the Labor Law and this action must be dismissed as against him.

### STATEMENT OF RELEVANT FACTS

Unless otherwise demonstrated through documents integral to the Complaint or otherwise properly considered on a 12(b)(1) motion[1], the following material facts are taken from the Complaint and for purposes of this motion only, assumed to be true.[2]

Gjoni was a Union member and employed by the Coop as its live-in resident superintendent.  At all relevant times, the terms and conditions of his employment, including

---

1        *Trustees of Local 138 Pension Trust Fund v. Logan Circle Partners, L.P.*, 2012 WL 1902266 at *2 (E.D.N.Y. May 25, 2012) ("Although the Court is limited to facts as stated in the Amended Complaint, it may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.") (internal quotations omitted).

2        A true and correct copy of the Complaint is attached hereto as Exhibit E.

wages, hours and benefits, were governed by the CBA which was negotiated between the Union and the Coop's bargaining agent, the Realty Advisory Board on Labor Relations [the most recent CBA, the 2014 CBA, is annexed as Exhibit A and unless otherwise indicated, all references herein are to it. The prior CBAs relevant to Gjoni's claims, the 2010 and the 2006 CBAs are annexed as Exhibits B and C respectively to the January 20, 2015 Affidavit of Janine Delagana-Tagliani].[3]   The CBA unequivocally requires that all disputes between employees, including superintendents, and their employers, be arbitrated, consistent with the strong federal policies favoring arbitration and ensuring a uniform federal approach to such disputes through arbitration.

The Coop is a residential cooperative corporation located in Manhattan.  Its operations are governed by corporate documents, including its bylaws, which set forth the powers and responsibilities of the Board of directors [the "Bylaws"; annexed as Exhibit D].  Mounic is one of seven Board members and holds the office of President.   Board decisions are made by majority vote and no director has the sole authority to make Board decisions, even those with respect to the staff [Ex. D at Article III, §§ 1 and 5].

The Board President in particular has no special power to make employment decisions without the rest of the Board.  The Bylaws describe the authority of the president as follows:

> § 2. Duties of President and Vice Presidents. The president shall preside at all meetings of the shareholders and of the Board of Directors. The president or any vice president shall sign in the name of the Corporation all contracts, leases and other instruments which are authorized from time to time by the Board of Directors. The president, subject to the control of the Board of Directors shall have general management of the affairs of the Corporation and perform all the duties incidental to the office. In the absence from the City of New York or inability of the president to act, any vice

---

3       All Exhibits herein are annexed to the Delagana-Tagliani Affidavit.

> president shall have the powers and perform the duties of the
> president.

[Ex. D, Article IV § 2].  Thus, as per the CBA and Bylaws, Mounic simply does not have the

authority that Gjoni alleges he has.

According to the Complaint, Gjoni was employed as the Coop's superintendent from in

or about July 2007 through September 2014.  Throughout this period, the wages he received

were paid to him as per the CBA, in the method prescribed by the CBA [Exs. A-C, Articles XV

and XVI].  The salary increases he received were those required by the CBA and the hours he

worked and his duties were those set forth in by the CBA [Exs. A-C, Article XV (B)].  These

items pertaining to pay are so important that they are addressed at length in two discrete Articles

of the CBA [Exs. A-C, Articles III and XV].

Article XV, unchanged since 2006, details, among other things, the superintendent's

work week, time off, wage increases and duties.  As is relevant here, paragraph (B)(2)(b) sets

forth that superintendents are responsible for attending to emergencies, under what conditions

overtime rates apply, and that disputes pertaining to duties and pay are to be arbitrated (and that

the arbitrator is vested with the authority to issue decisions in accordance with the FLSA).  In

particular, these provisions are as follows:

> (b) In all other respects the building's present practices as to the
> Superintendent's duties shall continue and, as heretofore, the
> Superintendent shall take care of emergencies. If he/she is required
> by the Employer to perform other than emergency work on his
> days off, he/she shall receive equivalent time off during the same
> workweek or a day's pay at the time and one-half rate, as the case
> may be, by agreement between the Employer and Superintendent.
> Nothing herein shall be construed to affect any rights a
> Superintendent may have under the Fair Labor Standards Act.
>
> (c) The Superintendent shall not be required to do work in conflict

with law.

