UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

| | |
|---|---|
| PJETER GJONI, on behalf of himself and All others similarly situated,<br><br>        Plaintiff,<br><br> -against-<br><br>ORSID REALTY CORP. and 145 EAST 15TH STREET TENANTS CORP., and GERARD MOUNIC, in his individual and professional capacities,<br><br>        Defendants. | Civil Action No. 14 CV 8982 (GBD)<br><br>DECLARATION IN SUPPORT OF MOTION BY REALTY ADVISORY BOARD ON LABOR RELATIONS, INC., TO APPEAR AS *AMICUS CURIAE*<br><br>Document Electronically Filed on February 5, 2015 |

------------------------------------x

Harry Weinberg, hereby declares under penalty of perjury that:

1. I am an attorney duly admitted to practice before this Court and am employed as an attorney by the Realty Advisory Board on Labor Relations, Inc. ("RAB"). I submit this declaration in support of the motion of the RAB to appear as *amicus curiae* in this action.

2. The RAB represents more than 3000 building owners and managing agents in the negotiation of a variety of collective bargaining agreements in New York City, including the collective bargaining agreement involved in this case, the New York City Apartment Building Agreement between the RAB and Local 32BJ, Service Employees International Union ("the Union").

3. The RAB seeks to appear for the limited purpose of providing the Court with information relevant to Defendants' Motion to Dismiss and Compel Arbitration and in order to protect the interests of the RAB in monitoring and enforcing collective

bargaining agreements it has entered into with Local 32BJ, Service Employees International Union ("the Union"), a Union which represents thousands of building service employees in and around the City of New York. Plaintiff Pjeter Gjoni is a member of the Union and as such his rights and remedies with respect to the subject matter of the Complaint he has filed in this action are governed by the terms and conditions of a collective bargaining agreement between the Union and the RAB known as the Apartment Building Agreement ("the CBA").

4. According to the Complaint, Gjoni was employed as a superintendent at a residential coop located at 145 E. 15th Street in Manhattan from in or about July 2007 through September 2014 when he was terminated. Throughout this period, the wages he received were paid to him pursuant to the CBA, in the method prescribed by the CBA [Ex. B, Articles XV and XVI]. The salary increases he received were those required by the CBA and the hours he worked and his duties were those set forth in the CBA [Ex. B, Article XV (B)]. These items pertaining to pay are so important that they are addressed at length in two discrete Articles of the CBA [Ex. B, Articles III and XV].

5. Article XV, unchanged since 2006, details, among other things, the superintendent's work week, time off, wage increases and duties. As is relevant here, paragraph (B)(2)(b) addresses the fact that superintendents are responsible for attending to emergencies, when overtime rates apply, the fact that superintendents are salaried rather than hourly like the employees they supervise and manage, i.e., they are exempt employees, and that disputes pertaining to duties and pay are to be arbitrated (and that the arbitrator is vested with the authority to issue decisions in accordance with the FLSA). In particular, these provisions are as follows:

(b) In all other respects the building's present practices as to the Superintendent's duties shall continue and, as heretofore, the Superintendent shall take care of emergencies. If he/she is required by the Employer to perform other than emergency work on his days off, he/she shall receive equivalent time off during the same workweek or a day's pay at the time and one-half rate, as the case may be, by agreement between the Employer and Superintendent. Nothing herein shall be construed to affect any rights a Superintendent may have under the Fair Labor Standards Act.

(c) The Superintendent shall not be required to do work in conflict with law.

(d) When an obvious inequity exists by reason of a Superintendent's regular application of highly specialized abilities in his/her work, or where this work imposes special or substantial additional responsibilities, the **Union may question the amount of the Superintendent's wage once during the term of this Agreement through grievance and arbitration.**

[Ex. B at 64, 54-55 and 59-60 (emphasis supplied)].

6. At Articles V and VI, the CBA explicitly and unmistakably requires that all disputes arising out of the CBA be grieved first and then, if they remain unresolved, arbitrated [Ex. B at 15, 17-18]. "A Contract Arbitrator shall have the power to decide all differences arising between the parties to this Agreement as to interpretation, application or performance of any part of this Agreement" [Ex. B at 15]. It also provides that arbitration is "the sole and exclusive method for the determination" of all matters over which a Contract Administrator has jurisdiction" [Ex. B at 17-18].

7. The CBA further provides:

## ARTICLE V

### Grievance Procedure

3

There shall be a Joint Industry Grievance Committee and a grievance procedure:

\*\*\*

5. Any matter submitted to arbitration shall be simultaneously submitted to Joint Industry Grievance Committee.

6. The Committee shall be composed of representatives of the Union and the RAB, who may be present at any meeting. If the Committee meeting is not held before the arbitration date, the meeting will be cancelled.

It shall be the function of the Committee to seek and encourage the settlement of all disputes brought before it.

7. Any grievance, except as otherwise provided herein and except a grievance involving basic wage violations and Pension, Health, Training, Legal and SRSP contributions shall be presented to the RAB in writing within 120 days of its occurrence, except for grievances involving suspension without pay or discharge which shall be presented within 45 or 120 days, unless the Employer agrees to an extension. The Arbitrator shall have the authority to extend the above time limitations for good cause shown.

8. Where a failure to compensate overtime work can be unequivocally demonstrated through employer payroll records, the Union may grieve the failure to compensate such overtime work for the three (3) year period prior to the filing of the grievance.