(d) When an obvious inequity exists by reason of a Superintendent's regular application of highly specialized abilities in his/her work, or where this work imposes special or substantial additional responsibilities, the **Union may question the amount of the Superintendent's wage once during the term of this Agreement through grievance and arbitration.**

[Ex. A at 64, Ex. B at 59-60, Ex C at 54-55 (emphasis supplied)].

At Articles V and VI, the CBA explicitly and unmistakably requires that all disputes arising out of the CBA be grieved first and then if they remain unresolved, arbitrated [Ex. A at 15, 17-18, Ex. B at 14-18, Ex. C at 14-18].  "A Contract Arbitrator shall have the power to decide all differences arising between the parties to this Agreement as to interpretation, application or performance of any part of this Agreement" [Ex. A at 15, Ex. B at 14, Ex. C at 14].  This specifically includes issues related to overtime pay [Ex. A at 15, Ex. B at 14. Ex. C at 14].  It also provides that arbitration is "the sole and exclusive method for the determination" of all matters over which a Contract Administrator has jurisdiction" [Ex. A at 17-18, Ex. B at 16, Ex. C at 16].

The CBAs provide:

## ARTICLE V

### Grievance Procedure

There shall be a Joint Industry Grievance Committee and a grievance procedure:

*** 

5. Any matter submitted to arbitration shall be simultaneously submitted to Joint Industry Grievance Committee.

6. The Committee shall be composed of representatives of the

6

Union and the RAB, who may be present at any meeting. If the Committee meeting is not held before the arbitration date, the meeting will be cancelled.

It shall be the function of the Committee to seek and encourage the settlement of all disputes brought before it.

7.  Any grievance, except as otherwise provided herein and except a grievance involving basic wage violations and Pension, Health, Training, Legal and SRSP contributions shall be presented to the RAB in writing within 120 days of its occurrence, except for grievances involving suspension without pay or discharge which shall be presented within 45 or 120 days, unless the Employer agrees to an extension.  The Arbitrator shall have the authority to extend the above time limitations for good cause shown.

8.  Where a failure to compensate overtime work can be unequivocally demonstrated through employer payroll records, the Union may grieve the failure to compensate such overtime work for the three (3) year period prior to the filing of the grievance.

\*\*\*

## ARTICLE VI

### Arbitration

1.  A Contract Arbitrator shall have the power to decide all differences arising between the parties to this Agreement as to interpretation, application or performance of any part of this Agreement, and such other issues as are expressly required to be arbitrated before the Arbitrator, including such issues as may be initiated by the Trustees of the Funds.  Nothing in this Agreement shall preclude deferral where the National Labor Relations Act ("NLRA") provides for deferral.

\*\*\*

3. The procedure herein with respect to matters over which a Contract Arbitrator has jurisdiction shall be the sole and exclusive method for the determination of all such issues, and the Arbitrator shall have the power to award appropriate remedies, the award being final and binding upon the parties and the employee(s) or Employer(s) involved.

[Ex. A-C at 13-18].[4]

In addition to the general mandate in the CBA that "all differences" are to be grieved and arbitrated, the CBA contains several provisions demonstrating that, specifically, differences regarding wages, hours and entitlement to overtime are covered by these terms [Ex. A at 15].

Article III sets forth that the arbitrator has authority to adjust wages in certain circumstances:

> 3. No provision of this Agreement shall be construed so as to lower any employee's wage. If employees in any building have in effect a practice of terms or conditions better than those provided for herein, applicable generally to them for wages, hours, sick pay, vacations, holidays, relief periods, jury duty, or group life insurance, such better terms or conditions shall be continued only for employees who have had such conditions. **The Arbitrator may relieve the obligations in the preceding sentence if enforcement would work an undue hardship, injustice or inequity upon the Employer.**

[Ex. A-C at 11 (emphasis supplied)]. Article XV again specifically gives the Arbitrator the right to adjust the superintendent's wage:

> (d) When an obvious inequity exists by reason of a Superintendent's regular application of highly specialized abilities in his/her work, or where this work imposes special or substantial additional responsibilities, the **Union may question the amount of the Superintendent's wage once during the term of this Agreement through grievance and arbitration.**

[Ex. A at 64, Ex. B at 60, Ex. C at 55 (emphasis supplied)].