\*\*\*

## ARTICLE VI

### Arbitration

1. A Contract Arbitrator shall have the power to decide all differences arising between the parties to this Agreement as to interpretation, application or performance of any part of this Agreement, and such other issues as are expressly required to be arbitrated before the Arbitrator, including such issues as may be initiated by the Trustees of the Funds. Nothing in this Agreement shall preclude deferral

4

> where the National Labor Relations Act ("NLRA") provides for deferral.
>
> \*\*\*
>
> 3. The procedure herein with respect to matters over which a Contract Arbitrator has jurisdiction shall be the sole and exclusive method for the determination of all such issues, and the Arbitrator shall have the power to award appropriate remedies, the award being final and binding upon the parties and the employee(s) or Employer(s) involved.

[Ex. B at 13-18].[1]

8. In addition to the general mandate in the CBA that "all differences" are to be grieved and arbitrated, the CBA contains several provisions demonstrating that, specifically, differences regarding wages, hours and entitlement to overtime are covered by these terms [Ex. B at 15]. 7. Article III sets forth that the arbitrator has authority to adjust wages in certain circumstances:

> 3. No provision of this Agreement shall be construed so as to lower any employee's wage. If employees in any building have in effect a practice of terms or conditions better than those provided for herein, applicable generally to them for wages, hours, sick pay, vacations, holidays, relief periods, jury duty, or group life insurance, such better terms or conditions shall be continued only for employees who have had such conditions. **The Arbitrator may relieve the obligations in the preceding sentence if enforcement would work an undue hardship, injustice or inequity upon the Employer.**

[Ex. B at 11 (emphasis supplied)]. Article XV again specifically gives the Arbitrator the right to adjust the superintendent's wage:

> (d) When an obvious inequity exists by reason of a Superintendent's regular application of highly specialized abilities in his/her work, or where this work imposes special or substantial additional responsibilities, the **Union**

---

1   Paragraph 8 of Article V was added to the CBA in 2010.

5

> **may question the amount of the Superintendent's wage once during the term of this Agreement through grievance and arbitration.**

[Ex. B (emphasis supplied)].

9. Furthermore, the CBA clearly contemplates arbitration of wage and overtime complaints, as demonstrated by the specific time limitations provided for wage and overtime claims within the grievance and arbitration provisions themselves. At Article V, paragraph 7, the grievance and arbitration provision specifically exempts "basic wage" claims from the otherwise applicable 45 and 120 day time limitations [Ex. A at 15, B at 14, C at 14]. At Article V, paragraph 8, the grievance and arbitration provisions extend the time to file "overtime" claims with the arbitrator to 3 years. *Id.* Such claims are clearly within the arbitrator's jurisdiction, and arbitration is therefore the sole venue in which they may be raised [Ex. A at 17, B at 17, C at 16.].

10. The CBA also specifically incorporates and requires continued adherence to historical practices regarding overtime and emergency work on weekends that are uniquely within the experience and knowledge of the CBA arbitrators.

> (b) In all other respects the building's present practices as to the Superintendent's duties shall continue and, as heretofore, the Superintendent shall take care of emergencies. If he/she is required by the Employer to perform other than emergency work on his days off, he/she shall receive equivalent time off during the same workweek or a day's pay at the time and one-half rate, as the case may be, by agreement between the Employer and Superintendent. Nothing herein shall be construed to affect any rights a Superintendent may have under the Fair Labor Standards Act.

6

[Ex. A at 64; Ex. B at 59-60, Ex. C at 55]. In fact, only two of the twelve members of the panel of arbitrators are empowered to hear grievances relating to superintendents and resident managers [Ex. A at 18].

11. Finally, the CBA provides that the arbitrator shall have the power to decide all issues arising between the parties as to the interpretation, application and performance of any part of the CBA, meaning that even the gateway question of whether Gjoni's claims are arbitrable is a question for the arbitrator, not the Court [Ex. B at 14].

## **THE RAB'S INTEREST IN THIS ACTION**

12. Plaintiff brings this wage and hour action against his former employer, 145 East 15th Street Tenants' Corp., ("Tenants"), its managing agent, Orsid Realty Corp. ("Orsid") and Coop Board President Gerard Mounic.

13. The RAB moves to file an *amicus* brief here because of its interest in policing the CBA it has negotiated with the Union and ensuring its uniform interpretation by the Office of the Contract Arbitrator, the sole entity that is contractually empowered to hear and decide grievances involving provisions of the contract.

14. The RAB and the Union have been negotiating collective bargaining agreements for more than 80 years and have a long, mature history of bargaining. In addition, for more than 35 years, the RAB and the Union have designated the Office of the Contract Arbitrator to hear grievances and arbitrations concerning, among other things, interpretations of the language of the contract.

15. Indeed, the RAB and the Union have arbitrated many cases involving the very contract language at issue here.

7

16. It is impossible to decide the issues raised in Gjoni's complaint without deciding and interpreting the meaning of the contract language cited above. The circumstances under which a superintendent is entitled to pay, overtime pay or no pay for responding to emergencies is a matter squarely addressed by the CBA. The parties to the contract clearly and undisputably intended the Arbitrator, and only the Arbitrator, to decide such disputes.

17. The intent of the parties would be stymied if every unhappy employee were able to choose a judicial or other forum instead of the Office of the Contract Arbitrator to decide such issues.

18. It is therefore imperative that the intent of the parties to the Apartment Building Agreement be respected and given meaning by requiring Gjoni to greive and arbitrate his dispute. Permitting this action to proceed in court on Gjoni's claims would defeat and frustrate the purpose of the negotiated CBA provisions.

19. Finally, the RAB has negotiated the language at issue here via the give and take of collective bargaining. Things of value have been given up by RAB employers and the Union in order to arrive at the language agreed to by the parties over the course of many years of bargaining. The RAB is entitled to the benefits of its bargain with the Union and Gjoni shold not be permitted to abrogate the RAB's hard fought gains by being allowed to proceed in a judicial forum instead of at the Office of the Contract Arbitrator.

Declared under penalties of perjury this 4th day of February, 2015

_____
Harry Weinberg (HW 0574)