Furthermore, the CBA clearly contemplates arbitration of wage and overtime complaints, as demonstrated by the specific time limitations provided for wage and overtime claims within

---

4     Paragraph 8 of Article V was added to the CBA in 2010, so it was included in the 2010 and 2014 CBAs, but not in the 2006 CBA.  [*Compare* Ex. A at 15, Ex. B at 14, *with* Ex. C at 14.]

the grievance and arbitration provisions themselves.  At Article V, paragraph 7, the grievance and arbitration provision specifically exempts "basic wage" claims from the otherwise applicable 45 and 120 day time limitations [Ex. A at 15, B at 14, C at 14].  At Article V, paragraph 8, the grievance and arbitration provisions extend the time to file "overtime" claims.  *Id.*  Such claims are clearly within the arbitrator's jurisdiction, and arbitration is therefore the sole venue in which they may be raised [Ex. A at 17, B at 17, C at 16.].

The CBA also specifically incorporates and requires continued adherence to historical practices regarding overtime and emergency work on weekends that are uniquely within the experience and knowledge of the CBA arbitrators.

> (b)  In all other respects the building's present practices as to the Superintendent's duties shall continue and, as heretofore, the Superintendent shall take care of emergencies.  If he/she is required by the Employer to perform other than emergency work on his days off, he/she shall receive equivalent time off during the same workweek or a day's pay at the time and one-half rate, as the case may be, by agreement between the Employer and Superintendent.  Nothing herein shall be construed to affect any rights a Superintendent may have under the Fair Labor Standards Act.

[Ex. A at 64; Ex. B at 59-60, Ex. C at 55].  In fact, only two of the twelve members of the panel of arbitrators are empowered to hear grievances relating to superintendents and resident managers [Ex. A at 18].

As a final point, the CBA provides that the arbitrator shall have the power to decide all issues arising between the parties as to the interpretation, application and performance of any part of the CBA, meaning that even the gateway question of whether Gjoni's claims are arbitrable is a question for the arbitrator, not the Court [Ex. A at 15, Ex. B at 14, Ex. C at 14].

9

## <u>ARGUMENT</u>

## THE APPLICABLE MOTION TO DISMISS STANDARD

Pursuant to FRCP12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction when a court lacks the statutory or constitutional power to adjudicate it. *See* FRCP 12(b)(1). In resolving a motion to dismiss on this ground, courts may reference evidence outside the pleadings, such as the CBA *Makarova v. US*, 201 F. 3d 110, 113 (2d Cir. 2000) (internal citations omitted); *Hoops v. KeySpan Energy*, 794 F. Supp. 2d 371, 377 (E.D.N.Y. 2011). Further, on a challenge to subject matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that it exists. *Id.*

To survive a motion to dismiss pursuant to FRCP. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 663, 129 S. Ct. at 1940 (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955 (2007)). However, the complaint must be dismissed if the plaintiff "has not nudged his claims of [] discrimination across the line from conceivable to plausible." *Id* (internal citations and quotations omitted). Finally, a plaintiff will not be permitted to artfully plead the complaint to evade an anticipated motion to dismiss by avoiding reference to the relevant documents or by failing to attach them. *Yak v. Bank Brussels Lambert, BBL (USA)*

10

*Holdings Inc*., *et al*, 252 F.3d 127 (2d Cir. 2001). [5]

## POINT I

### GJONI IS BOUND TO THE TERMS OF THE CBA WHICH CLEARLY AND UNMISTAKABLY REQUIRES HIS CLAIMS TO BE ARBITRATED

A valid, enforceable arbitration provision in a collective bargaining agreement eliminates the Court's subject matter jurisdiction to hear the case. *Martens v. Barney, Inc.* 181 F.R.D. 243, 251 (S.D.N.Y. 1998) ("A valid, applicable compulsory arbitration provision eliminate[s] subject matter jurisdiction, barring plaintiffs' suit from any non-arbitral forum"); *Desiderio v. Nat'l Assoc. of Sec. Dealers, Inc.,* 2 F.Supp.2d 516 (S.D.N.Y.1998) (finding no subject matter jurisdiction where arbitration agreement was valid and applicable to plaintiff's claim). "[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, 126 S.Ct. 1235, 1244 (2006).

Further, Section 3 of the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (the "FAA"), expressly provides for the mandatory arbitration of issues referable to arbitration under a written agreement:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an

---

5       The Court may properly consider the Bylaws on this motion because the allegations against Mounic are purely based upon his authority, which is expressed and conferred by those Bylaws. *See United States v. Dist. Council of New York City & Vicinity of United Bhd. of Carpenters & Joiners of Am.*, 778 F. Supp. 738, 749 (S.D.N.Y. 1991) (considering Defendant's corporate bylaws on motion to dismiss).

> agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

There is a strong federal policy favoring arbitration. *Reynolds v. de Silva*, No. 09 CIV. 9218 (CM), 2010 WL 743510, at *2 (S.D.N.Y. Feb. 24, 2010) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)). "Indeed, 'it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the Second Circuit has] often and emphatically applied.'" *Id.* (citing *Arciniaga v. Gen. Motors Corp.,* 460 F.3d 231, 234 (2d Cir.2006))).

> In deciding a motion to compel arbitration, the Court must consider:

> > [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration.

*Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir.1987) (internal citations omitted); *See also, Arrigo v. Blue Fish Commodities, Inc.*, No. 09 Civ. 7518 (VM), 2010 WL 391813 at *2 (S.D.N.Y. Feb. 4, 2010) (citing *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F. 2d 840, 844 (2d Cir. 1987)), *aff'd* 408 Fed. Appx. 480 (2d Cir. 2011). Collective bargaining agreements that "clearly and unmistakably" require arbitration are enforceable as a matter of federal law. *See 14 Penn Plaza LLC v. Pyett,* 556 U.S. 247, 129 S.Ct. 1456 (2009); *Hodges v. All Transit LLC,* No. CV 13-2587 LDW ARL, 2014 WL 537748, at *1 (E.D.N.Y. Feb. 7, 2014). In *Hodges*, the Court determined that the collective bargaining agreement in that case required arbitration of the FLSA and state wage claims. *Hodges,* 2014 WL 537748, at *2.

Likewise, Gjoni and the Coop, through their respective bargaining agents, clearly agreed that the wage and hour claims brought here are within the scope of the arbitration provision.[6] Indeed, Articles III and VX govern the wages and hours and form the heart of the CBA.   The terms within these Articles govern Gjoni's pay rate and increases, the method by which he was to be paid, his hours, vacation time, and other terms and conditions related to his employment [Ex. A at 11-12 ("Wages, Hours and Working Conditions"), 63-64 ("Working Superintendents"), 65-70 ("Provisions Applicable to Superintendents Only")].

As in *Hodges*, the CBA at Articles V and VI provides for arbitration of "all differences arising between the parties to this Agreement as to interpretation, application or performance of any part of this Agreement" [Exs. A at 15, B at 14, C at 14].   This includes the overtime and FLSA claims that are mentioned repeatedly throughout the CBA and specifically put before the arbitrator.   The CBA provides:

> • "The Arbitrator may relieve the obligations in the preceding sentence [that the CBA shall not lower any employee's wage] if enforcement would work an undue hardship, injustice or inequity upon the Employer" [Ex. A-C at 11].
>
> • "[T]he Union may grieve the failure to compensate . . . overtime work for the three (3) year period prior to the filing of the grievance" [Ex. A at 15, B at 14, C at 14].
>
> • "[T]he Union may question the amount of the Superintendent's wage once during the term of this Agreement through grievance and arbitration" [Ex. A at 65, B at 60, C at 55].

As provided in Article VI, the grievance and arbitration procedure "shall be the sole and

---

6       Gjoni is bound to the terms of the CBA pursuant to the National Labor Relations Act, under which he designated the Union as his "exclusive representative" for the purposes of collective bargaining. 29 U.S.C. §159(a); *Pyett, supra,* 129 S. Ct. at 1463-1464. As Gjoni's exclusive bargaining agent, the Union had broad authority to negotiate the conditions of his employment and he must abide the terms negotiated on his behalf, including the terms requiring arbitration of grievances. *Pyett, supra,* 129 S. Ct. at 1463 (citing *Communications Workers v. Beck,* 487 U.S. 735, 739 (1988)).

exclusive method for the determination of all such issues" [Ex. A at 17, B at 17, C at 16].

Congress and the Courts have repeatedly articulated the strong federal policy in favor of arbitrating claims concerning collective bargaining agreements. *See, e.g. Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404, 108 S. Ct. 1877, 1880, 100 L. Ed. 2d 410 (1988). And FLSA and Labor Law wage and hour claims have repeatedly been held to be arbitrable. *Vera v. Saks & Co.*, 335 F.3d 109, 118 (2d Cir. 2003) (Labor Law claims are arbitrable); *Hodges supra*, 2014 WL 537748, at *1 (FLSA claims arbitrable); *Hoops*, *supra*, 794 F. Supp. 2d 371, 377 (E.D.N.Y. 2011) (FLSA claims arbitrable).

## POINT II

## GJONI'S CLAIMS ARE PRE-EMPTED UNDER THE LMRA

Section 301 of the LMRA provides, "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court in the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Section 301 constitutes a "mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Vera*, *supra*, 335 F.3d 109, 114, *quoting Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985).

Section 301 "governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.' " *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (quoting *Electrical Workers v. Hechler*, 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987)). In deference to the collective bargaining process, before bringing an action

14

under Section 301, "the employee must exhaust grievance procedures provided by the relevant collective bargaining agreement." *Dougherty v. American Tel. and Tel. Co.,* 902 F.2d 201, 203 (2d Cir.1990) (citing *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 563, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976))LMRA Section 301 preempts FLSA claims where "the resolution of these disputes will require interpretation of the CBA," *Salamea v. Macy's E., Inc.*, 426 F. Supp. 2d 149, 155 (S.D.N.Y. 2006); *Johnson v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 332 (S.D.N.Y. 2012), as has the Eastern District of New York, *Hoops*, *supra,* 794 F. Supp. 2d 371, 379 .  Similarly, it is well settled that where a claim, alleged to arise under state law, is "inextricably intertwined with the terms of [a] labor contract," such claim is also preempted by federal law pursuant to Section 301 of the LMRA. *See O'Rourke v. Carmen M. Pariso, Inc.*, 501 F.Supp.2d 445, 449 (W.D.N.Y. 2007) (quoting *Allis-Chalmers v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904 (1985)). "When a state-law claim is substantially dependent on analysis of a collective-bargaining agreement, a plaintiff may not evade the pre-emptive force of § 301 of the LMRA by casting the suit as a state-law claim." *Electrical Workers v. Hechler*, 481 U.S. 851, 859 n. 3., 107 S.Ct. 2161 (1987); *see also Tand v. Solomon Schechter Day School of Nassau County*, 324 F.Supp.2d 379, 383 (E.D.N.Y. 2004) (explaining that "Section 301 preempts state law claims in any case involving the interpretation of rights and responsibilities under a collective bargaining agreement, regardless of whether the plaintiff's claims sound in tort or contract").

   The CBA places the question of whether the CBA applies to this matter before the arbitrator, not the Court.  "A Contract Arbitrator shall have the power to decide all differences arising between the parties to this agreement as to interpretation application or performance of

any part of this agreement" [Ex. A at 15, Ex. B at 14, Ex. C at 14].

If the Court were to determine whether Gjoni is entitled to additional overtime, as a preliminary matter, the Court would be required to interpret the CBA wage and hour and overtime provisions and decide, for example, as is directly relevant here: (a) the meaning of the CBA provision that "as heretofore the Superintendent shall take care of emergencies ..."; (b) and what constitutes "other than emergency work"; and  [Ex. A at 64, B at 60, C at 54].

Additional pertinent issues that would need to be analyzed and interpreted as the case moved forward include whether: (c) the superintendent's salary calculation incorporated premium payments attributable to assumed overtime; (d) whether such additional compensation was paid under provisions of the CBA or circumstances that would require its inclusion in Gjoni's regular rate for purposes of FLSA overtime; and (e) whether the employer is entitled to credits or offsets in the same workweek for any other overtime, bonus or premium payments that may have been made under the CBA.

The determination whether Gjoni's wages incorporated premium or differential pay that compensated him for the allegedly uncompensated additional hours is particularly complex.  The Court would be required to determine facts relating to the calculation of a building superintendent's salary, something that has developed over time as a function of the nature of the job itself and not a simple function of hours worked.  This is illustrated by the fact that the CBA does not prescribe a particular hourly rate for superintendents and explicitly recognizes that they are treated and compensated differently from straight hourly workers [*See* Ex. A at 63-64].  In fact, the issue of superintendent salary and overtime calculations is sufficiently complex that there are only two of the twelve panel arbitrators who are empowered to consider such cases.

[*See* Ex. A at 18 ("All cases involving a Superintendent or Resident Manager shall be assigned to Arbitrators John Anner or David Reilly.")]

This is further illustrated by the compensation structure outlined by the Labor Law for building superintendents, referenced therein as "janitors."  While there are minimum hourly wage and overtime requirements for other building employees, *see* 12 NYCRR 141-1.4, janitors' minimum wage is determined by the number of units in the building they are expected to maintain and service, not the hours worked.  *See* 2 N.Y.C.R.R. 141-1.2 (defining minimum unit pay for janitors); *Lee v. Kim*, No. 12-CV-316 RER, 2013 WL 4522581, at *5 (E.D.N.Y. Aug. 27, 2013) (discussing minimum unit pay for janitors).[7]  The analysis of superintendent compensation involves in-depth interpretation of not only the CBA, but its negotiation and the historical calculation of superintendent salaries, matters uniquely within the province of the two specialist arbitrators equipped to decide issues concerning superintendents.

Finally, as a policy matter, this dispute should be determined by the contract arbitrator, as agreed and required by the CBA, rather than the federal court.  Crucially, the terms in the CBA govern the terms of employment for many workers, and they should be interpreted the same way for everyone governed by their terms.  *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404, 108 S. Ct. 1877, 1880, 100 L. Ed. 2d 410 (1988) (Preemption is necessary "to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes.").

---

[7]     *Lee* presents both FLSA and state law claims similar to those presented here.  However, the plaintiffs there do not appear to have been affiliated with a union and there was therefore no motion to dismiss the action as precluded by the LMRA.  *See* Docket, *Lee v. Kim*, No. 12-CV-316 (E.D.N.Y.) (RER).

Even the question of the "application" of the CBA and its arbitration provision to the Gjoni's claims is a question that has squarely been put before the arbitrator [Ex. A at 15, Ex. B at 14, Ex. C at 14].   Accordingly, the Court should dismiss the Complaint because it requires substantial interpretation of the CBA and is therefore pre-empted by section 301 of the LMRA.

## POINT III

### GJONI IS A JANITOR UNDER NEW YORK LAW
### AND IS THEREFORE NOT ENTITLED TO OVERTIME

Although the Labor Law does not contain any statutory requirements regarding overtime pay, regulations promulgated by the New York Department of Labor do require the payment of overtime for all hours worked in excess of 40 in a given week, so long as the employees are not exempt.  *Koljenovic v. Marx*, 999 F. Supp. 2d 396, 399 (E.D.N.Y. 2014).

Residential building superintendents, however, are overtime exempt.  Such workers have been held to be within the category of "janitors" explicitly exempted from overtime requirements by the applicable Regulations, which provide:

> An employer shall pay an employee, **except a janitor in a residential building**, for overtime at a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in a workweek.

12 N.Y.C.R.R. Sec. 141-1.4 (emphasis supplied).

The Building Service Regulations go on to define a "janitor":

> A janitor is a person employed to render any physical service in connection with the maintenance, care or operation of a residential building. Where there is only one employee, such employee shall be deemed the janitor. Where there is more than one employee in the building, the employer shall designate an employee who lives in the building as the janitor. No building may have more than one

18

janitor.

12 N.Y.C.R.R. Sec. 141-3.4

"[B]uilding superintendents" are "janitors" within the meaning of this provision. *Koljenovic v. Marx*, 999 F. Supp. 2d 396, 399 (E.D.N.Y. 2014); *Lee*, *supra*, , 2013 WL 4522581; *Mancero v. 242 E. 38th St. Tenants Corp.,* 40 Misc.3d 1213(A), 2013 WL 3723206 (Sup.Ct., N.Y.Cty. July 12, 2013).

By defining himself and the purported class members as "building superintendents," Gjoni admits that they are resident janitors and exempt from overtime under the Labor Law.[8]  As discussed in *Koljenovic*, "'building superintendent[],' . . . in the common parlance of New York City refers to a resident janitor." 999 F. Supp. 2d at 400 (*citing Leich v. Borchard Affiliations,* 256 A.D. 1019, 1019, 10 N.Y.S.2d 496 (3d Dept 1939) ("Claimant was the janitor or building superintendent of two apartment houses."); *Schmidt v. Emigrant Indus. Sav. Bank,* 148 F.2d 294, 295–96 (2d Cir.1945) (affirming district court's conclusion that the "the plaintiff was a working superintendent with the menial tasks generally attributed to a janitor.")).  The CBA also demonstrates that building superintendents live in the building, as its superintendent-specific provisions govern the process an employer would have to use to evict its superintendent in connection with his termination [*see, e.g.,* Ex. A at 61-63 (addressing "moving expenses," "notice to the Superintendent to vacate the apartment," "eviction proceeding" and "use and occupancy" with respect to terminated superintendents).

---

8      New York Multiple Dwelling Law § 83 requires that "[w]henever there are thirteen or more families occupying any multiple dwelling and the owner does not reside therein, there shall be a janitor, housekeeper or some other person responsible on behalf of the building owner who shall reside in said dwelling, or within a dwelling located within a distance of two hundred feet from said dwelling, and have charge of such dwelling."

Accordingly, Gjoni's overtime claims under the Labor Law must be dismissed because building superintendents are exempt from overtime requirements under the Labor Law.


## POINT IV

### THE ACTION MUST BE DISMISSED AS TO MOUNIC BECAUSE THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE THAT MOUNIC IS AN EMPLOYER UNDER THE FLSA OR THE LABOR LAW

In order to survive a motion to dismiss, an FLSA complaint must allege, *inter alia*, that there existed between the plaintiff and the defendant an employee-employer relationship. *See* FLSA § 207(a)(1). "A complaint should allege that such a relationship existed in order to demonstrate the plaintiff's eligibility to recover damages." *Zhong v. August August Corp.*, 498 F.Supp.2d 625, 628 (S.D.N.Y. 2007). "[C]ourts have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 308 (S.D.N.Y. 2011).

To determine whether an employment relationship exists for purposes of the FLSA, the Court must evaluate the "economic reality" of the relationship. *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984). That test involves analysis of four factors:

> [W]hether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.

*Id.*

Where an individual officer of a company is alleged to be liable under these statutes, the fact that he or she holds a position on the board is not enough. To be an employer, "an individual

defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013) *cert. denied*, 134 S. Ct. 1516, 188 L. Ed. 2D 450 (2014).  In *Irizarry*, the Second Circuit affirmed a finding that the chairman, president and CEO of a large chain of grocery stores was an employer, "particularly as demonstrated by his active exercise of overall control over the company, his ultimate responsibility for the plaintiffs' wages, his supervision of managerial employees, and his actions in individual stores," even though he was not directly responsible for managing or paying the employees.  *Id.* at 117.  The Court took particular note that the defendant owned the company and profited by any underpayment of wages.  *Id.* at 117 ("Casimatidis was not personally responsible for the FLSA violations that led to this lawsuit, but he nonetheless profited from them.").

In *Coley v. Vannguard Urban Imp. Ass'n, Inc.*, on the other hand, the Eastern District of New York dismissed FLSA claims asserted against the chairman of the board of directors of Vannguard, a nonprofit corporation providing vocational training and job preparation for economically disadvantaged youth.  No. 12-CV-5565 PKC, 2014 WL 4793825, at *4 (E.D.N.Y. Sept. 24, 2014).  There, the Court took particular notice of the fact that Vannguard was a not-for-profit corporation and the individual defendant was a volunteer who had no authority to affect employment except as a member of the Board.  *See  Id* at *4 ("Contrary to Plaintiffs' argument, neither of these allegations state a plausible claim that Hansard, individually, as opposed to the Board of Directors as an entity, had any authority to hire or fire employees at Vannguard, or indeed ever exercised that power, if he had it.").

Here, an analysis of the *Carter* factors demonstrates that the action should be dismissed

as to Mounic as well.   The boilerplate allegations with respect to Mounic are extraordinarily limited and found in paragraphs 11 and 32 of the Complaint.  They are as follows:

> Defendant Mounic was the chief executive officer and board president for Defendant 145 East 15th Street.   In addition, Defendant Mounic personally managed and oversaw the day-to-day operation of Defendant 145 East 15th Street and he was responsible for matters with respect to determining employees' rates and methods of pay and hours worked.   Furthermore, Defendant Mounic had the power to hire and fire, and he routinely used this power to hire and/or fire Defendant 145 East 15th Street's employees.

[Ex. E, ¶¶ 11, 13].  Crucially, there are no allegations whatsoever that Mounic has any authority other than that given to him by corporate Bylaws as an officer of the Board.  That power, as a matter of law, is insufficient to support employer liability.

### Power to hire and fire

Gjoni's allegation that Mounic as an individual had the power to hire and fire is not only a *pro forma* allegation without substance, but it is flatly contradicted by both New York law and the corporate Bylaws by which Mounic derives his limited authority to act on behalf of the Coop.

The Coop's Bylaws, made integral to the Complaint by Gjoni's allegations regarding Mounic's alleged power, demonstrate beyond a shadow of a doubt that Mounic does not possess the authority he is alleged to have.  As President, he has the power to preside at meetings and sign documents approved by the Board [Ex. D, Article IV § 2].  But he is only one of seven votes on the Board and lacks the power individually to act with respect to Gjoni's employment [Ex. D, Article III, §§ 1, 5].

It is well established that "an individual board member is not empowered to act on behalf of the organization . . . and voting members of boards are not liable for the acts of the board

merely by virtue of their status as board members." *Coley*, *supra*, 2014 WL 4793825, at *4 (dismissing FMLA claim asserted against volunteer director of nonprofit corporation); *see also De Wald v. Amsterdam Housing Auth.,* 823 F.Supp. 94, 103 (N.D.N.Y.1993) (stating that a board member may not act on behalf of the organization in connection with employment matters unless "vested with independent authority to effectuate employment decisions"); *Walker v. Windsor Court Homeowners Ass'n,* 35 A.D.3d 725, 727–28, 827 N.Y.S.2d 214 (2d Dep't 2006) (noting that, although the defendants were members of the board, "none of them acted individually without the authority of a vote by the Board. Thus, they could not be held liable in their individual capacities.")).   As Mounic individually lacked the power to hire and fire, the first *Carter* factor weighs against finding Mounic to be an employer.

### Employee Work Schedule, Rates and Method of Payment, and Terms and Conditions of Employment

Further, Gjoni's boilerplate allegations that Mounic "managed and oversaw the day-to-day operation" and set his rate of pay and determined the terms and conditions of employment are similary contradicted by the relevant documents.   Setting aside that Mounic is not vested with this authority under the Bylaws, the CBA provides for things such as the wage increases to which Gjoni was entitled and the manner in which he was paid.   [Ex. A at 63-70, Ex. B at 58-65, Ex. C at 53-59].   Accordingly, the second and third *Carter* factors cut against Gjoni.

### Maintenance of Employee Records

Finally, Gjoni entirely fails even to allege that Mounic maintains his employment records.

In all, the *Carter* factors compel the conclusion that Mounic is not Gjoni's employer for purposes of liability under the FLSA or the State Law.   Consideration of the additional issues

with respect to individual officer liability discussed in *Irizarry* and *Coley* also supports that conclusion.   In *Irizarry*, the Second Circuit directed that courts should "ascertain that the individual was engaged in the culpable company's affairs to a degree that it is logical to find him liable to plaintiff employees."  *Irizarry*, *supra*, 722 F.3d 99, 117.  Here, it is not logical to hold a volunteer residential coop Board member potentially liable for Gjoni's overtime claims, where he did not have any individual power to affect the terms and conditions of Gjoni's employment and, even assuming the allegations to be true, there can be no credible showing that he personally profited as in *Irizarry*.

Accordingly, for all of the foregoing reasons, the complaint must be dismissed in its entirety against Mounic.


## CONCLUSION

Wherefore, it is respectfully submitted that the Defendants' motion to dismiss should be granted in all respects and that the Court should grant such further relief as it deems just and proper.


Dated: New York, New York
         January 20, 2015

CANTOR, EPSTEIN & MAZZOLA, LLP
*Attorneys for the Defendants*


By:_____/s/ Bryan Mazzola
         Bryan J. Mazzola (7970)
         49 West 37th Street
         New York, New York 10018
         212-768-4343

24